JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CIV 10922

| | |
|---|---|
| NEW YORK LAW SCHOOL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ASCOT PARTNERS, L.P., J. EZRA MERKIN and BDO SEIDMAN LLP, <br><br> Defendants. | **JURY TRIAL DEMANDED** <br><br>  RECEIVED DEC 16 2008 U.S.D.C. S.D.N.Y. CASHIERS |

## CLASS ACTION COMPLAINT

Plaintiff, individually, and on behalf of all other persons similarly situated, by its undersigned attorneys, based upon the investigation of its attorneys, complaints filed by the United States Government and Securities and Exchange Commission (the "SEC"), reports and interviews published in the financial press and information obtained by plaintiff, allege as follows:

## NATURE OF THE ACTION

1. Plaintiff is a limited partner in Ascot Partners, L.P. ("Ascot" or the "Partnership"), an investment partnership managed by defendant J. Ezra Merkin ("Merkin"), who is the general partner of Ascot. Plaintiff and other class members are qualified investors that purchased limited partnership interests in Ascot. Defendant BDO Seidman, LLP ("Seidman") is the independent auditor for Ascot. During the Class Period (defined below), Seidman issued audit reports on Ascot's annual financial statements which were relied on by plaintiff and other limited partners of Ascot.

1

2. This case arises from a massive fraudulent scheme perpetrated by Bernard L. Madoff ("Madoff") through his investment firm, Bernard L. Madoff Investment Securities, LLC ("BMIS"), and others, and which was facilitated by defendants named herein, who, recklessly or with gross negligence and/or in breach of fiduciary duties owed to plaintiff and other class members, caused and permitted $1.8 billion --- virtually the entire investment capital of Ascot --- to be handed over to Madoff to be "invested" for the benefit of plaintiff and the other limited partners of Ascot. Plaintiff's investment in Ascot has been decimated, as a direct result of: (a) defendant Merkin's abdication of his responsibilities and duties as General Partner and Manager of Ascot and its investment funds and; (b) the complete failure of Ascot's auditor Seidman, in light of "red flags" indicating a high risk to Ascot from concentrating its investment exposure in Madoff as sole third-party investment manager for all of the Partnership's assets, to perform its audits and provide its annual audit reports in conformance with generally accepted auditing standards.

3. On December 10, 2008, Madoff informed certain senior employees at BMIS that his investment advisory business was a fraud. Madoff stated that he was "finished," that he had "absolutely nothing," that "it's all just one big lie," and that it was "basically, a giant Ponzi scheme." Madoff communicated to the senior employees that he had for years been paying returns to certain investors out of the principal received from other, different, investors. Madoff stated that the business was insolvent, and that it had been for years. Madoff also stated that he estimated the losses from this fraud to be approximately $50 billion.

4. On December 11, 2008, the SEC charged Madoff and BMIS, with securities fraud for a multi-billion dollar Ponzi scheme that Madoff and others perpetrated on advisory clients of BMIS. One of those clients was Ascot, which, unknown to plaintiff and other class members, had entrusted virtually all of its investment capital --- capital provided by plaintiff and the class through their purchase of limited partnership interests in Ascot to Madoff.

5. Also on December 11, 2008, Bernard Madoff and BMIS were criminally charged by the United States Attorney's Office of the Southern District of New York with securities fraud. According to the SEC's complaint and the U.S. Attorney's criminal complaint, since at least 2005, Madoff and BMIS have been conducting a Ponzi-scheme through the investment adviser services of BMIS.

6. Plaintiffs seek to recover damages caused to the Class by defendants' violation of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as well as for common law fraud, negligent misrepresentation and breach of fiduciary duty under New York State law.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§78j and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the SEC, 17 C.F.R. § 240.10b.5., as well as under the laws of the State of New York. This Court has jurisdiction in this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. 78aa and pursuant to the supplemental jurisdiction of this Court. This Court has jurisdiction over the subject

matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 22 of the Securities Act, 15 U.S.C. § 77u, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8. Venue is proper in this judicial district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. §77v, Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. §1391(b). Substantial acts in furtherance of the alleged fraud and/or its effects have occurred within this District, and two of the three defendants reside in and/or maintain principal executive offices in this District.

9. In connection with the acts and omissions alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## THE PARTIES

10. Plaintiff New York Law School ("NYLS"), located at 57 Worth Street, New York, NY 10013, was first chartered by the State of New York in 1891. NYLS has approximately 1500 students to whom it offers a course of study leading to the J.D. degree through full-time day and part-time evening divisions, as well as joint degree programs with other educational institutions. During the Class Period, NYLS, through its endowment entity, invested $3 million in Ascot limited partnership interests in 2006, as set forth in the certification attached hereto, and continues to own that investment, which is now worthless as described herein as a result of the wrongful conduct of Defendants.

