**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re J. EZRA MERKIN AND GABRIEL CAPITAL CORP. LITIGATION | Consolidated Case<br>Master Docket No. 08 CV 10922 (DAB)<br>09 CV 2001 (DAB) (*Nephrology* Action)<br>09 CV 4407 (DAB) (*Finkelstein* Action) |

**MEMORANDUM OF LAW IN SUPPORT OF NEPHROLOGY ASSOCIATES PC
PENSION PLAN AND JACOB E. FINKELSTEIN CGM IRA ROLLOVER
CUSTODIAN'S MOTION TO VACATE THE CONSOLIDATION ORDER
AND TO APPOINT JACOB E. FINKELSTEIN CGM IRA ROLLOVER
CUSTODIAN LEAD PLAINTIFF OVER THE ARIEL INVESTORS' CLAIMS**

# TABLE OF CONTENTS

**Page Nos.**

Table of Authorities......................................................................................................ii

ISSUES PRESENTED ON THIS APPLICATION ........................................................1

PRELIMINARY STATEMENT .....................................................................................1

STATEMENT OF FACTS AND PROCEDURAL POSTURE........................................2

ARGUMENT...................................................................................................................5

I.     THE COURT SHOULD VACATE THE CONSOLIDATION ORDER ...................5

     A.     The Standard for Consolidation......................................................................5

     B.     The Ariel and Ascot Funds Constitute Distinctly Separate Classes.......................6

     C.     The Ariel Plaintiffs and Ascot Plaintiffs Have Conflicting
            Interests, Which Render The Consolidation Inappropriate ...................................8

II.     THE COURT SHOULD APPOINT FINKELSTEIN AS
      LEAD PLAINTIFF OVER THE ARIEL CLAIMS .........................................................9

     A.     The Procedure Required By The PSLRA.........................................................9

     B.     Finkelstein Is Willing To Serve As Class Representative.....................................11

     C.     Finkelstein Meets The Requirements Of F.R.C.P. Rule 23....................................11

III.     THE COURT SHOULD APPROVE FINKELSTEIN'S
      CHOICE OF COUNSEL..............................................................................................13

CONCLUSION .............................................................................................................14

# TABLE OF AUTHORITIES

**<u>CASES</u>** <span style="float:right">**<u>Page(s)</u>**</span>

*In re Donnkenny Inc. Securities Litigation,*
 171 F.R.D. 156 (S.D.N.Y. 1997) ............................................................................................ 13

*In re Fuwei Films Securities Litigation,*
 247 F.R.D. 432 (S.D.N.Y. 2008) .................................................................................. 10, 11, 13

*General Telephone Co. of the Southwest v. Falcon,*
 457 U.S. 147 (1982) ................................................................................................................ 12

*Lax v. First Merchants Acceptance Corp.,*
 Case No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ......................... 4

*MacAlister v. Guterma,*
 263 F.2d 65 (2d. Cir. 1958) ................................................................................................... 5, 6

*In re NASDAQ Market-Makers Antitrust Litigation,*
 172 F.R.D. 119 (S.D.N.Y. 1997) ....................................................................................... 12, 13

*In re Oxford Health Plans, Inc., Securities Litigation.,*
 182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................. 12

*Renaissance Nutrition Inc. v. Kurtz,*
 08-CV-0800S(Sr), 2009 U.S. Dist. LEXIS 44219 (W.D.N.Y. May 27, 2009) ......................... 6

*In re Repetitive Stress Injury Litigation,*
 11 F. 3d. 368 (2d. Cir. 1993) ................................................................................................. 5, 6

*Robidoux v. Celani,*
 987 F.2d 931 (2d Cir. 1993) ................................................................................................... 12

*Schulman v. Luminis, Ltd.,*
 No. 02 Civ. 1989 (DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003) ........................ 11, 12

*Webb v. Goord,*
 197 F.R.D. 98 (S.D.N.Y. 2000) ................................................................................................ 5

*Weinberg v. Atlas Air Worldwide Holdings, Inc.,*
 216 F.R.D. 248 (S.D.N.Y. 2003) ............................................................................................ 11

