UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re

J. EZRA MERKIN AND BDO SEIDMAN
SECURITIES LITIGATION

No. 08 Civ. 10922 (DAB)

-----------------------------------------------------------x


### MEMORANDUM OF DEFENDANT BDO USA, LLP
### <u>IN SUPPORT OF MOTION TO DISMISS</u>


Ira G. Greenberg
Florence A. Crisp
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendant BDO USA, LLP
750 Lexington Avenue, 8th floor
New York, NY  10022
(212) 308-4411

## TABLE OF CONTENTS

Page

STATEMENT OF FACTS ............................................................................................1

ARGUMENT ..........................................................................................................4

I.  THE EXCHANGE ACT CLAIM MUST BE DISMISSED ..................................... 4
   A.  Purchase and Sale ...............................................................................4
   B.  Reliance............................................................................................4
   C.  Scienter ............................................................................................5

II.  SLUSA PREEMPTS ALL STATE LAW CLAIMS............................................. 10

III.  PLAINTIFFS LACK STANDING TO ASSERT MOST OF THEIR STATE
    LAW CLAIMS...........................................................................................11

IV.  THE COMMON LAW FRAUD CLAIM MUST BE DISMISSED............................ 13

V.  THE BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED.............. 15

VI.  THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM
    MUST BE DISMISSED ............................................................................. 16

VII.  THE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED........................... 17

VIII.  THE NEGLIGENT MISREPRESENTATION CLAIM MUST BE
     DISMISSED ........................................................................................... 17
   A.  Standing ...........................................................................................18
   B.  No Reliance .......................................................................................18
   C.  No Breach of Duty ..............................................................................19

CONCLUSION......................................................................................................26

NYC 323612.4

# TABLE OF AUTHORITIES

CASES

Able Energy, Inc. v. Marcum & Kliegman LLP,
  69 A.D.3d 443, 893 N.Y.S.2d 36 (1st Dep't 2010)......................................15

Acito v. IMCERA Group, Inc.,
  47 F.3d 47 (2d Cir. 1995) ..............................................................5, 6

Albert v. Alex. Brown Mgmt. Servs., Inc.,
  2005 WL 2130607 (Del. Ch.)...........................................................12

Ambassador Factors v. Kandel & Co.,
  215 A.D.2d 305, 626 N.Y.S.2d 803 (1st Dep't 1995)..................................14

Ashcroft v. Iqbal,
  129  S. Ct. 1937 (2009)..................................................................25

ATSI Communications, Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007) .............................................................5, 6

AUSA Life Ins. Co. v. Ernst & Young,
  119 F. Supp. 2d 394 (S.D.N.Y. 2000) ...................................................7

Backus v. Connecticut Community Bank, N.A.,
  2009 WL 5184360 (D. Conn.) ...........................................................11

Baraliu v. Vinya Capital, L.P.,
  2009 WL 959578 (S.D.N.Y.)............................................................13

Barron v. Igolnikov,
  2010 WL 882890 (S.D.N.Y.)............................................................11

Bay Harbour Mgmt. LLC v. Carothers,
  2008 WL 2566557 (2d Cir.) ............................................................18

Blue Chip Stamps v. Manor Drug Stores,
  421 U.S. 723 (1975)......................................................................4

Caiola v. Citibank, N.A.,
  295 F.3d 312 (2d Cir. 2002) .............................................................4

Central Bank  v. First Interstate Bank,
   511 U.S. 164 (1994)......................................................................4

Chill v. General Elec. Co.,
  101 F.3d 263 (2d Cir. 1996) ...........................................................5, 6

Credit Alliance Corp. v. Arthur Andersen & Co.,
  65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985)..........................................18

CRT Investments, Ltd. v. Merkin,
  Index No. 601052/09, slip op., (N.Y. Sup. Ct.,
  New York County, May 7, 2010) ..................................................................14, 16, 18

DaPuzzo v. Reznick Fedder & Silverman,
  14 A.D.3d 302, 788 N.Y.S.2d 69 (1st Dep't 2005).......................................................14

Decker v. Massey-Ferguson, Ltd.,
  681 F.2d 111 (2d Cir. 1982) ...........................................................................................5

Denny v. Barber,
  576 F.2d 465 (2d Cir. 1978) ...........................................................................................7

DG Liquidation, Inc. v. Anchin, Block & Anchin, LLP,
  300 A.D.2d 70, 750 N.Y.S.2d 753 (1st Dep't 2002)....................................................15

Diana Allen Life Ins. Trust v. BP P.L.C.,
  2009 WL 1773339 (2d Cir.) ..........................................................................................12

Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,
  551 F. Supp. 2d 210 (S.D.N.Y. 2008) ..........................................................................13

Eurycleia Partners, LP v. Seward & Kissel, LLP,
  46 A.D.3d 400, 849 N.Y.S.2d 510 (1st Dep't 2007),
  aff'd, 12 N.Y.3d 553, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009) ...................15, 18, 19

Fezzani v. Bear, Stearns & Co.,
  592 F. Supp. 2d 410 (S.D.N.Y. 2008) ..........................................................................13

Giant Group, Ltd. v. Arthur Andersen LLP,
  2 A.D.3d 189, 770 N.Y.S.2d 291 (1st Dep't 2003)......................................................13

In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,
  381 F. Supp. 2d 192 (S.D.N.Y. 2004) ............................................................................8

In re Bayou Hedge Fund Litig.,
  534 F. Supp. 2d 405 (S.D.N.Y. 2007), aff'd sub nom. South Cherry
  Street, LLC v. Hennessee Group LLC, 573 F.3d 98 (2d Cir. 2009).............................7

In re Carter-Wallace, Inc. Sec. Litig.,
  220 F.3d 36 (2d Cir. 2000) .............................................................................................6

In re Doral Fin. Corp. Sec. Litig.,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008) ............................................................................9

In re Marsh & McLennan Cos., Inc. Sec. Litig.,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...........................................................7

In re Oxford Health Plans, Inc. Sec. Litig.,
    51 F. Supp. 2d 290 (S.D.N.Y. 1999) .............................................................8

In re Parmalat Sec. Litig.,
    501 F. Supp. 2d 560 (S.D.N.Y. 2007) ........................................................23

In re Tremont Sec. Law, State Law & Ins. Litig.,
    2010 WL 1257580 (S.D.N.Y.)............................................................. passim