11. Defendant Ascot which is located at 450 Park Avenue, New York, N.Y. 10022 is a Delaware limited partnership formed in August 1992, organized to operate

4

primarily as a private investment partnership for the benefit of U.S. taxable investors and U.S. tax exempt persons.

12. Defendant Merkin is the founder, General Partner and Manager of Ascot, as well as the Chairman of GMAC, LLC, the financing subsidiary of General Motors Corporation. Merkin maintains his business office at 450 Park Avenue, New York, N.Y. 10022. On or about December 11, 2008, defendant Merkin sent a letter to Ascot investors announcing that virtually all of Ascot's assets, $1.8 billion, were invested with Madoff. Defendant Merkin, because of his position of control and authority as General Partner and Manager of Ascot, was able to and did control the content of the Confidential Offering Memoranda referred to herein, as well as other public statements pertaining to the Company discussed herein. He also controlled and directed the investment of the assets of Ascot.

13. Defendant Seidman is an accounting and consulting firm having offices at 135 West 50th Street, New York, NY 10020. The firm's website describes its services and qualifications as follows: "BDO Seidman, LLP is a national professional services firm providing assurance, tax, financial advisory and consulting services to a wide range of publicly traded and privately held companies. Guided by core values including competence, honesty and integrity, professionalism, dedication, responsibility and accountability, for almost 100 years we have provided quality service and leadership through the active involvement of our most experienced and committed professionals." Seidman audited annual financial statements for Ascot during the Class Period and provided such statements to Ascot, Ascot's limited partners and potential investors. Seidman knew that the audited financial statements would be provided to and relied on

5

by Ascot limited partners and potential investors in Ascot. Seidman failed to perform its annual audits of the financial statements and financial condition of Ascot in accordance with professional standards applicable to those audits, as described herein.

14. Defendants Ascot, Merkin and Seidman are sometimes referred to herein collectively as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

15. Prior to and during the Class Period, defendant Ascot offered participation in its investment partnership to qualified investors such as plaintiff, primarily through a document called The Confidential Offering Memorandum (the "Offering Memorandum"). While these documents were prepared, amended or revised from time to time, they were the same in all material respects relevant hereto, and most particularly in the material information the Offering Memorandum concealed, e.g., neither the Offering Memorandum nor any other offering material used in soliciting investment in Ascot ever disclosed that virtually all of Ascot's assets were invested with Madoff, BMIC or other Madoff controlled entities.

16. The Offering Memorandum dated October 2006, for example, falsely stated, among other things, that:

(a) The Partnership's investment objective is to provide limited partners with a total return on their investment consisting of capital appreciation and income by investing in a diverse portfolio of securities;

(b) Generally, the Partnership engages primarily in the practice of index arbitrage and options arbitrage, in which individual or baskets of securities are purchased and/or sold against related securities such as index option or individual stock options;

(c) The Partnership will make investments through third-party managers using managed accounts, mutual funds, private investment partnerships, closed-end funds and other pooled investment vehicles; and

(d) The General Partner intends, to the extent circumstances permit, to adopt a selective approach in evaluating potential investment situations, generally concentrating on relatively fewer transactions that he can follow more closely.

17. The Offering Memorandum also describes defendant Merkin as the General Partner of the Partnership having "ultimate responsibility for the management operations and investment decisions made on behalf of the Partnership."

18. On or about December 11, 2008, defendant Merkin informed Ascot limited partners that virtually all of the investment assets of Ascot, for which he was ultimately responsible, had been entrusted to Madoff or other Madoff controlled entities. Given this new information, the Offering Memorandum statements cited above were materially false and misleading and omitted to state material facts that all current and potential investors in Ascot would certainly have wanted to know. In particular, the representations that the Partnership was investing in a "diverse portfolio of securities" that it was engaging primarily in "index arbitrage" through "third-party managers using managed accounts" falsely implied that the General Partner was actively pursuing the Partnership's strategy in a prudent manner by using numerous third-party managers with varying execution strategies, thereby avoiding the risk of concentrating capital in too few investments or managers. In fact, the General Partner, defendant Merkin, had abandoned diversity by giving a single third-party manager, Madoff, management responsibility and discretion over Ascot's funds.