*Weltz v. Lee,*
 199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................................ 12

**RULES & STATUTES** <span style="float:right">**Page(s)**</span>

Federal Rules of Civil Procedure
  Rule 42(a) ........................................................................................................5

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
  15 U.S.C. § 78u-4, *et seq.*..............................................................*passim*

**OTHER AUTHORITIES** <span style="float:right">**Page(s)**</span>

Michael A. Perino, *Securities Litigation After The Reform Act,* at § 2.04 A, p. 2033....................10

## ISSUES PRESENTED ON THIS APPLICATION

A.    Whether this Court should <u>vacate</u> its Order dated June 25, 2009 consolidating the

actions styled *Nephrology Associates, PC Pension Plan v. Ariel Fund Ltd., et al.*, C.A. No. 09-

cv-2001 (DAB) ("*Nephrology* action") and *Jacob E. Finkelstein CGM IRA Rollover Custodian v.*

*Ariel Fund Ltd., et al.*, C.A. No. 09-cv-4407 (DAB) ("*Finkelstein* action") (together, the *Ariel*

action)[1] with the action styled *In re J. Ezra Merkin And Gabriel Capital Corp. Litigation*, No. 08

Civ. 10922 (DAB) ("*Ascot* action") on the grounds that consolidation of these actions, alleging

claims on behalf of different classes of investors, will cause prejudice that otherwise outweighs

efficiencies that could be achieved through coordination.

B.    Once consolidation is vacated, whether a separate lead plaintiff and concomitant lead

counsel should be appointed to prosecute the *Ariel* action's claims in a coordinated manner with the

counsel previously appointed in the *Ascot* action.

## PRELIMINARY STATEMENT

Jacob E. Finkelstein CGM IRA Rollover Custodian, supported by Nephrology

Associates, PC Pension Plan (collectively, "Movants"), respectfully submits this memorandum

(1) in support of a motion to vacate the consolidation of the *Ariel* action with the *Ascot* action;

and (2) in support of a motion to be appointed lead plaintiff pursuant to the Private Securities

Litigation Reform Act of 1995 (the "PSLRA"), codified at 15 U.S.C. § 78u-4(a)(3)(B), section

21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act").

In the Consolidation Order, the Court consolidated the *Ariel* action "for all purposes"

with the *Ascot* action. *See* Consolidation Order at 3. The Consolidation Order, however, should

---

[1] *See* Order dated June 25, 2009 (the "Consolidation Order") at Docket No. 23.

be vacated, or at a minimum modified, because it will prejudice members of the class alleged in the *Ariel* action.

The prejudice stems from a very rudimentary principle: The *Ariel* action is on behalf of investors in Ariel Fund Limited; the *Ascot* action is on behalf of investors in Ascot Partners, L.P. These are two separate and distinct classes of investors who possess competing and conflicting interests. Thus, consolidating the claims of investors in entirely different funds creates an inevitable intra-class conflict that will overly complicate class certification due to issues concerning liability, and damage calculations. Indeed, given that the Ascot fund was totally wiped out by Madoff's fraud while only a portion of the Ariel fund was decimated, Ascot investors are likely to assert claims against the Ariel fund in an effort to recoup their losses as discussed below.

Furthermore, the PSLRA sets forth a statutory framework for appointment of lead counsel in securities cases. By entering the Consolidation Order when it did, this Court may have inadvertently circumvented the procedure mandated by Congress for organizing securities litigation. Consequently, pursuant to the PSLRA, Finkelstein hereby moves for appointment as lead counsel over the claims and parties solely in the *Ariel* action.

## STATEMENT OF FACTS AND PROCEDURAL POSTURE

The *Nephrology* action was filed on March 4, 2009, as a class action alleging common law fraud claims against Ariel, Gabriel Capital Corporation, J. Ezra Merkin, Fortis Bank Solutions (Cayman) Ltd., Fortis Bank, BDO Tortuga, and BDO International.