In re Warnaco Group, Inc. Sec. Litig.,
    388 F. Supp. 2d 307 (S.D.N.Y. 2005),
    aff'd sub nom. Lattanzio v. Delotitte & Touche LLP,
    476 F.3d 147 (2d Cir. 2007) .......................................................................15

Instituto de Prevision Militar v. Merrill Lynch,
    546 F.3d 1340 (11th Cir. 2008) ...................................................................10

J.A.O. Acquisition Corp. v. Stavitsky,
    8 N.Y.3d 144, 148, 831 N.Y.S.2d 364,
    366, 863 N.E.2d 585, 587 (2007) ..............................................................19

Kalnit v. Eichler,
    264 F.3d 131 (2d Cir. 2001) .....................................................................5, 6

Kaufman v. Cohen,
    307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003)...................................16

Kingdom 5-KR-41, Ltd. v. Star Cruises PLC,
    2004 WL 444554 (S.D.N.Y.)........................................................................10

Lama Holding Co. v. Smith Barney Inc.,
    88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)..................13, 14

LaSalle Nat'l Bank v. Ernst & Young L.L.P.,
    285 A.D.2d 101, 729 N.Y.S.2d 671 (1st Dep't 2001)..................................13

Levinson v. PSCC Servs., Inc.,
    2009 WL 5184363 (D. Conn.) ....................................................................11

Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.,
    2010 WL 1257567 (S.D.N.Y.)....................................................................7, 8

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
    547 U.S. 71 (2006)................................................................................10, 11

Metral v. Horn,
    213 A.D.2d 524, 624 N.Y.S.2d 177 (2d Dep't 1995) ................................................18

Novak v. Kasaks,
    216 F.3d 300 (2d Cir. 2000) ...............................................................................5, 6, 7

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
    2010 WL 546964 (S.D.N.Y.)...............................................................................11

Rahl v. Bande,
    328 B.R. 387, 2005 U.S. Dist. LEXIS 15576 (S.D.N.Y. 2005) ...................................15

RCM Sec. Fund, Inc. v. Stanton,
    928 F.2d 1318 (2d Cir. 1991) .............................................................................12

Resolution Trust Corp. v. KPMG Peat Marwick,
    844 F. Supp. 431 (N.D. Ill. 1994).........................................................................15

Ross v. Louise Wise Servs., Inc.,
    8 N.Y.3d 478, 836 N.Y.S.2d 509, 868 N.E.2d 189 (2007)..........................................13

Rothman v. Gregor,
    220 F.3d 81 (2d Cir. 2000) ..........................................................................5, 6, 20

SEC v. Zandford,
    535 U.S. 813 (2002).........................................................................................10

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) ................................................................................6

SIPC v. BDO Seidman, LLP,
    95 N.Y.2d 702, 723 N.Y.S.2d 750, 746 N.E.2d 1042 (2001)......................................18

SIPC v. BDO Seidman, LLP,
    222 F.3d 63 (2d Cir. 2000) ................................................................................18

Stephenson v. Citco Group Ltd.,
    2010 WL 1244007 (S.D.N.Y.)..................................................................9, 12, 13, 14

Stevelman v. Alias Research, Inc.,
    174 F.3d 79 (2d Cir. 1999) ..................................................................................5

Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,
    552 U.S. 148 (2008)...........................................................................................4

Tal v. Superior Vending, LLC,
    20 A.D.3d 520, 799 N.Y.S.2d 532 (2d Dep't 2005) ................................................15

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
   551 U.S. 308 (2007) ................................................................................................6

Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP,
   586 F. Supp. 2d 119 (S.D.N.Y. 2008) ...................................................................18

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
   845 A.2d 1031 (Del. 2004) ...................................................................................12


STATUTES AND REGULATIONS

15 U.S.C. § 78bb .......................................................................................................10

15 U.S.C. § 78u-4(b)(2) ..............................................................................................5

17 C.F.R. § 240.17a-5(f)(2)........................................................................................25

STATEMENT OF FACTS

Defendant BDO USA, LLP, f/k/a/ BDO Seidman, LLP ("BDO USA") moves to dismiss. The facts that follow come from the third amended complaint ("Complaint"), a copy of which is annexed to the moving declaration of Ira G. Greenberg as exhibit A.

Insofar as is relevant, two of the representative plaintiffs, New York Law School and Scott Berrie, invested in limited partnership interests in domestic hedge funds, respectively, Ascot Partners, L.P. and Gabriel Capital, L.P. (¶¶ 3, 20-21, 32-33), and two, Jacob Finkelstein CGM Rollover Custodian and Nephrology Associates PC Pension Plan, invested in a foreign hedge fund, Ariel Fund Limited (¶¶ 3, 22-23, 34).[1] They purport to sue on behalf of purchasers of interests in the funds between December 11, 2003, and December 11, 2008, for claims under the Securities Exchange Act, and between January 20, 1994, and December 11, 2008, for state law claims (¶ 35).

The Complaint alleges that defendants Ezra Merkin and his management company, Gabriel Capital Corporation, ran the funds (¶¶ 2, 24). It also details a number of knowing misrepresentations that they made, principally about how the funds were to be managed, in what they were to invest, and what Merkin's role was to be (¶¶ 47-77, 84-95, 110-20) — most significantly, that Merkin would personally control investments when he planned to and did abdicate to Bernard Madoff (e.g., ¶¶ 9, 11-12).[2]

Madoff was a well-known industry figure who had pioneered electronic trading and was a major market maker, and he apparently had a consistent history of

---

[1] Parenthetical paragraph cites are to the Complaint.
[2] This memorandum sometimes uses the term "Madoff" as a shorthand for his business entity, Bernard L. Madoff Investment Securities, LLC.

investing success (¶ 45).   In fact, however, he had been running a Ponzi scheme since the early 1990s (¶¶ 1, 4-5, 42) and had not actually invested any money entrusted to him since then (¶ 42; see ¶ 41).   The scheme unraveled in late 2008 (¶¶ 5, 37-44).

The SEC and FINRA regulated Madoff's business (¶ 45).   A whistleblower had repeatedly reported to the SEC that Madoff was a fraud (¶¶ 124, 134-42).   Even though the SEC conducted at least three investigations of Madoff's operations, it did not uncover his scheme (¶ 127).   It took no action against him.