19. Similarly, the statement that the General Partner "intends to adopt a selective approach in evaluating potential investment situations" so "he can follow more closely" relatively fewer transactions is false and misleading because it omitted to state that the General Partner had, with no or inadequate due diligence or oversight, abdicated his responsibility and entrusted the assets of the Partnership to Madoff.

20. In addition to causing the above cited representations to be false and misleading, these material omissions render the entire Offering Memorandum materially false and misleading.

21. Defendant Merkin, as the General Partner and Manager of the Partnership, utterly failed to supervise, monitor and manage the investments of the Partnership, in violation of his fiduciary duties under the laws of both New York and Delaware, and contrary to the his representations and undertaking that he as the General Partner was exercising ultimate responsibility for the management, operations and investment decisions made on behalf of the Partnership and that notwithstanding potential conflicts of interest, that he and his affiliates were providing investment management services "in a manner that is consistent with their respective fiduciary duties to the Partnership."

22. Defendant Merkin acted with knowledge that he had abdicated responsibility for the management of virtually all of the investment assets of the Partnership to Madoff, and with gross negligence in failing to perform or cause to be performed appropriate due diligence that would have revealed material irregularities in the investments, operations and financial reporting of Madoff.

23. Robert Rosenkranz, the principal of a major investment advisor to wealthy clients, Acorn Partners, was reported in the financial press to have stated that his firm's

earlier due diligence of the Madoff firm, based in part on the abnormally stable and high investment returns claimed by Madoff and in part on inconsistencies between customer account statements and audited BMIS financial statements filed with the SEC, caused Acorn to conclude that it was highly likely that the BMIS account statements were generated as part of a fraudulent scheme.

24. Also reported in the financial press, according to Simon Fludgate, head of operational due diligence at Aksia, another advisory firm, prior to disclosure of the fraud they had concluded that the stock holdings reported in the quarterly statements of BMIS filed with the SEC appeared too small to support the size of the assets Madoff claimed to be managing. The likely reason for this was revealed on December 15, 2008, when investigators working at Madoff's offices determined that Madoff had been operating a secret, unregistered investment vehicle from his office.

25. Defendant Seidman also utterly failed to perform its work as auditors of Ascot's annual financial statements in a manner consistent with the standards of the auditing profession and as required by Generally Accepted Auditing Standards ("GAAS").

26. Defendant Seidman either knew of or recklessly disregarded: (a) the concentration of Ascot's investments in a single third party investment manager, Madoff; (b) the violation of Ascot's stated policy of investment diversity and the use of multiple represented by reliance on a single third-party investment manager; (c) the materially heightened risk to Ascot's assets from such reliance on Madoff, particularly given the lack of transparency of Madoff's operations; (d) the abnormally high and stable positive investment results reportedly obtained by Madoff, (e) the inconsistency between BMIS's

9

publicly available financial information concerning its assets and the purported amounts that Madoff managed for clients such as Ascot and; (f) the fact that BMIS itself was audited by a small, obscure accounting firm, Friehling & Horowitz, which has its offices in Rockland County New York and had no experience auditing entities of the apparent size and complexity of BMIS.

27. By failing to investigate these clear red flags and the suspicious nature of Madoff's operations and investment results, Seidman's audits of Ascot's financial statements and reports thereon during the Class Period were grossly negligent, in violation of GAAS and constituted an extreme departure from the standards of the accounting and auditing industry. In particular, Seidman has violated GAAS by failing to use due professional care in the performance of its work, AU §230; failing to properly plan the audits, AU §311; failing to maintain an appropriate degree of skepticism during the audits, AU §316; and failing to obtain sufficient competent evidential matter to support the conclusions of the audit reports, AU §326.

28. If Seidman had made an appropriate inquiry underlying these red flags, that investigation would have raised questions regarding the true value and existence of Ascot's reported investment assets and the serious deficiencies in the Partnerships internal controls and adherence to its own policies designed to reduce the risk of loss to the limited partners.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons and entities who invested in limited partnership interests of Ascot between December 16,

2002 through and including December 16, 2008 (the "Class Period") and also retained their investment through that date. In addition, the Class, with respect to plaintiff's claims of breach of fiduciary duty only, includes all Ascot limited partners as of the end of the Class Period. Excluded from the Class are the Defendants, members of the immediate family of defendant Merkin, any affiliate of Ascot or Merkin and executive officers of Ascot, partners of defendant Seidman, and any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