On May 7, 2009, the *Finkelstein* action was commenced against these same defendants, alleging, *inter alia*, the same allegations plead in the *Nephrology* action but also violations of sections 10(b) and 20(a) of the Exchange Act.

Both complaints allege that defendants facilitated the massive, fraudulent scheme perpetrated by Bernard L. Madoff. The complaints allege that defendants permitted significant amounts of Ariel's assets to be invested with Madoff absent the requisite due diligence and investigation that defendants owed to members of the class.

Previously, on December 16, 2008, the first case comprising the *Ascot* Action was filed by New York Law School. That pleading, however, was brought only on behalf of investors in the Ascot fund.

In addition to the fact that the *Ascot* and *Ariel* actions are on behalf of entirely different funds, "substantially all" of Ascot's assets were invested with Madoff, and he concealed this fact from nearly all of the fund's investors. On the other hand, approximately 30% of Ariel's assets were invested with Madoff while the remaining portion was invested outside of Madoff. Also, Ascot was an on-shore investment vehicle, while Ariel was offshore. Accordingly, each fund must address different tax regulations. Furthermore, the *Ascot* action does not name any of the Fortis entities as defendants.

On April 6, 2009, the Court appointed New York Law School and Scott Berrie as Co-Lead Plaintiffs over the *Ascot* action claims.[2] On April 27, 2009, New York Law School and Scott Berrie filed a Consolidated Amended Class Action Complaint.[3] While extremely inclusive and well-written, it does not plead claims on behalf of Ariel investors.

---

[2] Docket No. 20.

[3] Docket No. 21.

On June 25, 2009, the Court entered the Consolidation Order with the proviso that motions in opposition or modifications to its terms were to be filed within thirty days of its entry. *See* Consolidation Order, at 4.

In addition to the forgoing, the PSLRA sets forth procedures for the appointment of lead plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(1). The plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.[4] Members of the purported plaintiff class may seek appointment as lead plaintiff within 60 days after publication of such notice. No later than 90 days after the date on which the notice was published, the Court should consider all timely motions for appointment as lead plaintiff and determine which class member is "most capable of adequately representing the interests of class members." 15 U.S.C. §§ 78u-4(a)(3)(A)(i), (a)(3)(B)(i). The time period in which a class member in this action may move to be appointed lead plaintiff expires on July 6, 2009. Pursuant to the PSLRA, Finkelstein has timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.

Accordingly, Finkelstein hereby submits this application to vacate the consolidation along with a motion for appointment of a separate lead plaintiff and lead counsel with respect to the *Ariel* action.

---

[4]A copy of the first published notice is annexed to the Declaration of Russell S. Miness, dated July 6, 2009 ("Miness Decl.") at Ex. 1. Publication of this notice on the *Business Wire* satisfies the Exchange Act's requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Lax v. First Merchs. Acceptance Corp.*, Case No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997)(internal citation omitted).

## ARGUMENT

### I. THE COURT SHOULD VACATE THE CONSOLIDATION ORDER

#### A. The Standard for Consolidation

Consolidation of the *Ariel* Actions into the *Ascot* action does not further the goals of Rule 42(a) Federal Rule of Civil Procedure. Consolidation, instead, will fuel an internecine battle that will prejudice the members of each class.

Federal Rule of Civil Procedure 42(a) provides:

> If actions before the court involve a common question of law or fact, the court may:
>
> 1) join for hearing or trial any or all matters at issue in the actions;
>
> 2) consolidate the actions; or
>
> 3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

The proponent of consolidation bears the burden of demonstrating that an aggregation of the parties is proper. See *Webb v. Goord*, 197 F.R.D. 98, 101 (S.D.N.Y. 2000) (the party seeking to consolidate bears the burden of showing consolidation is appropriate) *citing In re Repetitive Stress Injury Litig.*, 11 F.3d. 368, 373-74 (2d. Cir. 1993). In order to satisfy this burden, the proponent must demonstrate the existence of "compelling circumstances" that would warrant consolidation. *MacAlister v. Guterma*, 263 F.2d 65, 69 (2d. Cir. 1958).