A limited number of articles in the financial press had questioned how Madoff could be so successful (¶¶ 126-27, 130-31), and some in the financial community had decided for themselves or had counseled their clients not to invest with Madoff based on their suspicion that his results were too good to be true (¶¶ 135-38, 145-47, 199).   However, "'[t]here were no smoking guns'" (¶ 147), and the very size of the losses – as much as $50 billion (¶ 5) – meant that Madoff had fooled many sophisticated investors and others with industry expertise.

BDO USA did not audit Madoff or any of his entities (see ¶ 209), nor did it make or monitor the propriety of the funds' investment decisions.   It only served as auditor of the Ascot and Gabriel funds (¶ 26).[3]   Each fund was to distribute the financials that BDO USA had audited to its investors within specified periods after year-end (¶¶ 178-79).   There is nothing to suggest that BDO USA knew, or that it had an obligation

---

[3] The Complaint also alleges that BDO USA conducted audits of the Ariel Fund and issued clean audit reports on its annual financial statements (¶ 26).   It does not specify any allegedly fraudulent statement that BDO USA allegedly made with respect to the Ariel Fund, however, much less where and when such statements were made and why they were fraudulent; and the Complaint also alleges that defendant BDO Binder or defendant BDO Tortuga issued audit opinions on the Ariel Fund's financial statements during the very same years (¶¶ 183-84).

as an auditor to have known, of the whistleblower's statements to the SEC, the articles in the financial press, or the decisions of others not to invest with Madoff.

In contrast to the well-organized factual allegations against Merkin and his management company, the Complaint makes a hodgepodge of assertions against BDO USA (¶¶ 178-224).  BDO USA is alleged to have "failed to perform [its] work as auditors . . . in a manner consistent with" generally acceptable auditing standards, or GAAS (¶ 193).  These auditing standards are "codified . . . in the Statements on Auditing Standards" ("AU") (¶ 186).  Essentially, the Complaint says, by the terms of the applicable auditing standards (¶¶ 189-92), a number of facts to which it points (¶¶ 196-99, 211-17) should have caused BDO USA to conduct further audit work.  In addition, it alleges that BDO USA should have learned more about Merkin's and Madoff's (the individuals') internal controls (¶ 211) and should have assessed Madoff's own accounting (¶¶ 213, 216).  As a result, BDO USA's opinions (¶¶ 180-82) that the funds' financial statements were fairly presented under generally accepted accounting principles, or GAAP, turned out to be erroneous.

Based on these assertions, the Complaint alleges claims against BDO USA for violation of section 10(b) of the Exchange Act and of rule 10b-5 under it (count III), breach of fiduciary duty (count V), aiding and abetting breach of fiduciary duty (count VI), unjust enrichment (count VIII), common law fraud (count IX), and negligent misrepresentation (count X).

<u>ARGUMENT</u>

I.      <u>THE EXCHANGE ACT CLAIM MUST BE DISMISSED</u>.

The Complaint does not plead three elements of an Exchange Act claim adequately:  purchase and sale, reliance, and <u>scienter</u>.

A.      <u>Purchase and Sale</u>

Standing to bring a private action under section 10 and rule 10b-5 is limited to "actual purchasers and sellers of securities."  <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 730, 737-38, 750, 754-55 (1975); <u>Caiola v. Citibank, N.A.</u>, 295 F.3d 312, 322 (2d Cir. 2002).  To the extent plaintiffs continue to press claims premised on their having held interests in the funds (it appears they do not), they lack standing to bring such claims.

B.      <u>Reliance</u>

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the [section] 10(b) private cause of action."  <u>Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.</u>, 552 U.S. 148, 159 (2008); <u>see Central Bank v. First Interstate Bank</u>, 511 U.S. 164, 180 (1994).  Plaintiffs do not allege that they received BDO USA's audit reports before investing in the funds or that they relied upon such reports in deciding to invest in the funds.  To the contrary, the Complaint alleges only that BDO USA "knew that the audited financial statements would be provided to and relied on by . . . limited partners" – those who had already invested (¶ 26; <u>see</u> ¶ 178: offering memoranda say audited financials to be provided to limited partners; ¶¶ 180-81:  audit opinions addressed to partners).  The rule 10b-5 count echoes these averments (¶¶ 242, 245).

Plaintiffs' failure to allege that they relied upon BDO USA's audited financial statements in making their decisions to invest in the funds is fatal to their Exchange Act claim.

      C.      Scienter

      1.      What Scienter Is.  Congress has required that a complaint "state with particularity facts giving rise to a strong inference" that a defendant have "acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  To the same effect, see, e.g., ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007); Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995); cf. Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999) (same requirement from Fed. R. Civ. P. 9(b)'s "why" element).  Scienter – a guilty state of mind – long has been an element of the cause of action.  E.g., Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001); Chill v. General Elec. Co., 101 F.3d 263, 266 (2d Cir. 1996); Acito v. IMCERA Group, Inc., 47 F.3d at 52.

      "The requisite state of mind . . . that the plaintiff must allege is 'an intent to deceive, manipulate or defraud.'"  Kalnit v. Eichler, 264 F.3d at 138 (citations omitted). Thus, the Court must be able to infer an intent to participate in a fraud from the facts pleaded.  Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir. 2000); Novak v. Kasaks, 216 F.3d 300, 312-13 (2d Cir. 2000) ("a state of mind 'approximating actual intent, and not merely a heightened form of negligence'"); see Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 121 (2d Cir. 1982) ("approximate an actual intent to aid in the fraud being perpetrated") (predating Private Securities Litigation Reform Act).

      Neither the auditor's alleged violations of GAAS nor allegedly inadequate attention to detail or insufficient skepticism suffices.  Stevelman v. Alias Research, Inc.,

174 F.3d at 84; Chill v. General Elec. Co., 101 F.3d at 270; Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994).   Failure "to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for [section] 10(b) liability." Novak v. Kasaks, 216 F.3d at 309.  Either the defendant must have actually known of the danger or the danger must have been so obvious that the defendant had to have known of it.  Kalnit v. Eichler, 264 F.3d at 142; In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000); Rothman v. Gregor, 220 F.3d at 93.

        2.    How Scienter Is Tested.  The Supreme Court emphasized the importance of this element and explained its application in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007), when it held that a district court "must engage in a comparative evaluation" by considering "competing inferences rationally drawn from the facts alleged."  "To qualify as 'strong'" within the meaning of the Reform Act, "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id.; accord, ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d at 99.