30. This action is properly maintainable as a class action because:

a. The members of the proposed Class in this action are dispersed geographically and are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that Class members number in the hundreds;

b. Plaintiff's claims are typical of those of all members of the Class because all have been similarly affected by Defendants' actionable conduct in violation of federal securities laws and New York law as alleged herein;

c. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to, or in conflict with, the Class that plaintiff seeks to represent;

d. A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein because joinder of all members is

impracticable. Furthermore, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to redress the wrongs done to them. The likelihood of individual Class members prosecuting separate claims is remote;

e. Plaintiff anticipates no unusual difficulties in the management of this action as a class action; and

f. the questions of law and fact common to the members of the Class predominates over any questions affecting individual members of the Class. Among the questions of law and fact common to the Class are:

i. whether Defendants' acts and/or omissions as alleged herein violated the federal securities laws;

ii. whether the Company's Class Period representations to plaintiff and the other class members misrepresented and/or omitted material facts;

iii. whether Defendants acted with knowledge or with reckless disregard for the truth in misrepresenting and/or omitting material facts;

iv. whether Defendants conduct alleged herein was intentional, reckless, or grossly negligent or in violation of fiduciary duties owed plaintiff and other class members and therefore violated the statutory and common law of New York;

v. to what extent the members of the Class have sustained damages and the proper measure of damages.

**COUNT I**
**Violation of Section 10(b) of the Exchange Act and**
**Rule 10b-5 of the Securities and Exchange Commission**
**(Against All Defendants)**

31. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

32. This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

33. During the Class Period, Defendants directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, practices, and courses of business which operated as a fraud and deceit upon plaintiff and the other members of the Class, and made various deceptive and untrue statements of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to plaintiff and the other members of the Class. The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to induce plaintiff and the other members of the Class to purchase limited partnership investment interests in defendant Ascot.

34. During the Class Period, Defendants, pursuant to said scheme, plan, and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, participated in the issuance of, the preparation and issuance of deceptive and materially false and misleading statements to plaintiff and the other class members as particularized above.

35. In ignorance of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by said defendants, plaintiff and the other members of the Class relied, to their detriment, on such misleading statements and omissions in purchasing limited partnerships in Ascot. Plaintiff and the other members of the Class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

36. By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that it: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon plaintiffs and the other members of the Class in connection with their acquisitions of limited partnership interests in Ascot.

### COUNT II
### For Violation of Section 20(a) of the Exchange Act
### (Against Merkin)

37. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

38. Defendant Merkin acted as a controlling person of Ascot within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level position, participation in and/or awareness of Ascot's operations, and/or intimate knowledge of Ascot's products, sales, accounting, plans and implementation thereof, he had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Ascot, including the content and dissemination of the various statements that plaintiff contends are false and misleading. Defendants Merkin had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39. Defendant Merkin had direct and supervisory involvement in the day-to-day operations of Ascot and, therefore, is presumed to have had the power to control or

14

influence the particular statements giving rise to the securities violations as alleged herein, and exercised the same.

40. By virtue of his position as a controlling person, Defendant Merkin is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their acquisitions of limited partnership interests in Ascot.

## COUNT III
### For Violation of Common Law Fraud
### (Against All Defendants)

41. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42. Plaintiff and other members of the Class in reasonable and justifiable reliance upon the statements and representations made by Defendants, as previously set forth herein, purchased limited partnership investment interests in Ascot. Plaintiff and other members of the Class would not have purchased their limited partnership investment interests in Ascot except for their reliance upon the representations made by Defendants in the Offering Memorandum, and would never have purchased them had they been aware of the material omission and concealment by Defendants of the fact that Merkin, the General Partner had entrusted the entire investment fund and strategy to Madoff.

43. At the time the statements and representations were made by the Defendants in the Offering Memorandum, the Defendants knew them to be false and intended to deceive plaintiff and other members of the Class by making such statements and representations.

15

44. At the time of the false statements, misrepresentations and omissions, set forth above, each of the Defendants intended that plaintiff and other members of the Class would act on the basis of the misrepresentations and omissions contained in the Offering Memorandum in determining whether to purchase limited partnership interests in Ascot. Plaintiff and other class members reasonably relied theron to their detriment in making such decisions.

45. Had Plaintiff and other members of the Class known of the material facts that the Defendants wrongfully concealed and misrepresented, and the falsity of the Defendants' representations, plaintiff and other class members would not have purchased their limited partnership investment interests in Ascot.