If the prejudice to a party outweighs the advantages of consolidation, then the burden will not be met because the advantages of consolidation "cannot be pursued at the sacrifice of fairness to all the parties." *Webb*, 197 F.R.D. at 101. Moreover, the Court's interest in the preservation of judicial economy by consolidation is not sufficient to warrant consolidation because the Court must evaluate whether the savings of cost and time can be accomplished

without prejudice. *See Renaissance Nutrition Inc. v. Kurtz*, 08-CV-0800S(Sr), 2009 U.S. Dist. LEXIS 44219, at *4 (W.D.N.Y. May 27, 2009) ("the paramount concern...is whether 'savings of expense and gains of efficiency can be accomplished without sacrifice of justice.'") *quoting Devlin v. Trans. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999).

Finally, consolidation is not required where judicial economy can be achieved by procedures such as the coordination of discovery. *See MacAlister*, 263 F.2d at 70 (consolidation is inappropriate where there other "avenues of relief ... to forestall the possible confusion and duplication"); *Repetitive Stress*, 11 F.3d at 374. As demonstrated below, the requirements for consolidation are not satisfied in this case and coordination of the *Ariel* and *Ascot* Actions will achieve the same goals absent creating collateral issues.

**B.    The Ariel and Ascot Funds Constitute Distinctly Separate Classes**

The Court, in ordering the consolidation of the *Ariel* and *Ascot* actions, joined two separate classes with distinct fact patterns.    Although Movants recognize the importance of judicial economy, the Consolidation Order creates prejudice against both Ascot and Ariel investors.

Ariel and Ascot are distinct legal entities, which share nothing, except for some overlapping defendants, and a common control person – J. Ezra Merkin.  Merkin created Ascot Partners, L.P., a Delaware limited partnership, and Ascot Fund Limited, an offshore fund incorporated in the Cayman Islands, in 1992 for the sole, but undisclosed, purpose of serving as a feeder to Madoff. From that time until 2008, virtually all of the fund's assets were handed over to Madoff.   Upon information and belief, as of October 1, 2008, Ascot had over 300 investors with a total of $1.7 billion under management.

It has been reported that Merkin delivered billions of his investors' money to Madoff, and stated that Ascot was so safe he "would put his own mother in it."   Merkin, however, did not

share that confidence personally. Merkin's Ascot management fees for the years 1995 to 2007, which are reported to be totaled more than $169 million, were paid directly to him. They were not reinvested in Ascot. Aside from these fees, Merkin invested, personally and through family trusts and foundations, approximately $7 million in Ascot in its first six years, but less than $2 million over the following decade. Merkin therefore realized cash earnings from Ascot of approximately $169 million, and lost only a small fraction of that amount to Madoff's Ponzi scheme via the Ascot vehicle. As is painfully known today, Ascot was almost completely invested in Madoff and therefore its investors were completely "wiped out" by the Madoff fraud.

Conversely, Merkin created Ariel Fund Limited and Gabriel Capital, L.P. (known at first as Ariel Capital, L.P.) in 1988. Ariel is an offshore fund incorporated in the Cayman Islands. It is structured to service foreign investors and others, including non-profit organizations, not subject to certain U.S. taxes. Upon information and belief, Ariel had 105 investors with a total of $1.3 billion under management. It reportedly allocated 30% percent of its investments in Madoff and therefore suffered a substantially different loss than Ascot. Consequently, upon liquidation of Ariel, there should be funds available to its investors.

Merkin's compensation under his agreements with Ariel included an annual management fee of 1% of assets under management. He also took an incentive fee of 20% of any profits. From 1989 to 2007, Merkin's fees from Ariel were $242 million. The incentive fee Merkin collected included 20% of the profits reported by Madoff. These profits were fictitious - thus Merkin's fee was wholly unjustified. It has been reported that after subtracting expenses and fees paid to other outside managers, Merkin's fees for Ariel and Gabriel totaled more than $280 million. For tax reasons, Merkin deferred all fees payable from the offshore Ariel fund, and paid all Gabriel and Ariel expenses out of his Gabriel fees. Upon information and belief, as of the end

of 2008, Merkin's deferred fee account with Ariel had a stated value of approximately $169 million. This money is purportedly sitting in Ariel alongside the assets that were not squandered by Madoff – reported to be approximately 70% of the fund's remainder.