        In the absence of concrete benefits to be realized by the defendant from participating in the fraud,[4] the Court of Appeals has held that a plaintiff must plead facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. E.g., Kalnit v. Eichler, 264 F.3d at 142 ("Where motive is not apparent . . . the strength of the circumstantial allegations must be correspondingly greater").  "Fraud by hindsight"

---

[4] "Motive and opportunity" see, e.g., Rothman v. Gregor, 220 F.3d at 93, is unavailable to prove scienter against BDO USA, as compensation for professional services may not constitute the requisite motive. E.g., Acito v. IMCERA Group, Inc., 47 F.3d at 54.

is not actionable. E.g., Novak v. Kasaks, 216 F.3d at 309; Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978). Rather, the Court evaluates the facts as they appeared before the fraud was revealed.

> Hindsight is always 20/20. . . . But the present inquiry demands that we strive as scrupulously as possible to view the situation as it existed at the time of [the services], with the knowledge [the auditor] then had, and without the knowledge we now have of what actually happened thereafter.

AUSA Life Ins. Co. v. Ernst & Young, 119 F. Supp. 2d 394, 402 (S.D.N.Y. 2000).

Our courts recognize that they must apply these standards rigorously in actions against auditors. See, e.g., In re Tremont Sec. Law, State Law & Ins. Litig., 2010 WL 1257580, at *4 (S.D.N.Y.) (hereinafter, "Tremont") ("The standard for pleading auditor scienter is demanding"); Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc., 2010 WL 1257567, at *5 (S.D.N.Y.). Courts should be particularly chary of drawing inferences of scienter when an auditor's not discovering a fraud puts it on par with the regulatory body with cognizance over the entity that committed the fraud. In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405, 418 (S.D.N.Y. 2007), aff'd sub nom., South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98 (2d Cir. 2009).

Liberal use of the colorful term "red flags" does not substitute for testing the pleaded facts against the Tellabs standard. "Merely labeling allegations as red flags . . . is insufficient to make those allegations relevant to a defendant's scienter." In re Marsh & McLennan Cos., Inc. Sec. Litig., 501 F. Supp. 2d 452, 487 (S.D.N.Y. 2006). More particularly, proffered "red flags" must put the auditors on clear notice of the fraud, such that a failure to do more tends to prove their implication in that wrongdoing. See, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 381 F. Supp. 2d 192, 240 &

n.51 (S.D.N.Y. 2004) (and cases cited); In re Oxford Health Plans, Inc. Sec. Litig., 51 F.

Supp. 2d 290, 294 (S.D.N.Y. 1999).  "[M]erely alleging that the auditor had access to

the information by which it could have discovered the fraud is not sufficient."  Tremont,

2010 WL 1257580, at *5; accord, Meridian Horizon Fund, LP v. Tremont Group

Holdings, Inc., 2010 WL 1257567, at *5.

      3.    Application to this Complaint[5]

      The question on the scienter issue here is whether, ex ante, BDO USA

knew or was willfully blind in not knowing that the assets on the funds' balance sheets

that Madoff was supposed to have held did not actually exist.  The Complaint does not

come close to pleading facts that support a strong inference on that issue.  It even

alleges in this (rule 10b-5) count (¶ 243) that BDO USA "knew, or should have known" –

the latter being language of negligence, not of scienter.[6]

      Moreover, the Complaint makes BDO USA's point in noting (¶ 148) that

"forensic accountants," essentially accounting-savvy fraud investigators, use tests to

detect potential securities fraud in situations such as this.  But as its audit opinion (¶

180) made clear, BDO USA was not acting as a forensic accountant.  The procedures

that forensic accountants use far exceed those that GAAS requires for a financial

statement audit.  Beyond that, BDO USA was not acting as the financial statement

auditor for Madoff, but rather for the two Merkin hedge funds, Ascot and Gabriel, so it

was not even auditing the entity that was engaged in the financial fraud.  See Tremont,

---

[5] For the reasons set forth in note 3 supra, the claim insofar as alleged by the representatives of the Ariel Fund must be dismissed for failure to comply with Fed. R. Civ. P. 9(b).

[6] The Complaint does not even successfully plead lack of due care, as is more fully shown in Point VIII below, to which the Court is respectfully referred.  That failure establishes BDO USA's point here a fortiori.

2010 WL 1257580, at *6 ("But most critically, the Auditors were never engaged to audit Madoff's businesses"); Stephenson v. Citco Group Ltd., 2010 WL 1244007, at *20 (S.D.N.Y.) (auditor defendant dismissed in part because it was "not the auditor of [Madoff])" (hereinafter, "Stephenson").[7]

BDO USA was not responsible to find Madoff's Ponzi scheme, as it was not auditing Madoff; but if it did have that responsibility, it had plenty of company in missing it. The SEC and FINRA did, even though they had direct cognizance over Madoff and investigatory powers that a financial statement auditor, and an auditor of a completely different entity at that, lacked. Many financial institutions, hedge funds, charities, and sophisticated investors, all of which had a direct financial incentive not to give their money to a Ponzi schemer, also did. The auditors of many other funds and institutions around the world did not find Madoff's fraud either. One could not reasonably conclude that all of them were in on Madoff's scheme.

"[T]he more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and eluding the SEC and other financial professionals." Tremont, 2010 WL 1257580, at *5. See also In re Doral Fin. Corp. Sec. Litig., 563 F. Supp. 2d 461, 465 (S.D.N.Y. 2008). That conclusion is inconsistent with a strong inference of scienter.

---

[7] The Complaint cites various purported "red flags" (¶¶ 198-202, 208-09). These are addressed on their merits at greater length in Point VIII infra. It suffices at this juncture to note that substantially similarly allegations against auditors of other hedge funds that invested via Madoff have been found insufficient to support a strong inference of scienter. E.g., Stephenson, 2010 WL 1244007, at *19-20.

II.   SLUSA PREEMPTS ALL STATE LAW CLAIMS.

All state law claims must be dismissed by virtue of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  15 U.S.C. § 78bb.  There are five elements to SLUSA preemption:  (a) a covered class action, (b) brought under state law, (c) alleging misrepresentation or omission of a material fact, (d) in connection with the purchase or sale, (e) of a covered security.  15 U.S.C. § 78bb(f)(1)(A).

(a)   Plaintiffs seek to recover damages on behalf of more than fifty persons, and questions of law and fact common to the members of the class are alleged to predominate (¶ 36).  This is a covered class action.  15 U.S.C. § 78bb(f)(5)(B)(i).

(b)   The Complaint alleges five counts based on New York common law.