46. Plaintiff and other members of the Class, as a result of their purchase of limited partnership investment interests in Ascot and by reasons of the Defendants' wrongful concealments and misrepresentations, have sustained damages, suffered mental and emotional distress and have lost a substantial part of their respective investments in an amount yet to be determined, and to be proven at trial.

47. By reason of the foregoing, Defendants are jointly and severally liable to plaintiff and other class members.

48. Defendants' fraudulent acts were willful and wanton and plaintiff and other class members are entitled to punitive damages.

### COUNT IV
### Negligent Misrepresentation
### (Against All Defendants)

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. The Defendants owed to plaintiff and other class members a duty: (a) to act with reasonable care in preparing and disseminating the Offering Memorandum and other representations relied upon by plaintiff and other class members in deciding to purchase their limited partnership investment interests in Ascot; and (b) to use reasonable diligence in determining the accuracy of and preparing the information contained in the Offering Memorandum. Defendant Seidman knew that its audited annual financial statement reports would be provided to limited partners and potential investors in Ascot and relied on by them in making investment decisions concerning Ascot limited partnership interests.

51. The Defendants breached their duties to plaintiff and other class members by failing to investigate, confirm, prepare and review with reasonable care the information contained in the Offering Memorandum and other representations, including the audited annual financial statements.

52. Neither the Offering Memorandum nor any other offering material used in soliciting investment in Ascot ever disclosed that virtually all of Ascot's assets were invested with Madoff, BMIC or other Madoff controlled entities. As a direct, foreseeable and proximate result of this negligence, plaintiff and other class members have sustained damages, suffered mental and emotional distress and have lost a substantial part of their respective investments in an amount yet to be determined, and to be proven at trial.

53. By reason of the foregoing, Defendants are jointly and severally liable to plaintiff and other class members.

54. Defendants' fraudulent acts were willful and wanton and plaintiff and other class members are entitled to punitive damages.

## COUNT V
## For Breach of Fiduciary Duty
## (Against Merkin)

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. Defendant Merkin has breached his fiduciary duties to the plaintiff and other class members.

57. As a result of his conduct in abrogating his duties as General Partner to use due care in the management of the assets of Ascot for the benefit of its limited partners, as alleged hereinabove, Defendant Merkin has failed to fulfill his fiduciary duty owed to plaintiff and other members of the class by acting in bad faith, with gross negligence and in utter disregard for due care and reasonable and prudent investment standards.

58. As a proximate result of Merkin's bad faith breach of fiduciary duty, plaintiff and other class members have sustained damages, suffered mental and emotional distress and have lost most, if not all, of their respective investments in an amount yet to be determined, and to be proven at trial.

59. By reason of the foregoing, Defendant Merkin is liable to plaintiff and other limited partners of Ascot who continue to own their interests in Ascot.

WHEREFORE, plaintiffs pray for relief and judgment, as follows:

A. Determining that this action to be a proper class action and certifying plaintiff as a class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding damages in favor of plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of

Defendants' violations of the Exchange Act, common law fraud, negligent misrepresentation and breach of fiduciary duty under the laws of New York State, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as is just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 16, 2008

ABBEY SPANIER RODD
& ABRAMS, LLP

By: /s/ Nancy Kaboolian
Stephen T. Rodd, Esq. (SR 8228)
srodd@abbeyspanier.com
Nancy Kaboolian, Esq. (NK 6346)
nkaboolian@abbeyspanier.com
Richard B. Margolies, Esq. (RM 9311)
rmargolies@abbeyspanier.com
212 East 39th Street
New York, NY 10016
Tel.: 212-889-3700
Fax: 212-684-5191

*Attorneys for Plaintiff*

## CERTIFICATION OF LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Richard A. Matasar, Dean and President of New York Law School, on behalf of the New York Law School ("NYLS"), declare as follows:

1. I have reviewed a copy of the complaint filed against Ascot Partners L.P., et. al. in this action.

2. NYLS did not invest in Ascot Partners L.P which is the subject of this action at the direction of counsel or in order to participate in any private action arising under the Private Securities Litigation Reform Act (the "PSLRA").

3. NYLS is willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. NYLS invested $3million in Ascot Partners L.P. which is the subject of this litigation on December 13, 2006.

5. NYLS has not served as or sought to serve as a representative party on behalf of a class during the last three years.

6. NYLS will not accept any payment for serving as a representative party, except to receive its pro rata share of any recovery or as ordered or approved by the court or any award to it by the Court of reasonable costs and expenses (including lost wages) directly relating to its representation of the class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 12/16/08

Signed: _____
Richard A. Matasar
Dean and President
New York Law School