**C.   The Ariel Plaintiffs and Ascot Plaintiffs Have Conflicting Interests, Which Render The Consolidation Inappropriate**

The consolidation of the Ariel investors' claims and Ascot investors' claims is inappropriate because the respective classes have no interest in pursing the claims of the other class. The Finkelstein and Nephrology complaints did not name Ascot as a defendant; likewise, the New York Law School and Scott Berrie Consolidated Amended Class Action Complaint does not name Ariel as a defendant (or the Fortis Entities). As a result, both sets of complaints have interests inapposite to each other. This absence begs the question, even in the absence of antagonistic interests – which are present here - whether the representatives for the Ariel and Ascot classes will vigorously pursue the claims on behalf of the unrepresented class. Any failure to vigorously prosecute either party's claims will result in the unrepresented class experiencing undue prejudice.

The respective classes, as well as the receivers for Ariel and Ascot, are competing for the same pool of funds from the common defendants. Furthermore, Ascot and Ariel have their own separate receiver attempting to retrieve these funds. In seeking this money from the common defendants, the funds are actually competing to recover from the same pool of limited funds. Due to the limited assets available, any recovery on behalf of the Ascot investors would dilute the assets available for the Ariel investors, and vice versa. The resulting antagonism is discouraged by Rule 23 and will bring the adequacy of any class representative into question.

Since Ascot was essentially "wiped out" by the Madoff fraud, a scenario is likely where Ariel, with approximately 70% of its assets still in tact, would be attacked by Ascot in this action as part of the available asset pool.

The most critical factor is that there is approximately $170 million of Merkin's deferred income sitting in Ariel. Ariel investors will argue that those funds should be reachable to satisfy their claims given that they are management fees arising from Ariel. On the contrary, Ascot investors will argue they are entitled to recover management fees from the Ariel pool because Merkin took his fees from Ascot to compensate him for "managing" each of the funds. This would render Ariel a de-facto defendant because it would be forced to protect the remainder of its assets from the Ascot's reach while maintaining an action with Ascot against the common defendants. Such a scenario, which is likely considering the incestuous nature of the funds, would result in chaos as the class' interests would be completely divergent. Consequently, antagonism would reign over what is supposed to be a unified class and both parties would then bear the strain of undue prejudice.

Accordingly, the appropriate solution is that the *Ascot* and *Ariel* actions not be consolidated, but coordinated so that discovery will be non-duplicative but discreet issues that place the funds at odds can be addressed equitably and vigorously.

## II. THE COURT SHOULD APPOINT FINKELSTEIN AS LEAD PLAINTIFF OVER THE ARIEL CLAIMS

### A. The Procedure Required By The PSLRA

Assuming the Court is inclined to modify the Consolidation Order so that there is some distinction between the classes, there will be the need for a lead plaintiff and lead counsel to prosecute Ariel investors' claims and coordinate with lead counsel for Ascot. The PSLRA dictates the procedure for appointment of the Lead Plaintiff in "each private action arising under

[the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i). The PSLRA requires the court to consider within 90 days all motions that were filed within 60 days after publication of that notice made by any person or group of persons who are members of the proposed class to be appointed Lead Plaintiff. Sections 21D(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i). Courts must wait until these dates have transpired before appointing a lead plaintiff. *See* Michael A. Perino, *Securities Litigation After The Reform Act*, at § 2.04 A, p. 2033.

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

i)      has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

ii)     in the determination of the court, has the largest financial interest in the relief sought by the class; and

iii)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). *See also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008).