(c)   Plaintiffs allege that BDO USA made misrepresentations (¶¶ 185, 210).  State law claims need not be for common law fraud to qualify.  See Instituto de Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1350 (11th Cir. 2008) (negligence and breach of fiduciary duty); Kingdom 5-KR-41, Ltd. v. Star Cruises PLC, 2004 WL 444554, at *3, *5 (S.D.N.Y.) (negligence, unjust enrichment, and breach of contract).

(d)   The alleged misrepresentations were "in connection with" a purchase or sale, a phrase that is broader than the purchase and sale requirement under rule 10b-5.  Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 84-86 (2006) (directing broad construction of statute); see SEC v. Zandford, 535 U.S. 813, 820, 822 (2002); Instituto de Prevision Militar v. Merrill Lynch, 546 F.3d at 1349.

(e)   "Covered securit[ies]" are involved.  As alleged in the Complaint, plaintiffs purchased limited partnership interests based in part on representations that the funds would invest in "a portfolio of large-cap U.S. equities drawn from the S&P 100" (¶ 62); "a diverse portfolio of securities" and "U.S. and non-U.S. marketable and non-

marketable, equity and debt securities" (¶ 92); and "marketable securities" including "common stock" (¶ 103).  Interests in the funds were covered securities because Madoff purported to purchase and sell covered securities.  Barron v. Igolnikov, 2010 WL 882890, at *4-5 (S.D.N.Y.).

> In light of the Supreme Court's command that SLUSA be construed expansively, it is enough that this fraudulent scheme was in connection with the trading in the nationally listed securities in which Madoff claimed to be engaged.  It is not essential that Madoff actually performed any trades or acquired any securities.  And while plaintiff and members of the putative class purchased limited partnership interests in the [funds] – which in turn invested in covered securities [through Ascot Fund] – rather than covered securities directly from Madoff, SLUSA preemption is justified because the securities transaction need not have been performed by plaintiff.

Id. at *5 (citing Dabit and Zandford); accord, Levinson v. PSCC Servs., Inc., 2009 WL 5184363, at *8-12 (D. Conn.) (fund that invested with Madoff is covered security because alleged misrepresentations coincided with Madoff's purported purchase and sale of securities with plaintiffs' money); Backus v. Connecticut Community Bank, N.A., 2009 WL 5184360, at *6-9 (D. Conn.) (retirement funds pooled in collective account and invested with Madoff are covered securities).[8]

III.    PLAINTIFFS LACK STANDING TO ASSERT MOST OF THEIR STATE LAW CLAIMS.

Plaintiffs' state law claims insofar as premised on a duty owed to either Ascot or Gabriel are derivative.  Plaintiffs lack standing to assert them.

---

[8] Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 2010 WL 546964 (S.D.N.Y.), reached a contrary conclusion by reading Dabit too narrowly.  In so doing, the Pension Committee court apparently did not appreciate the Supreme Court's contrary directive in Dabit, such that the fraud need only "coincide" with a transaction in covered securities, 547 U.S. at 85, in order to achieve Congress' objectives.

Delaware law controls the issue of standing for these Delaware limited partnerships (¶¶ 32-33).  E.g., RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1327 (2d Cir. 1991); Stephenson, 2010 WL 1244007, at *7.  Delaware tests standing based on "who suffered the alleged harm" and "who would receive the benefit of any recovery or other remedy."  Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1033 (Del. 2004); see Diana Allen Life Ins. Trust v. BP P.L.C., 2009 WL 1773339 (2d Cir.).  Although Tooley involved a corporation rather than a limited partnership, the analysis is the same.  See Albert v. Alex. Brown Mgmt. Servs., Inc., 2005 WL 2130607, at *12 (Del. Ch.) (determination whether claim is direct or derivative is "substantially the same for corporate cases as it is for limited partnership cases").  A limited partner "must demonstrate that the duty breached was owed to [him or her] and that he or she can prevail without showing an injury to the" limited partnership.  Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d at 1039.

To the extent plaintiffs assert any "holder" claims, such claims are derivative because plaintiffs cannot prevail without showing an injury to the partnership.  See Stephenson, 2010 WL 1244007, at *9-10.  The state law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment involve a duty owed to, and an injury suffered by, the limited partnerships.  A limited partner cannot prevail without showing an injury to the partnership as a whole.  E.g., Stephenson, 2010 WL 1244007, at *7, *9-10.  Likewise, to the extent that the negligent misrepresentation claim is premised on BDO USA's alleged failure to discharge its professional obligations to its audit clients, the funds, that claim must also be dismissed on this ground.  Cf. id. at *10.

*   *   *

But even if SLUSA and standing did not bar the state law claims, the outcome would be the same, as each state law claim fails under separate analysis.

IV.    THE COMMON LAW FRAUD CLAIM MUST BE DISMISSED.

The elements of fraud are essentially the same as those under rule 10b-5. E.g., Tremont, 2010 WL 1257580, at *6; Fezzani v. Bear, Stearns & Co., 592 F. Supp. 2d 410, 423 (S.D.N.Y. 2008).  They include scienter.  E.g., Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 488, 836 N.Y.S.2d 509, 515, 868 N.E.2d 189, 195 (2007); Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80, 668 N.E.2d 1370, 1373 (1996).  Facts that give rise to "a 'strong inference' of fraudulent intent" must also be pleaded on this claim.  Baraliu v. Vinya Capital, L.P., 2009 WL 959578, at *8 (S.D.N.Y.); Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 232 (S.D.N.Y. 2008); see Stephenson, 2010 WL 1244007, at *16 & n.19 (applying rule 9(b) and PSLRA principles to common law fraud claim).

The discussion of scienter in Point I above applies here.  As with federal securities fraud, a plaintiff's use of the label "recklessness" or "gross negligence" does not transmute negligence claims into something more sinister, e.g., Giant Group, Ltd. v. Arthur Andersen LLP, 2 A.D.3d 189, 190, 770 N.Y.S.2d 291, 292 (1st Dep't 2003) ("'[N]egligence claims cannot be deemed fraud solely because of the nomenclature used'"); and GAAS violations "do[] not make out fraud," LaSalle Nat'l Bank v. Ernst & Young L.L.P., 285 A.D.2d 101, 109, 729 N.Y.S.2d 671, 677 (1st Dep't 2001).