It is clear that Finkelstein meets the requirements set forth by the PSLRA. Finkelstein filed a complaint alleging violations of federal securities laws and has filed this motion pursuant to the notice Finkelstein caused to be published. Furthermore, Finkelstein has filed this motion to be appointed lead counsel within the PSLRA mandated 60 day time period. Consequently, Finkelstein may not be denied the right to apply to be lead plaintiff in this matter.

In addition, Finkelstein is not aware of any unique defenses that defendants can raise against it, and is not aware of any competing claims alleging federal securities laws violations by investors in Ariel. Therefore, Finkelstein is most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff over the federal securities claims.

**B.**     **Finkelstein Is Willing To Serve As Class Representative**

On May 7, 2009, Finkelstein caused a notice to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against defendants, and which advised putative class members that they had until July 6, 2009 to file a motion to seek appointment as lead plaintiff. *See* Miness Decl. at Ex. 1. Finkelstein has filed a complaint with a certification attached thereto attesting to its willingness to serve as representative of the Class and provide testimony at deposition and trial, if necessary. *Id.* at Ex. 2. Finkelstein timely filed this motion pursuant to the notice. Accordingly, Finkelstein satisfies the first requirement to serve as lead plaintiff for the Class. *See* Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

**C.**     **Finkelstein Meets The Requirements Of F.R.C.P. Rule 23**

Finkelstein also satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are the provisions of Rule 23 relevant to the appointment of lead plaintiff under the PSLRA. *See Fuwei Films*, 247 F.R.D. at 436; *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman v.*

*Luminis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *19 (S.D.N.Y. June 18, 2003).

*See also Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (considering only typicality and adequacy on a motion for consolidation and for designation of lead plaintiff and lead counsel).

Finkelstein's certification establishes that it meets the typicality requirement of Rule 23 because it: (i) suffered the same injuries as the absent class members; (ii) suffered as a result of the same course of conduct by defendants; and (iii) their claims are based on the same legal issues. *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiffs be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 127 (S.D.N.Y. 1997). A finding of commonality frequently supports a finding of typicality. *See General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting how the commonality and typicality requirements "merge"). Here, the questions of law and fact common to the members of the Class and which may affect individual Class members include the following:

1.    whether the federal securities laws were violated by defendants' acts;

2.    whether laws were violated by defendants' acts;

3.    whether statements made by defendants misrepresented material facts about the business, operations, investments, and financial condition of Ariel;

4.    whether defendants acted knowingly or recklessly in making materially false and misleading statements; and

5.    whether defendants' conduct was intentional, reckless, and/or grossly negligent and/or in violation of fiduciary duties owed to plaintiffs and the Class, and therefore violated the statutory and common law of New York.

These questions apply equally to all members of the proposed Class. Similar to all of the other members of the Class, Finkelstein purchased investments in Ariel, and suffered losses from these investments during the Class Period. Because Finkelstein's claims are based on the same legal theories and "arise from the same course of conduct that gives rise to the claims of other Class members," the typicality requirement is satisfied. *See NASDAQ Market-Makers*, 172 F.R.D. at 126; *Fuwei Films*, 247 F.R.D. at 437 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

## III.    THE COURT SHOULD APPROVE FINKELSTEIN'S CHOICE OF COUNSEL

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to court approval, select and retain counsel to represent the Class. *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997). The Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Selected counsel has extensive experience in successfully prosecuting complex securities actions and has frequently appeared in major actions in this and other courts. *See* Miness Decl., Ex. 3. In that regard, Finkelstein requests the appointment of Wolf Haldenstein Adler Freeman & Herz LLP, to serve as lead counsel over the claims against defendants.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court: (1) vacate the Consolidation Order and direct that the *Ariel* and *Ascot* actions be coordinated; (2) appoint Finkelstein as lead plaintiff over the claims involving Ariel; and (3) approve Finkelstein's selection of counsel to prosecute the claims against Ariel.

Dated: July 6, 2009

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**


By:  /s/_____
      Gregory Mark Nespole
      Nespole@whafh.com
      Russell S. Miness
      270 Madison Ave.
      New York, NY 10016
      (212) 545-4600

***Attorneys for Movants***

/550513

14