Rather, as with the federal securities claim, "'an opinion, especially an opinion by an expert, may be found to be fraudulent [only] if the grounds supporting it

are so flimsy as to lead to the conclusion that there was no genuine belief back of it.'"
Ambassador Factors v. Kandel & Co., 215 A.D.2d 305, 308, 626 N.Y.S.2d 803, 806 (1st
Dep't 1995) (auditor's alleged misconduct must approximate an actual intent to aid in
the fraud) (citation omitted).   Accordingly, auditor cases under New York law that have
sustained fraud complaints have involved situations in which the auditor either knew
that the audit opinion was wrong or, at a minimum, had actual knowledge of facts
making obvious that it was wrong.  See, e.g., DaPuzzo v. Reznick Fedder & Silverman,
14 A.D.3d 302, 303, 788 N.Y.S.2d 69, 70-71 (1st Dep't 2005) (complaint alleged that
auditor had not only "ignored and failed to report client's lack of internal controls [and]
blindly accepted information provided [by the] client's chief financial officer," but also
"gave in to the CFO's demands to fix financial reports to represent [a] more favorable
financial position in order not to jeopardize its fee").  The application of those standards
led to the dismissal of claims by individual investors in Ascot Fund Limited (an offshore
feeder fund into Ascot Partners, L.P. ) and in Gabriel Capital, L.P. against BDO USA in
CRT Investments, Ltd. v. Merkin, Index No. 601052/09, slip op. at 23-27 (N.Y. Sup. Ct.,
New York County, May 7, 2010) (hereinafter, "CRT") (notice of appeal filed).  See also
Stephenson, 2010 WL 1244007, at *17-20 (dismissing claim against auditor of similarly
situated fund that invested via Madoff).

The discussion regarding reliance, see p. 4, supra, also applies here, and
plaintiffs' fraud claim must be dismissed for failure to allege this element of a common
law fraud claim.  E.g., Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d at 421, 646
N.Y.S.2d at 80, 668 N.E.2d at 1373.

## V. THE BREACH OF FIDUCIARY DUTY
## CLAIM MUST BE DISMISSED.

An independent auditor, such as BDO USA, owes no fiduciary duty to the entity under audit, here the funds. See, e.g., Able Energy, Inc. v. Marcum & Kliegman LLP, 69 A.D.3d 443, 444, 893 N.Y.S.2d 36, 37 (1st Dep't 2010); DG Liquidation, Inc. v. Anchin, Block & Anchin, LLP, 300 A.D.2d 70, 750 N.Y.S.2d 753 (1st Dep't 2002). The auditor owes no such duty because it is required to be completely independent of the client. E.g., Resolution Trust Corp. v. KPMG Peat Marwick, 844 F. Supp. 431 (N.D. Ill. 1994); see Rahl v. Bande, 328 B.R. 387, 402, 2005 U.S. Dist. LEXIS 15576, at *20-21 (S.D.N.Y. 2005) (officer of corporation, as fiduciary, owes it full and undivided loyalty, while auditor has duty of independence).

As investors are even one more step removed, a fortiori an auditor owes no fiduciary duty to the owners of the entity under audit. E.g., In re Warnaco Group, Inc. Sec. Litig., 388 F. Supp. 2d 307, 318 (S.D.N.Y. 2005) ("An accounting firm retained to audit the financial statement of a company does not stand in a fiduciary relationship with that company's shareholders"), aff'd, 476 F.3d 147 (2d Cir. 2007); Tal v. Superior Vending, LLC, 20 A.D.3d 520, 521, 799 N.Y.S.2d 532, 533 (2d Dep't 2005).

Finally, an auditor owes no fiduciary duty to prospective investors, who are yet another step further removed. See, e.g., In re Warnaco Group, Inc. Sec. Litig., 388 F. Supp. 2d at 318-19 (dismissing breach of fiduciary duty claim by purchasers, to whom auditor owed no fiduciary duty); cf. Eurycleia Partners, LP v. Seward & Kissel, LLP, 46 A.D.3d 400, 402, 849 N.Y.S.2d 510, 512 (1st Dep't 2007), aff'd, 12 N.Y.3d 553, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009).

Thus, the premise of this count is invalid.

## VI.  THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED.

The aiding and abetting breach of fiduciary duty claim must be dismissed because the complaint does not plead its elements.  "A claim for aiding and abetting a breach of fiduciary duty requires:  (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach."  Kaufman v. Cohen, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dep't 2003).   In connection with the second element, "there must be an allegation that such defendant had actual knowledge of the breach of duty"; "[c]onstructive knowledge of the breach of fiduciary duty by another is legally insufficient."   Id.   Moreover, the defendant must have provided "'substantial assistance'" to the primary violator, which only occurs when it "affirmatively assists, helps conceal or fails to act when required to do so."  Id. at 126, 760 N.Y.S.2d at 170.

Presumably the Complaint relies on Merkin's alleged breach of fiduciary duty for the first element; but it is devoid of any allegations that BDO USA had actual knowledge of such a breach (part of the second element).  To the contrary, it alleges (¶ 261) that BDO USA may have "recklessly ignored information that indicated or should have indicated" that Merkin and Gabriel Capital "did not have [a] genuine belief [in] or a reasonable basis" for their financial statements.   That allegation is inconsistent with maintaining this claim.  See also CRT, slip op. at 26-27 (dismissing aiding and abetting fraud claim for failure to allege BDO USA's actual knowledge or substantial assistance).

Likewise, the Complaint (¶ 262) does not allege that BDO USA knowingly induced or participated in the breach (the remainder of the second element).  Rather, it alleges only that BDO USA incorrectly "issu[ed] clean audit opinions."   It makes no

sense to say that an accountant is liable for aiding and abetting a breach of fiduciary duty in such circumstances, and New York case law does not permit such a contention.

VII.    THE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED.

The unjust enrichment claim, seeking the return of auditing fees, has two fatal flaws.

First, plaintiffs are not the proper parties to bring this claim, because they did not pay the fees and thus were not damaged directly.  Underscoring this point, the Complaint (¶ 274) even asks that the fees be refunded to the funds. Only the funds have standing.  See Point III supra.

The problem is not just a standing one, however.  The claim should also be dismissed because it seeks a duplicate recovery.  Underlying all claims against BDO USA is the premise that its audits at the least did not meet professional standards. Plaintiffs would be made whole if they prevail on their other claims and receive damages.  On the other hand, if plaintiffs do not prevail on their other claims, they cannot prevail on this one.  Either way this claim does not survive.

VIII.    THE NEGLIGENT MISREPRESENTATION
        CLAIM MUST BE DISMISSED.

The negligent misrepresentation claim must be dismissed because plaintiffs lack standing to assert it, they have failed to allege reliance, and they have failed to plead breach.

A.   <u>Standing</u>

At least since <u>Credit Alliance Corp. v. Arthur Andersen & Co.</u>, 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 443, 483 N.E.2d 110, 118 (1985), one who is not an accountant's client can only sue the accountant for negligent misrepresentation if three criteria are met: the accountant was aware that the report was to be used for a particular purpose; a known party was intended to rely on the report in furtherance of that purpose; and there was some linking conduct between the accountant and that known party. <u>See also</u> <u>SIPC v. BDO Seidman, LLP</u>, 95 N.Y.2d 702, 711, 723 N.Y.S.2d 750, 756, 746 N.E.2d 1042, 1048 (2001); <u>SIPC v. BDO Seidman, LLP</u>, 222 F.3d 63, 75 (2d Cir. 2000); <u>CRT</u>, slip op. at 21-23 (dismissing negligent misrepresentation claim against BDO USA by investors in Ascot Fund, Limited and Gabriel Capital, L.P. for failure to allege <u>Credit Alliance</u> factors).

The Complaint pleads none of the <u>Credit Alliance</u> factors. <u>E.g.</u>, <u>Bay Harbour Mgmt. LLC v. Carothers</u>, 2008 WL 2566557, at *4 (2d Cir.); <u>Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP</u>, 586 F. Supp. 2d 119, 127-30 (S.D.N.Y. 2008); <u>Eurycleia Partners, LP v. Seward & Kissel, LLP</u>, 46 A.D.3d at 401-03, 849 N.Y.S.2d at 511-12; <u>Metral v. Horn</u>, 213 A.D.2d 524, 526, 624 N.Y.S.2d 177, 179 (2d Dep't 1995). To the contrary, it avers that plaintiffs received the audited financials only after they had already made their investments, <u>see</u> p. 4 <u>supra</u>, yet plaintiffs sue only for having been induced to make the investment in the first place (¶¶ 35, 283-84).

B.   <u>No Reliance</u>

Plaintiffs' failure to allege that their decision to invest was dependent upon the audited financials also means that they fail to allege the requisite element of

reliance.  E.g., J.A.O. Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 366, 863 N.E.2d 585, 587 (2007) (affirming dismissal because plaintiff's purchase was not dependent on alleged misrepresentation).

> C.   No Breach of Duty

The Complaint also fails to plead a breach of duty.  Instead, it makes an olio of references to various auditing standards in the apparent hope that the Court will believe that BDO USA must have violated something; and it asserts that BDO USA should have done more, although it is not clear how whatever that might be would have mattered.  The analysis starts with two important generally applicable points.

First, the only false statements that BDO USA is charged with making are those pertaining to compliance with GAAS.  BDO USA never opined on the truthfulness or completeness of the Confidential Offering Memoranda or any other document that Merkin issued or on any oral representation that the Complaint alleges he made.   BDO USA cannot be liable for representations that it neither made nor adopted as its own.  E.g., Eurycleia Partners, LP v. Seward & Kissel, LLP, 46 A.D.3d at 401-02; 849 N.Y.S.2d at 512.

Second, the question is not whether it was possible for BDO USA to have done "more."  Not only is that always possible, but, as noted above (p. 7 supra), 20:20 hindsight is a wonderful thing.   The auditing standards look at negligence through a different lens, however.   The correct question is whether BDO USA complied with the substantive requirements of GAAS. If it did, BDO USA was not negligent and made no misrepresentation about its compliance with GAAS.   To the same effect, see Complaint ¶ 193.

The audit evidence standard confirms that "[a]uditors are not expected to examine all information that may exist."   AU 326.02 (Greenberg Decl. exh. B). Moreover, the mere fact that financial statements turn out to be wrong does not mean that the audit failed to comply with GAAS.   "Because of the characteristics of fraud, a properly planned and performed audit may not detect a material misstatement."   AU 230.12 (Greenberg Decl. exh. C); accord, AU 311.09 (eighth bullet point) (id. exh. D); AU 326.12.   That proposition is of even more force when, as in this case, the entities being audited are not the ones at which the fraud took place.

The fraud auditing standard, AU 316, is not pertinent to this inquiry.   It deals with fraud at the entity under audit, not fraud on the entity under audit; and while it lists conditions that may change the auditor's assessment of audit risks, none of them is remotely applicable.   See AU 316.68 (Greenberg Decl. exh. E).

Plaintiffs' citations to auditing standards that boil down to the requirement that the auditor use due care and assign appropriately trained and supervised personnel beg the question.   There is actionable injury only if there is noncompliance with  the substantive GAAS standards.   Looking only to the face of the Complaint and applicable auditing standards, which the Complaint implicitly incorporates by reference, Rothman v. Gregor, 220 F.3d at 89, BDO USA fully complied with them and therefore was not negligent as a matter of law.

1.   Auditing Standards

AU 332, which governs auditing securities, specifies what an auditor must do to audit "existence or occurrence assertions" – for example, that the securities actually exist – involving third parties (Greenberg Decl. exh. F).   AU 332.21 expressly

permits the auditor to do so via "confirmation with the holder of the security" (second bullet point) or "with the broker-dealer or counterparty" (third bullet point).  AU 332.21 does not require the auditor to employ all of the listed alternatives.  The Complaint pleads that, consistent with GAAS, BDO USA confirmed the existence of these securities with Madoff (¶¶ 198, 214).  The rest of the alleged failure to follow auditing standards relates not to the existence of the securities – the crux of Madoff's fraud – but rather to testing internal controls.

The BDO USA audit opinion expressly disclaims any opinion on the funds' internal controls (¶ 180); but even if it had not done so, the Complaint alleges no accounting problems, including but not limited to those affecting controls, at the funds, which were the entities under audit.  To the contrary, the Complaint alleges, the error in the financial statements was due entirely to Madoff's Ponzi scheme.

So plaintiffs are down to the assertion that BDO USA did not properly assess internal controls at Madoff.  But AU 332.11 says that what the auditor does "to assess the risk of material misstatement" is a matter of professional judgment.  A fund auditor was therefore not required to look into controls at Madoff, even assuming that AU 332 otherwise applied.  Id. ("may encompass" controls outside entity under audit).

But AU 332 did not apply to Madoff by its own terms.  AU 332.13 provides that internal controls concerning the following need never be assessed:

- The execution by a securities broker of trades that are initiated by either the entity or its investment adviser
- The holding of an entity's securities.

Here, the very services at issue are the broker's (Madoff's) execution of trades (first bullet point) and the holding of the securities that belonged to the funds (second bullet point).

Neither AU 332.12 nor AU 324 alters the analysis.

As to AU 332.12, first, if it applied at all, it would apply only to the initiation of purchases and sales.  There is no allegation that those steps contributed to the fraud. To the contrary, Merkin (and BDO USA) could compare the trade tickets, reflecting the initiation of purchase and sale transactions, with the broker's statements showing what had been bought and sold, and would see whether securities were being purchased or sold without the funds' knowledge.

Second, and in any event, AU 332.12 only applies if Madoff is "a service organization acting as investment adviser or manager."  Chapter 5 of the AICPA Guide (Greenberg Decl. exh. G), which is referenced in note 6 to AU 332 for "assessing control risk for relevant assertions," defines "investment adviser (manager)" as "a company providing investment advice, research, and often administrative and similar services for a contractually agreed-on fee, based on a percentage of net assets."  The Complaint (¶¶ 87, 140) specifically pleads that Madoff did not demand or take such a fee.  The only "investment adviser" within the meaning of the auditing standards was Merkin (see also ¶¶ 87, 162-64, pleading that he was the investment adviser).

The Tremont court hit the nail on the head:

> [M]ost critically, the Auditors were never engaged to audit Madoff's businesses or to issue an opinion on the financial statements of [Madoff Securities].  The Auditors' only role is that they audited the financial statements of the [funds].  The notion that a firm hired to audit the financial statements of one client [the funds] must conduct audit

> procedures on a third party that is not an audit client [Madoff Securities] on whose financial statements the audit firm expresses no opinion has no basis.  To impose liability on the Auditors would expand their limited, circumscribed duty impermissibly.

2010 WL 1257580, at *6.  See also In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 591 (S.D.N.Y. 2007) (dismissal of claims against auditor of subsidiary where fraud had occurred at parent, which it did not audit, in absence of auditor's knowledge of fraud).

As to AU 324, that section provides general guidance about when an auditor may need to consider the controls at a "service organization" that is part of the "information system" of the entity under audit (Greenberg Decl. exh. H).  But AU 332 is the standard directly applicable to auditing investments in securities by its terms, see AU 332.01, and AU 332.13 specifically says that one in Madoff's position is not part of the "information system" of the entity under audit for assessment of that entity's internal controls.

2.    "Red Flags"

The Complaint predictably also tries to impose an obligation to audit "more" based on "red flags" (¶¶ 209-10).  It misunderstands what they are and what BDO USA's charge was.

Because the auditor's only representations are those found in the audit opinion, a fact becomes a "red flag" for an auditor only if that fact relates to the entity being audited and only if it substantially increases the likelihood that the financial statements are not fairly presented in material respects under GAAP.  Thus, for example, whether bad investment decisions that Madoff might have made could have had adverse consequences for the funds may go to Merkin's fulfillment of his fiduciary

duties, but it is not an auditing issue. (Gabriel and Ariel did not concentrate their assets at Madoff (¶¶ 84-85, 90), so this purported "red flag" does not apply to two of the funds on behalf of whose investors plaintiffs purport to be suing.) Accordingly, the allegations of subparagraphs 209(a), (b), and (c) were not "red flags" for BDO USA.

In addition, many of the so-called "red flags" were alleged to be either facts that "investment professionals" would have known or inferences that they would have drawn (e.g., ¶¶ 199-200). BDO USA was an auditor, not an investment professional. Although the auditor must have an understanding of the client's business, GAAS does not require an auditor of an investment fund to know what one who is an expert in complex securities trading strategies might, see AU 110.04 (Greenberg Decl. exh. I); nor does the Complaint plead that the supposed anomalies were brought to its attention or that GAAS required BDO USA to have learned them. See, e.g., Tremont, 2010 WL 1257580, at *5 ("merely alleging that the auditor had access to information by which it could have discovered the fraud is not sufficient"). Whether an investment professional should have concluded that Madoff was engaging in a Ponzi scheme does not imply that an auditor – and an auditor of funds and not of Madoff at that – should have derived the same conclusions. Accordingly, subparagraphs 209(d) and (e) were not "red flags" for BDO USA either.

Finally, Madoff's use of a small accounting firm (¶ 209(f)) is not a "red flag." First, there was no occasion for BDO USA – or the funds – to know whether Madoff's financial statements were correct or incorrect. The investments of entities like the funds here would not appear on Madoff's balance sheet because they were not assets of Madoff, which was acting only as a custodian. Second, the only question was

whether the Treasury bills were there, and the Complaint does not allege that BDO USA relied on any statement from Madoff's auditor as support for the existence of those assets.  Third, even if BDO USA had, a misstatement from Madoff's auditor would not have been the product of too few people or too little expertise; it would have resulted from the fact that its lead auditor was in cahoots with Madoff (see ¶ 43) – which the Complaint does not allege that BDO USA knew or recklessly ignored.

Plaintiffs' sole effort to plead around this problem (¶ 208), that the auditing firm would have had to allocate Treasury bills to various funds, lacks plausibility. Ashcroft v. Iqbal, 129  S. Ct. 1937, 1949 (2009).  Anyone who is familiar with high school mathematics and has access to a calculator would be able to allocate Treasury bills based only on the net asset value of the fund.

On the other hand, the fact that Madoff was a broker-dealer registered with and extensively regulated by the SEC and FINRA and the absence of any action by either of them would have provided BDO USA comfort.  The fact that the SEC, armed with the investigatory power of the federal government, undertook multiple investigations at Madoff and did nothing (¶ 127) would have been significant.  Further, the fact that the SEC consistently accepted the small accounting firm's rule 17a-5 filings concerning the adequacy of Madoff's internal controls further negated negligence on BDO USA's part in not inquiring about that firm.  See Rule 17a-5(f)(2), 17 C.F.R. § 240.17a-5(f)(2) (auditor of broker-dealer to be identified and to have filed with SEC).

## CONCLUSION

Plaintiffs may not maintain this action against BDO USA.   It should be dismissed.

Dated:  New York, NY
        July 30, 2010

Respectfully submitted,

Ira G. Greenberg
Florence A. Crisp
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendant BDO USA, LLP
750 Lexington Avenue, 8th floor
New York, NY  10022
(212) 308-4411