Exhibit  G

THIRD AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT

of

ASCOT PARTNERS, L.P.

(A Delaware Limited Partnership)

Dated as of

October 1, 2006

10108281.3

# TABLE OF CONTENTS

**Page**

ARTICLE I GENERAL PROVISIONS .................................................................................. 1
    Section 1.01  Name ..................................................................................................... 1
    Section 1.02  Principal Place of Business; Registered Office .................................. 1
    Section 1.03  Purposes and Powers ........................................................................... 1
    Section 1.04  Term ..................................................................................................... 1
    Section 1.05  Classes of Partners .............................................................................. 1
    Section 1.06  Certain Definitions .............................................................................. 1

ARTICLE II CAPITAL ACCOUNTS ................................................................................... 1
    Section 2.01  Contributions ...................................................................................... 1
    Section 2.02  Additional Capital Contributions ....................................................... 1
    Section 2.03  General Partners Not Personally Liable for Return of Capital ........... 1
    Section 2.04  Capital Accounts ................................................................................. 1
    Section 2.05  No Interest on Capital ......................................................................... 1

ARTICLE III INCOME AND LOSSES; ALLOCATION ..................................................... 1
    Section 3.01  Fiscal Year .......................................................................................... 1
    Section 3.02  Accounting Period .............................................................................. 1
    Section 3.03  Valuation of Property ......................................................................... 1
    Section 3.04  Allocation of Capital Account Purposes ............................................ 1
    Section 3.05  Allocation Upon Withdrawal .............................................................. 1
    Section 3.06  Waiver of Allocation ........................................................................... 1
    Section 3.07  Allocations for Income Tax Purpose .................................................. 1

ARTICLE IV WITHDRAWALS ........................................................................................... 1
    Section 4.01  General ................................................................................................ 1
    Section 4.02  Withdrawal upon Bankruptcy or Incompetence ................................ 1
    Section 4.03  Withdrawal .......................................................................................... 1
    Section 4.04  Distributions Upon Withdrawal .......................................................... 1
    Section 4.05  Distributions of Property Other Than Cash ....................................... 1

ARTICLE V COSTS AND EXPENSES ............................................................................... 1
    Section 5.01  Operating Costs ................................................................................... 1
    Section 5.02  Certain Expenses Prior to 1993 .......................................................... 1

ARTICLE VI THE LIMITED PARTNERS .......................................................................... 1
    Section 6.01  Liability of Limited Partners .............................................................. 1
    Section 6.02  Management of Business .................................................................... 1
    Section 6.03  Assignability of Limited Partnership Interests .................................. 1
    Section 6.04  Substituted Limited Partner. ............................................................... 1
    Section 6.05  Power of Attorney ............................................................................... 1
    Section 6.06  New Limited Partners ......................................................................... 1

Section 6.07   Other Activities ........................................................................... 1

ARTICLE VII THE GENERAL PARTNERS ..................................................... 1
Section 7.01   Powers of the Managing Partner .................................................... 1
Section 7.02   Reliance by Third Parties ............................................................. 1
Section 7.03   Duties of General Partners; Permitted Transactions ....................... 1
Section 7.04   Liability of General Partners ........................................................ 1
Section 7.05   Indemnification. .......................................................................... 1
Section 7.06   Assignability of General Partnership Interests ............................... 1
Section 7.07   Withdrawals by General Partners .................................................. 1
Section 7.08   Distributions Upon Withdrawal of a General Partner....................... 1
Section 7.09   New General Partners ................................................................... 1

ARTICLE VIII DISSOLUTION, LIQUIDATION AND TERMINATION OF
                   PARTNERSHIP .............................................................. 1
Section 8.01   Dissolution ................................................................................. 1
Section 8.02   Liquidation ................................................................................. 1

ARTICLE IX RESERVES UPON WITHDRAWAL OR DISSOLUTION................... 1
Section 9.01   Reserves ..................................................................................... 1
Section 9.02   Distribution of Reserves .............................................................. 1

ARTICLE X ACCOUNTING ........................................................................... 1
Section 10.01  Accounts of the Partnership ......................................................... 1
Section 10.02  Annual Financial Statements ....................................................... 1
Section 10.03  Annual Reports to Partners .......................................................... 1
Section 10.04  Quarterly Reports to Partners....................................................... 1
Section 10.05  Tax Returns and Tax Elections ..................................................... 1

ARTICLE XI MISCELLANEOUS ..................................................................... 1
Section 11.01  Amendments ............................................................................... 1
Section 11.02  Severability ................................................................................ 1
Section 11.03  Notices ....................................................................................... 1
Section 11.04  No Waiver ................................................................................... 1
Section 11.05  Copy on File ............................................................................... 1
Section 11.06  Governing Law ........................................................................... 1
Section 11.07  Counterparts ............................................................................... 1
Section 11.08  Waiver of Right to Partition......................................................... 1
Section 11.09  Arbitration.................................................................................. 1
Section 11.10  Sole Agreement .......................................................................... 1

THIRD AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT

of

ASCOT PARTNERS, L.P.

This Third Amended and Restated Agreement of Limited Partnership (the "Agreement"), made as of the 1st day of October, 2006, by and among J. Ezra Merkin, as General Partner (such person, together with any persons admitted as general partners pursuant to Section 7.09, are herein called individually a "General Partner" and collectively the "General Partners"), and each of the persons listed on Schedule A hereto as limited partners (such persons, together with any persons admitted as Limited Partners pursuant to Section 6.06, are herein called individually a "Limited Partner" and collectively the "Limited Partners").

W I T N E S S E T H:

WHEREAS, the parties hereto (the "Partners" which term shall also include any persons hereafter admitted to the partnership) desire to form a limited partnership (the "Partnership") for the purpose of investing and reinvesting in and holding securities, debt instruments, bankruptcy claims, commodities contracts, options, futures contracts, interests in investment partnerships or pooled investment vehicles, and investments of every kind and character;

WHEREAS, the General Partner and Limited Partners amended and restated the Limited Partnership Agreement dated November 2, 1992;

WHEREAS, the General Partner and Limited Partners amended and restated the Amended and Restated Limited Partnership Agreement dated December 31, 2002; and

WHEREAS, the General Partner and Limited Partners desire to amend and restate the Second Amended and Restated Limited Partnership Agreement dated April 1, 2006.

NOW, THEREFORE, the parties, in consideration of the premises hereinafter expressed, agree as follows, which such agreement shall constitute the entire agreement of Limited Partnership of the Partnership.

ARTICLE I

GENERAL PROVISIONS

Section 1.01   Name.  The name of the Partnership shall be Ascot Partners, L.P. If J. Ezra Merkin (the "Managing Partner") wishes to change the name of the Partnership, he shall have the right to do so upon written notice to each of the other Partners.

Section 1.02   Principal Place of Business; Registered Office.   The principal office of the Partnership shall be maintained at 450 Park Avenue, 32nd Floor, New York, New York 10022, or at such other location as the Managing Partner may designate from time to time.

The registered office of the Partnership shall be 1209 Orange Street, in the City of Wilmington, in the County of New Castle, in the State of Delaware.  The name of the registered agent at that address is the Corporation Trust Company.

Section 1.03   <u>Purposes and Powers</u>.  The purpose of the Partnership shall be to invest in and trade equity securities (including restricted equity securities), equity options, equity related convertible securities, interest-bearing or interest rate sensitive marketable securities (including those issued or guaranteed by the United States Government or its agencies or instrumentalities) and other instruments or evidences of ownership interest, bonds, trade creditor claims and other instruments evidencing debt obligations, currency and commodities contracts, options, futures and forward contracts with respect to any of the foregoing, and any other instruments which are traded in normal channels of trading for securities, debt instruments and commodities (all of the foregoing sometimes referred to herein as "<u>Securities</u>"), and to engage in transactions in connection with mergers, consolidations, acquisitions, transfers of assets, tender offers, exchange offers, recapitalizations, proxy fights, liquidations, bankruptcies or other similar transactions.  The foregoing investments may be made directly or indirectly through investment partnerships, closed-end funds, or other pooled investment vehicles, notwithstanding that fees (including performance-based fees) may be payable to the investment manager of such funds, partnership or vehicles by the Partnership.   In furtherance of the aforesaid purposes, the Partnership shall have authority to do all things necessary or convenient for the accomplishment thereof, alone or with others, as principal or agent, including, without limiting the foregoing, the following:

(a)    to purchase (for cash or on credit), sell (including short sales), invest, trade, hold, receive, mortgage, pledge, transfer, exchange, or otherwise acquire or dispose of, turn to account or realize upon Securities, and to grant options with respect to and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to all assets or property held or owned by the Partnership;

(b)    to hold all or any part of the assets, property or funds of the Partnership in cash or cash equivalents;

(c)    to borrow or obtain credit from time to time, including for the purpose of financing transactions in Securities, to secure the payment of any such indebtedness or credit by mortgage, pledge, conveyance or assignment in trust, of the whole or any part of the assets or property of the Partnership, whether at the time owned or thereafter acquired, to enter into repurchase agreements and to buy, sell, pledge or otherwise dispose of any evidence of such indebtedness or obligation;

(d)    to lend any of its assets, property or funds, including any Securities, either with or without security;

(e)    to open, maintain and close accounts with brokers, including margin accounts;

(f)    to open, maintain and close bank accounts and draw checks and other orders for the payment of money;

(g)    to engage accountants, custodians, attorneys and any and all other agents and assistants, both professional and nonprofessional, and to compensate them for such services;

(h)    to acquire a long position or a short position or both with respect to any securities and to make purchases or sales increasing, decreasing or liquidating any such position or changing from a long position to a short position or from a short position to a long position, without any limitation as to the frequency of the fluctuation in such positions or as to the frequency of the changes in the nature of such positions;

(i)    to file statements and forms under the proxy rules, the Williams Act, the Hart-Scott-Rodino Act and other applicable regulatory laws;

(j)    to sue, prosecute, settle or compromise all claims against third parties, to compromise, settle or accept judgment in respect of claims against the Partnership and to execute all documents and make all representations, admissions and waivers in connection therewith; and

(k)    to enter into, make and perform all other contracts, agreements and undertakings as the Managing Partner may deem necessary, appropriate, advisable or incident to carrying out the purposes of the Partnership.

Section 1.04    Term.    The Partnership commenced upon the filing of its certificate of limited partnership in the Office of the Secretary of State of Delaware and the Partnership shall continue until the occurrence of an act or event specified in Section 8.01 hereof.

Section 1.05    Classes of Partners.    There shall be four classes of Partners: (i) General Partners; (ii) Limited Partners ("Class A Limited Partners") who execute this Agreement, and are accepted into the Partnership by the Managing Partner, as Class A Limited Partners; (iii) Limited Partners ("Class B Limited Partners") who execute this Agreement, and are accepted into the Partnership by the Managing Partner, as Class B Limited Partners; and (iv) Limited Partners ("Class C Limited Partners" and, together with the Class A Limited Partners and Class B Limited Partners, the "Limited Partners") who execute this Agreement, and are accepted into the Partnership by the Managing Partner, as Class C Limited Partners.    Additional classes of Limited Partners may be created in the future having such relative rights, powers and duties as may be established in the sole discretion of the Managing Partner, including rights, powers and duties senior to existing classes of Limited Partners.    The creation of such classes of Limited Partners and the admission of such classes of Limited Partners, including (subject to Section 11.01) any amendment of this Agreement, will not require the vote or approval of any existing Limited Partner or class of Limited Partners.    Subject to Delaware law, future classes of Limited Partners may be granted the right to vote separately or with all or any existing classes of Limited Partners on any matter.

Section 1.06    Certain Definitions.    For the purposes of this Agreement, the following terms have the following meanings:

"Affiliate" with respect to a Partner shall mean any person that directly, or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such Partner.

"Bankruptcy" with respect to any Partner means an adjudication that he is bankrupt or insolvent, the admission by him of his inability to pay his debts as they mature, the making by him of an assignment for the benefit of creditors, the filing by him of a petition in bankruptcy or a petition for relief under any section of Title 11 of the United States Code or any other applicable federal or state bankruptcy or insolvency statute, or the filing against him of any such petition looking toward such a proceeding which is not discharged within 60 days from the date of filing thereof, or the imposition of a judicial or statutory lien on all or a substantial part of his assets unless such lien is discharged or vacated or the enforcement thereof stayed within 60 days after its effective date.

"Capital Contribution" means amounts contributed to the Partnership by a Partner pursuant to Sections 2.01 or 2.02.

"Code" means the Internal Revenue Code of 1986, as it may be amended from time to time (or any succeeding law). References to sections of the Code shall include amended or successor provisions thereto.

"Feeder Fund" means Ascot Fund Limited, an exempted company incorporated in the Cayman Islands, which will invest substantially all of its assets in, and will conduct substantially all of its investment and trading activities through, the Partnership.

"Fiscal Year" has the meaning specified in Section 3.01.

"Interest", when used in reference to an interest in the Partnership, means the entire ownership interest of a Partner in the Partnership at any particular time. When used in reference to the Partnership's interest in another entity, it means the Partnership's entire ownership interest in such other entity.

"Legal Representative" means any and all executors, administrators, committees, guardians, conservators or trustees, in bankruptcy or otherwise, of a Partner.

"Partnership Income" and "Partnership Loss", for any period, mean, respectively, the realized and unrealized income or loss determined by subtracting (i) the sum of (A) all items of expense incurred by the Partnership during the period and (B) all items of loss incurred during the period by the Partnership, whether or not such loss has been realized (including any deduction or amortization expenses incurred in connection with the formation and organization of the Partnership), from (ii) the sum of (A) all items of income realized during the period by the Partnership and (B) all items of gain during the period of the Partnership whether or not such gain has been realized. For purposes of determining Partnership Income and Partnership Loss, the Partnership will have a gain or loss with respect to an investment during any period if the valuation (determined pursuant to Section 3.03) of the investment at the end of the period, or the amount of the proceeds of the disposition of the investment if the disposition occurs during the period, is greater than, or less than, the valuation (determined pursuant to Section 3.03) of the

4

investment at the beginning of the period, or the cost of the investment if the investment is acquired during the period.

"Person" means any individual, partnership, corporation, trust or other entity.

ARTICLE II

CAPITAL ACCOUNTS

Section 2.01   Contributions.   Each Partner has contributed to the Partnership cash in the amount set forth opposite such Partner's name on Schedule A hereto on or before the date set forth thereto.  The General Partners have contributed or will contribute at least 1% of the capital of the Partnership and, notwithstanding any other provision of this Agreement, shall at all times maintain a sufficient capital investment in the Partnership so that the General Partners shall, in the aggregate, be entitled to receive at least 1% of Partnership Income, Partnership Loss, taxable income, taxable loss and distributions of the Partnership.

Section 2.02   Additional Capital Contributions.   Except for any additional amounts the General Partners are required to contribute pursuant to Section 2.01, no Partner shall be required to make any additional Capital Contributions.  The Managing Partner may make, and may permit any other Partner to make, additional Capital Contributions as of the beginning of any calendar month.

Section 2.03   General Partners Not Personally Liable for Return of Capital. Notwithstanding anything to the contrary contained herein, no General Partner shall be personally liable for the distribution, return or payment of all or any portion of the Capital Contributions or any additions to the Capital Accounts of any Limited Partner (or successor, assignee or transferee), it being expressly agreed that any such distribution, return or payment as may be made at any time, or from time to time, shall be made solely from the assets (which shall not include any right of contribution from any General Partner) of the Partnership.

Section 2.04   Capital Accounts.   A separate capital account (a "Capital Account") shall be maintained for each Partner on the books of the Partnership in compliance with Treasury Regulation Section 1.704-1(b) (2) (iv), as amended.  Each Partner's Capital Account shall reflect the Capital Contribution of such Partner and shall be adjusted to reflect such Partner's share of allocations and distributions, any additional capital contributions to the Partnership and any withdrawals of capital from the Partnership.  In the case of the Feeder Fund, separate memorandum sub-accounts of each Capital Account shall be maintained by the Partnership corresponding to each class and series of shares in the Feeder Fund issued to its shareholders, and references herein to the Capital Account of the Feeder Fund shall include reference to such sub-accounts as appropriate.

Section 2.05   No Interest on Capital.  Except as otherwise expressly provided, no Partner shall be entitled to receive any interest on or in respect of any amount credited to his Capital Account.

ARTICLE III

INCOME AND LOSSES; ALLOCATION

Section 3.01   <u>Fiscal Year</u>.   The fiscal year of the Partnership for Partnership accounting and tax purposes (the "<u>Fiscal Year</u>") shall be the calendar year.

Section 3.02   <u>Accounting Period</u>.   The term "<u>Accounting Period</u>" shall mean, as the context may require, the period beginning on January 1, 1993, or on the day following the last day of any Accounting Period, and ending on the next succeeding of the following:

1.   The last day of each Fiscal Year of the Partnership;

2.   The day prior to the day as of which a Person is admitted as a Partner;

3.   The day prior to the day as of which any Partner makes a Capital Contribution;

4.   The effective date of the withdrawal of any Partner in whole or in part;

5.   The day of the dissolution of the Partnership pursuant to Section 8.01 hereof.

Section 3.03   <u>Valuation of Property</u>.   All Securities, liabilities and other property shall be assigned such values as the Managing Partner shall reasonably determine to be their fair market value and such values shall be binding upon the Partners; provided that in the event a majority in interest of the Class A Limited Partners does not agree with any such determination, such disagreement shall be submitted for resolution to a firm of independent certified public accountants (other than the Partnership's auditors) which shall be mutually agreed upon by the Managing Partner and the majority in interest of the Class A Limited Partners.   Any determination made by such firm of independent certified public accountants shall be final and binding upon all General Partners and Class A Limited Partners.   No value shall be attributable to the goodwill, if any, of the business and for the firm name of the Partnership.   The costs of retaining such accountants shall be paid by the Partnership.

Section 3.04   <u>Allocation of Capital Account Purposes</u>.

(a)   Partnership Loss for each Accounting Period shall be allocated to each Partner in the ratio that such Partner's Capital Account as of the beginning of such Accounting Period bears to the total Capital Accounts of all Partners as of the beginning of such Accounting Period.

(b)   Each Partner's Capital Account shall be increased at the end of each Accounting Period by an amount equal to the product of  (1) the ratio that such Partner's Capital Account as of the beginning of such Accounting Period bears to the total Capital Accounts of all Partners as of the beginning of such Accounting Period multiplied by (2) Partnership Income for such Accounting Period.

(c)    At the end of an Allocation Period, after all adjustments pursuant to Sections 3.04(a) and 3.04(b) have been made for all Accounting Periods ending during such Allocation Period (including the Accounting Period ending at the end of such Allocation Period), the Capital Account of each Partner who remains in the Partnership at the end of such Period shall be adjusted as follows:

(i)    first, if such Partner is a Limited Partner, there shall be debited to such Partner's Capital Account and credited to the Capital Account of the General Partners (and among them as they may agree) an amount equal to one and one-half per cent (1.50%) times such Limited Partner's Capital Account (after accounting for adjustments pursuant to Section 3.04(a) and 3.04(b)) less the sum of all "Proportionate Contribution Credits" for such Allocation Period.  For each capital contribution made by a Limited Partner, such Proportionate Contribution Credit shall be equal to (A) one and one-half per cent (1.50%) of such capital contribution for such Allocation Period times (B) the number of days elapsed between the end of the preceding Allocation Period and the date of such capital contribution, divided by 365 or 366, as the case may be.

(ii)    The term "Allocation Period" shall mean, as the context may require, the period beginning January 1, 1993 or on the day following the last day of any Allocation Period, and ending on the first to occur of (x) the end of a Fiscal Year or (y) the day the Partnership dissolves.

Section 3.05    Allocation Upon Withdrawal.

(a)    In the event of the withdrawal in whole or in part of a Limited Partner from the Partnership other than at the end of an Allocation Period, whether voluntary or involuntary, (i) there shall first be debited to such withdrawing Limited Partner's Capital Account and credited to the Capital Account of the General Partner the "Withdrawal Allocation." The Withdrawal Allocation shall be the amount equal to (A) one and one-half per cent (1.50%) of the amount withdrawn times (B) the number of days elapsed between the end of the preceding Allocation Period and the date of such withdrawal, divided by 365 or 366, as the case may be.

Section 3.06    Waiver of Allocation.  The Managing Partner may, in its sole and absolute discretion, waive the receipt by the General Partners from any Limited Partner of the Allocations described in Sections 3.04 and 3.05.

Section 3.07    Allocations for Income Tax Purpose.  The income, gains, losses, deductions and credits of the Partnership shall be allocated for federal, state, and local income tax purposes by the Managing Partner among the persons who were Partners during the relevant taxable year.  Subject to the following sentence, the Managing Partner shall have the power to make such allocation in any manner that he, in his sole discretion, deems equitable, practicable and consistent with the Code, the Treasury Regulations promulgated pursuant thereto, in particular Section 704 and the regulations promulgated thereunder, and other applicable law, taking into account the Partners' Capital Accounts as at the first and last days of each Fiscal Year, any admission of new Partners, any distributions by the Partnership, any withdrawals of capital by the Partners, any additional contributions to capital by the Partners and the differences between income for tax purposes and for Partnership book purposes; provided, however, that no

such allocation by the Managing Partner shall discriminate unfairly against any Partner.   In making such allocation, items of income, deduction, gain, loss and credit shall be allocated in accordance with the principles of Section 704(c) of the Code.

ARTICLE IV

WITHDRAWALS

Section 4.01    General.   Except as otherwise provided in this Agreement, no Partner shall be permitted to withdraw from the Partnership or to withdraw any amounts from such Partner's Capital Account.

Section 4.02    Withdrawal upon Bankruptcy or Incompetence.   In the event of the death, Bankruptcy or adjudicated incompetency of a Limited Partner, the interest of such Limited Partner in the Partnership shall continue until the later of (1) the first to occur of the last day of the Fiscal Year of the Partnership in which such event takes place (the "Year of Determination") or the earlier termination of the Partnership, and (2) the day 60 days after the date of such Limited Partner's death, Bankruptcy or adjudicated incompetency.   If the Partnership shall be continued after the expiration of the Year of Determination, such Limited Partner shall be deemed to have withdrawn from the Partnership as of the later of the last day of the Year of Determination and 60 days after the date of such Partner's death, Bankruptcy or adjudicated incompetency.

Section 4.03    Withdrawal.

(a)    Upon at least 45 days' prior written notice to the Managing Partner, any Class A Limited Partner may withdraw from the Partnership in whole or in part as of December 31 of any Fiscal Year.   The notice shall specify the portion of the withdrawing Partner's Capital Account the Partner is withdrawing and the withdrawing Partner's withdrawal will be effective as of the December 31 immediately following the date of such notice if such notice is given at least 45 days prior to such December 31, or as of the following December 31 if such notice is given less than 45 days prior to the immediately following December 31.

(b)    Upon at least 25 days' prior written notice to the Managing Partner (or such other day as the Managing Partner shall designate in his sole discretion), any Class B Limited Partner may withdraw from the Partnership in whole or in part as of the last business day of each March, June, September and December of any Fiscal Year.   Partial withdrawals are permitted so long as a Class B Limited Partner continues to have a balance of at least $500,000 in such Limited Partner's Capital Account.

(c)    Upon at least 45 days' prior written notice to the Managing Partner, any Class C Limited Partner may withdraw all or part of such Limited Partner's Capital Account from the Partnership with respect to Capital Contributions made on or after February 1, 2006 on the date immediately preceding the one-year anniversary of the date such Interests were purchased (the "First Withdrawal Date"), and, thereafter, on each anniversary of the First Withdrawal Date.

(d)      At any time, upon at least 30 days' prior written notice from the Managing Partner to any Limited Partner, the Managing Partner may cause any Limited Partner to withdraw from the Partnership in whole or in part.  The withdrawal of such Limited Partner will be effective as of the date specified in such notice, which date shall be not less than 30 days after the date such notice is given.

(e)      The Managing Partner, by written notice to any Limited Partner, may suspend the withdrawal rights of such Limited Partner if the Managing Partner reasonably deems it necessary to do so to comply with anti-money laundering laws and regulations applicable to the Partnership, the Managing Partner or any of the Partnership's other service providers.

(f)      Limited Partners may request more frequent withdrawal rights upon written request to the Managing Partner.  The Managing Partner shall seek, but is not required, to accommodate all such withdrawal requests as it deems appropriate in its sole discretion.

Section 4.04      Distributions Upon Withdrawal.

(a)      In the event of a withdrawal of a Limited Partner pursuant to this Article IV, the Managing Partner shall distribute to the Limited Partner as promptly as practicable after the effective date of such withdrawal the balance in that Limited Partner's Capital Account at the time of such withdrawal (or in the case of a partial withdrawal, the amount withdrawn) after the allocations provided for in Section 3.05.

(b)      The amount of any distribution (net of any reserves withheld pursuant to paragraph (c) of this Section 4.04) to be made pursuant to this Section 4.04 shall be made within 90 days after the effective date of the withdrawal of such amounts.  The Partnership shall pay interest on any amount to be so distributed (net of any reserves withheld pursuant to paragraph (c) of this Section 4.04) that is retained by the Partnership more than 30 days after the effective date of the withdrawal at a rate of interest equal to the broker's call rate as determined from time to time by Morgan Stanley & Co., Inc. for the period beginning 30 days after the effective date of such withdrawal and ending 90 days after the effective date of such withdrawal.

(c)      The Managing Partner may withhold from any distribution to a withdrawing Limited Partner a reserve to pay for contingent liabilities arising from events occurring during the period of time in which the withdrawing Limited Partner was a Limited Partner in the Partnership, which reserve, or any remaining balance thereof, shall be paid to the Limited Partner upon the Managing Partner's determination that the reserve (or the remaining balance) is no longer required.  Any reserve amounts so withheld will be deposited by the Managing Partner in an interest bearing account at a major bank headquartered in New York City, and any interest earned on such account, net of any fees relating thereto, shall be paid to the withdrawn Partner at the time such reserve is paid.

Section 4.05      Distributions of Property Other Than Cash.  The Managing Partner may, in his discretion, make distributions to Partners who have withdrawn from the Partnership of property other than cash.  The amount of any such distribution shall be accounted for at the

fair market value of the property distributed determined at the time of distribution.  If the Managing Partner distributes property in kind to a Partner (other than cash), the Partnership shall be deemed, for all purposes of this Agreement, immediately prior to the distribution, to have realized a gain or loss equal to the gain or loss that would be realized upon a sale of the property by the Partnership for an amount equal to the fair market value of the property.  The fair market value of property distributed in kind to any Partner shall be determined by the Managing Partner, whose determination shall be conclusive; <u>provided</u>, <u>however</u>, that in the event of a dispute as to the value of any such property the dispute will be resolved pursuant to arbitration as provided in Section 11.09 hereof.  Any distribution to a Partner of property other than cash shall be of such Partner's pro rata share of each particular item of property so distributed in proportion to each Partner's Capital Account as of the day of such distribution.

ARTICLE V

<u>COSTS AND EXPENSES</u>

Section 5.01   <u>Operating Costs</u>.   The Partnership may reimburse the General Partners for any out-of-pocket costs, fees and expenses incurred by them in connection with formation and operation of the Partnership (including the costs, fees and expenses of attorneys, accountants or other professionals).  The amount of any direct costs, fees and expenses incurred in connection with the purchase, sale or carrying of any Security, including, but not limited to, brokerage and other transaction costs, margin interest expenses and fees, including performance-based fees, payable to investment managers or partners of private investment partnerships, closed-end funds or other pooled investment vehicles shall be paid by the Partnership.

Section 5.02   <u>Certain Expenses Prior to 1993</u>.   All costs and expenses of the Partnership incurred prior to January 1, 1993 in connection with the Limited Partnership Agreement dated November 2, 1992, shall be deemed to have been incurred by the Partnership on January 1, 1993.

ARTICLE VI

<u>THE LIMITED PARTNERS</u>

Section 6.01   <u>Liability of Limited Partners</u>.  No Limited Partner shall be bound by or be liable for the repayment, satisfaction or discharge of any debts, liabilities or obligations of the Partnership except to the extent of (i) such Partner's Capital Account, and (ii) as may otherwise be required by applicable law.

Section 6.02   <u>Management of Business</u>.  The Limited Partners shall not take part in the management or control of the Partnership.  The Limited Partners shall not transact any business for the Partnership, and none may bind or obligate the Partnership.

Section 6.03   <u>Assignability of Limited Partnership Interests</u>.  No Limited Partner or transferee thereof shall, without the prior written consent of the Managing Partner, which may be withheld in his sole and absolute discretion, create, or suffer the creation of, a security interest

in such Limited Partner's interest in the Partnership.  Except for sales, transfers, assignments or other dispositions (i) by last will and testament, (ii) by operation of law, or (iii) to an Affiliate of a Limited Partner, without the prior written consent of the Managing Partner, which may be withheld in his sole and absolute discretion, no Limited Partner shall sell, transfer, assign, or in any manner dispose of such Limited Partner's interest in the Partnership, in whole or in part, nor enter into any agreement as the result of which any Person shall become interested with such Limited Partner therein.  In no event shall a Limited Partner's interest in the Partnership, or any part thereof, be assigned or transferred to any Person unless the transferee executes documentation reasonably satisfactory to the Managing Partner pursuant to which the transferee agrees to be bound by this Agreement and the Managing Partner is satisfied that such assignment or transfer (i) is not in violation of any applicable federal or state securities laws, (ii) shall not result in the Partnership being considered to have terminated within the meaning of Section 708 of the Code, (iii) shall not result in any General Partner being required to register under the Investment Advisers Act of 1940, as amended (iv) shall not result in the Partnership being required to register under the Investment Company Act of 1940, as amended and (v) shall not cause the Partnership to be treated as a publicly traded partnership taxable as a corporation for U.S. federal income tax purposes.  In connection with the preceding sentence, the Managing Partner shall have the right to require a legal opinion of counsel satisfactory to him.  Unless the foregoing conditions are met no attempted assignment or transfer of a Limited Partner's interest in the Partnership, or part thereof, shall be valid or binding on the Partnership.  All expenses incurred in connection with any transfer pursuant to this Section 6.03 or Section 6.04 shall be paid by the transferring Limited Partner.  Notwithstanding any other provision of this Agreement to the contrary, no unit of Partnership Interest may be subdivided for resale into units smaller than a unit the initial offering price of which would have been at least $20,000.

Section 6.04    Substituted Limited Partner.

(a)    No Limited Partner shall have the right to substitute in his place a purchaser, assignee, transferee, donee, heir, legatee, or other recipient of interests of a Limited Partner (other than an Affiliate of such Limited Partner who has received his interest in the Partnership in accordance with the provisions of Section 6.03 hereof).  Any purchaser, assignee, transferee, donee, legatee, distributee or other recipient of interests (other than an Affiliate of such Limited Partner who has received his interest in the Partnership in accordance with the provisions of Section 6.03 hereof) shall be admitted to the Partnership as a substituted Limited Partner only with the consent of the Managing Partner, which consent may be granted or withheld in the sole discretion of the Managing Partner.  Any such consent by the Managing Partner shall be binding and conclusive without the consent of the Limited Partners.

(b)    No Person shall become a substituted Limited Partner until such Person shall have satisfied the requirements of Section 6.03 hereof; provided, however, that for the purpose of allocating profits and losses, a person with respect to whom the Managing Partner has given consent as provided in Section 6.03(a) shall be treated as having become, and as appearing in the records of the Partnership as, a Limited Partner on the date of the sale, assignment or transfer to such Person.

Section 6.05    Power of Attorney.    Each of the Limited Partners hereby constitutes and appoints the Managing Partner his true and lawful representative and

attorney-in-fact in his name, place and stead, with full power of substitution, to make, execute, sign, acknowledge and file with respect to the Partnership:

(a)     all instruments which the Managing Partner deems appropriate to reflect any duly adopted amendment, change or modification of the Partnership in accordance with the terms of this Agreement;

(b)     all such other instruments, documents and certificates which may from time to time be required by the laws of the State of Delaware, the United States of America, or any other jurisdiction in which the Partnership shall determine to do business, or any political subdivision or agency thereof, to effectuate, implement, continue and defend the valid and subsisting existence of the Partnership as a limited partnership;

(c)     all applications, certificates, certifications, reports or similar instruments or documents required to be submitted by or on behalf of the Partnership to any governmental or administrative agency or body or to any securities or commodities exchange, board of trade, clearing corporation or association or similar institution or to any other self-regulatory organization or trade association; and

(d)     all papers which may be deemed necessary or desirable by the Managing Partner to effect the dissolution and liquidation of the Partnership; provided, however, that no such representative and attorney-in-fact shall have any right, power or authority to amend or modify this Agreement when acting in such capacity except as provided in Section 1.05.  The foregoing Power of Attorney is hereby declared to be a power coupled with an interest and irrevocable, and shall not be revoked by the death of a Limited Partner and shall extend to such Limited Partner's heirs, legal representatives, successors and assigns.

Section 6.06   New Limited Partners.  The Managing Partner may admit one or more additional Limited Partners at any time in his sole and absolute discretion.  Such additional Limited Partners may be admitted to the Partnership as Class A Limited Partners or as any additional class of Limited Partners created pursuant to Section 1.05.  To accomplish the purpose of this Section 6.06, the Managing Partner may do all things appropriate or convenient in connection with the admission of any additional Limited Partner.  Additional Limited Partners also shall execute a counterpart of this Agreement, as it may be amended, and shall agree to be bound by all the terms and provisions hereof.  The admission of an additional Limited Partner to the Partnership shall not dissolve the Partnership.

Section 6.07   Other Activities.   Nothing contained in this Agreement shall preclude a Limited Partner from engaging in any other activity, including activities for profit.

ARTICLE VII

THE GENERAL PARTNERS

Section 7.01   Powers of the Managing Partner.  The Managing Partner shall make all decisions affecting the activities of the Partnership and shall manage and control the affairs of the Partnership to the best of his ability and for the benefit of all Partners.  The Managing Partner shall use his best efforts to carry out the business and purpose of the

10108281.3                                    12

Partnership. In addition to all powers provided or permitted by the laws of the State of Delaware or any other applicable law, the Managing Partner is hereby authorized on behalf of the Partnership: to expend Partnership funds in furtherance of the business and purpose of the Partnership; to incur obligations for and on behalf of the Partnership in connection with its business; to open, maintain and close, in the name of the Partnership, brokerage and bank accounts, and to draw checks or other orders for the payment of money; to invest all or a portion of the Partnership funds with other independent money managers, private investment partnerships, closed-end funds and other pooled investment vehicles; to pay fees, including performance-based fees to investment managers or managing partners of private investment partnerships, closed-end funds and other pooled investment vehicles, to borrow or raise moneys for and on behalf of the Partnership upon such terms and conditions as may be necessary or advisable and without limit as to amount or manner and time of repayment; to issue, accept, endorse and execute promissory notes, drafts, bills of exchange, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness; to hypothecate, mortgage or pledge the whole or any part of the property or credit of the Partnership, whether at the time owned or thereafter acquired; to repay in whole or in part, refinance, modify or extend any security interest affecting property owned by the Partnership and, in connection therewith, to execute for and on behalf of the Partnership any or all extensions, renewals, or modifications of such security interests; to lend funds and other property of the Partnership either with or without security; to register, in his discretion, any or all Securities and other property owned by the Partnership in the Partnership name, in the name of a nominee or in "street name"; to waive any default under any agreement to which the Partnership is a party; to apply for membership or participation in any exchanges, clearing agencies, trade associations or other organizations and to take any actions and disclose any information necessary or appropriate in connection with such applications; to determine, subject to the provisions of this Agreement, the terms of any offering of interests in the Partnership and the manner of complying with applicable law and to take any additional action as he shall deem necessary or desirable to effectuate the offering of interests in the Partnership; to prepare, execute, file and deliver any documents, instruments or agreements; to delegate investment discretion over the Partnership's portfolio to other independent money managers; to employ such agents, brokers, traders, consultants, advisors, employees, attorneys and accountants as he deems appropriate and necessary to the conduct of the Partnership, whether or not they are associates or affiliates of the Partnership or any General Partner; to obtain insurance for the proper protection of the Partnership and the Partners; to commence or defend any litigation or arbitration involving the General Partners in their capacity as General Partners, and to retain legal counsel in connection therewith and to pay out of the assets of the Partnership any and all liabilities and expenses, including fees of legal counsel, incurred in connection therewith (except if any General Partner is or becomes liable therefor under Section 7.04 or 7.05 hereof); and to make such other decisions and enter into any other agreements or take such other action as he believes to be necessary or desirable to carry out the business and purpose of the Partnership.

       Section 7.02   <u>Reliance by Third Parties</u>. Persons dealing with the Partnership are entitled to rely conclusively upon the power and authority of the Managing Partner as hereinabove set forth and upon the certificate of the Managing Partner to the effect that he is then acting as the Managing Partner and has authority to act on behalf of the Partnership. Any corporation, brokerage firm or transfer agent called upon to transfer any securities to or from the name of the Partnership shall be entitled to rely on instructions or assignments signed or

purported to be signed by the Managing Partner without inquiry as to the authority of the person signing or purporting to sign such instructions or assignments or as to the validity of any transfer to or from the name of the Partnership.  At the time of any such transfer, any such corporation, brokerage firm or transfer agent shall be entitled to assume that (i) the Partnership is then in existence and (ii) that this Agreement is in full force and effect and has not been amended, in each case, unless such corporation, brokerage firm or transfer agent shall have received written notice to the contrary.

Section 7.03   <u>Duties of General Partners; Permitted Transactions</u>.  During the continuance of the Partnership, the General Partners shall devote such time and effort to the Partnership business as may be necessary to promote adequately the interests of the Partnership. The Managing Partner hereby agrees to devote substantially his entire time and effort during normal business hours to the management of the Partnership and other investment entities managed by the Managing Partner, or their respective successors; <u>provided</u>, <u>however</u>, that any General Partner may act, consistent, however, with the foregoing, as a director, officer or employee of any corporation (including any corporation in which the Partnership is invested), a trustee of any trust, an executor or administrator of any estate, a partner of any partnership (including a partnership in which the Partnership is invested) or an administrative official of any other business entity, and may receive compensation and participate in profits in connection with any of the foregoing, and may trade in Securities for his own account or for other accounts for investors including Securities which are the same or different from those traded in or held by the Partnership, and no other Partner shall have any right to participate in any manner in any profits or income earned or derived by any General Partner from or in connection with the conduct of any such other business venture or activity; <u>and further provided</u>, that in discharge of their duties hereunder the General Partners may invest all or a portion of Partnership funds with other independent money managers, private investment funds or other pooled investment vehicles. Failure of the Managing Partner to devote his time, skill and attention to the Partnership to the extent required pursuant to this Section 7.03 due to disability or illness shall not constitute a breach of his obligation to the Partnership pursuant to this Section 7.03.

Section 7.04   <u>Liability of General Partners</u>.  Notwithstanding anything to the contrary contained herein, the General Partners shall not be liable, responsible or accountable in damages or otherwise to the Partnership or to any Limited Partner, successor, assignee or transferee except by reason of acts or omissions due to bad faith, gross negligence, recklessness, fraud or intentional misconduct, or by reason of actions taken in the knowledge that such actions were not within the stated purposes and powers of the Partnership or the powers reasonably to be implied therefrom.

Section 7.05   <u>Indemnification</u>.

(a)   The Partnership shall indemnify, defend and hold each General Partner and, if expressly directed by the Managing Partner, the Partnership's agents, employees, advisors and consultants, harmless from and against any loss, liability, damage, cost or expense, including reasonable attorneys' fees, in defense of any demands, claims or lawsuits against such General Partner or such other persons, in or as a result of or relating to his capacity, actions or omissions as General Partner or as an agent, employee, advisor, or consultant, concerning the business or activities undertaken on behalf, of the Partnership, including, without limitation, any

demands, claims or lawsuits initiated by a Limited Partner or resulting from or relating to the offer and sale of the interests in the Partnership, provided that the acts or omissions of such General Partner or other person are not the result of bad faith, gross negligence, recklessness, fraud or intentional misconduct, or such a lesser standard of conduct as under applicable law prevents indemnification hereunder, or were taken in the knowledge that such actions were not within the stated purposes and powers of the Partnership.

Each General Partner, and any other indemnified person referred to in this Section 7.05, shall be entitled to receive, upon application therefor, advances to cover the costs of defending any claim or action against him; provided, however, that such advances shall be repaid to the Partnership if such General Partner or other person violated any of the standards set forth in the preceding paragraph.  All rights of a General Partner and others to indemnification shall survive the dissolution of the Partnership and the death, retirement, removal, dissolution, adjudication of incompetency or insolvency of either such General Partner or an agent, employee, advisor or others, provided that notice of a potential claim for indemnification hereunder is made by or on behalf of the person seeking such indemnification prior to the time distribution in liquidation of the property of the Partnership is made pursuant to Section 8.02 hereof.

(b)     If the Partnership is made a party to any claim, dispute or litigation or otherwise incurs any loss, liability, damage, cost or expense (i) as a result of or in connection with any General Partner's obligations or liabilities unrelated to the Partnership business, or (ii) by reason of his bad faith, gross negligence, recklessness, fraud or intentional misconduct, or by reason of actions taken in the knowledge that such actions were not within the stated purposes and powers of the Partnership, such General Partner shall indemnify and reimburse the Partnership for all loss, liability, damage, cost and expense incurred, including reasonable attorneys' fees.

Section 7.06     <u>Assignability of General Partnership Interests</u>.  No General Partner shall sell, transfer, assign, or in any manner dispose of, or create, or suffer the creation of, a security interest in such General Partner's interest in the Partnership, in whole or in part, nor enter into any agreement as the result of which any Person shall become interested with such General Partner therein.

Section 7.07     <u>Withdrawals by General Partners</u>.

(a)     Subject to Section 2.01 and to the consent of the Managing Partner, which consent may be withheld in the Managing Partner's absolute discretion, any General Partner may withdraw from the Partnership, in whole or in part, at any time.

(b)     Withdrawal of a General Partner from the Partnership shall occur upon his Bankruptcy, death or adjudicated incompetency.  The withdrawal of a General Partner other than the Managing Partner shall not dissolve the Partnership, but the withdrawal of the Managing Partner will dissolve the Partnership.

(c)     The Managing Partner may force any other General Partner to withdraw from the Partnership at any time, with or without cause, by giving such General

Partner written notice of such mandatory withdrawal at least 30 days prior to the effective date of such withdrawal, which notice shall state the effective date of such withdrawal.

(d)     Subject to Section 2.01 and to the consent of the Managing Partner, each of the General Partners may withdraw in any Fiscal Year, as advances against any future withdrawal by such General Partner for such Fiscal Year pursuant to this Section 7.07, amounts which in the aggregate would not exceed approximately 50% of such General Partner's share of Partnership Income for such Fiscal Year at the time of such withdrawal, all as estimated by the Managing Partner.  Such withdrawal shall not reduce the Capital Account of such General Partner when made, but shall serve to reduce the Capital Account of such General Partner on the last day of the Fiscal Year in which such withdrawals were made, or, if earlier, on the dissolution of the Partnership.

Section 7.08    Distributions Upon Withdrawal of a General Partner.  Any amount withdrawn by a General Partner pursuant to Section 7.07(a) or (d) shall be distributed on the date of such withdrawal.  Upon a withdrawal of a General Partner pursuant to Section 7.07(b) or (c), the Managing Partner shall distribute to the withdrawing General Partner, as promptly as practicable, the balance in the withdrawing General Partner's Capital Account without interest thereon.  The Managing Partner may withhold from any distribution to a withdrawing General Partner a reserve to pay for contingent liabilities arising from events occurring during the period of time in which the withdrawing General Partner was a Partner, which reserve, or any remaining balance thereof, shall be paid to the Partner upon the Managing Partner's determination that the reserve (or the remaining balance) is no longer required.  Any reserve amounts so withheld will be deposited by the Managing Partner in an interest bearing account at a major bank headquartered in New York City, and any interest earned on such account, net of any fees relating thereto, shall be paid to the withdrawn Partner at the time such reserve is paid.

Section 7.09    New General Partners.  The Managing Partner may admit one or more additional General Partners at any time.  Additional General Partners shall execute an amendment of the certificate of limited partnership, which amendment shall be filed with the Secretary of State of the State of Delaware upon the admission of any additional General Partners.  To accomplish the purpose of this Section 7.09, the Managing Partner may do all things appropriate or convenient in connection with the admission of any additional General Partner.  Additional General Partners also shall execute a counterpart of this Agreement, as it may be amended, and shall agree to be bound by all the terms and provisions hereof.  The admission of an additional General Partner to the Partnership shall not dissolve the Partnership.

ARTICLE VIII

DISSOLUTION, LIQUIDATION AND TERMINATION OF PARTNERSHIP

Section 8.01    Dissolution.  The Partnership shall dissolve upon the first to occur of the following:

(a)     a determination by the Managing Partner that the Partnership should dissolve;

(b)      the death, Bankruptcy, retirement or adjudication of insanity of the Managing Partner or illness of the Managing Partner which prevents him from devoting a substantial amount of his time, skill and attention to the Partnership or other investment entities managed by the Managing Partner for a period of 90 days;

(c)      December 31, 2015; or

(d)      any event causing the dissolution of the Partnership under the laws of the State of Delaware.

Upon the dissolution of the Partnership, no further business shall be done in the Partnership name except the completion of any incomplete transactions and the taking of such action as shall be necessary for the winding up of the affairs of the Partnership and the distribution of its assets.

Section 8.02    Liquidation.   Upon dissolution of the Partnership, the Managing Partner shall (i) cause such of the Partnership property as the Managing Partner shall deem appropriate to be sold in the manner and at the price the Managing Partner determines, (ii) determine the Capital Accounts of the Partners pursuant to Article III hereof and (iii) take the following actions and make the following distributions out of the property of the Partnership in the following manner and order:

(a)      pay all debts and liabilities of the Partnership and expenses of liquidation in the order of priority provided by law;

(b)      distribute the remainder of the property in cash or in kind, as the Managing Partner shall determine, to the Partners in the relative proportions that their Capital Accounts bear to each other at the time of such distribution.  Any distributions in kind shall be ratable as to particular items of property or Securities, and any assets used to make any such payment shall be taken at their fair value on the day of distribution determined in the manner provided in Section 4.05.

Anything in the foregoing provisions of this Section 8.02 to the contrary notwithstanding, each Partner hereby agrees that any such dissolution or distribution shall be postponed for such period of time as may be required by the Securities and Exchange Commission or any other governmental authority having jurisdiction over the Partnership or its business, and any property of the Partnership so retained by the Partnership shall continue at the risk of the Partnership and be subject to all debts and other obligations of the Partnership; provided that the Managing Partner will use his best efforts to obtain the regulatory approvals, if any, necessary to effect such dissolution or distribution.

ARTICLE IX

RESERVES UPON WITHDRAWAL OR DISSOLUTION

Section 9.01    Reserves.   The amount of any distribution upon a dissolution or withdrawal may be made in cash or in kind or partially in cash, as the Managing Partner shall determine, less a reasonable reserve, as determined in the sole and absolute discretion of the

Managing Partner, for the former Partner's proportionate share of any known or unknown liabilities of the Partnership not fully provided for pursuant to Article III for periods in which such former Partner was a Partner.  Property distributed in kind shall be valued at the fair market value thereof on the date of distribution, as determined pursuant to Section 4.05.

Section 9.02   Distribution of Reserves.  Any reserve amounts so withheld will be deposited by the Managing Partner in an interest bearing account at a major bank headquartered in New York City.  Upon determination by the Managing Partner that circumstances no longer require the retention of any amount reserved pursuant to this Agreement, the Managing Partner shall pay such sum to the Partner (or his Legal Representative), along with any interest earned on such account, at the earliest practicable time.

ARTICLE X

ACCOUNTING

Section 10.01 Accounts of the Partnership.  Accurate accounts shall be kept in accordance with generally accepted accounting principles (except and to the extent otherwise provided herein) of all matters relating to the activities of the Partnership, and each Partner and his duly appointed agents or Legal Representative may inspect the books containing such accounts for any proper purpose under such conditions and restrictions as the Managing Partner may reasonably prescribe.

Section 10.02 Annual Financial Statements.  The Partnership shall retain independent public accountants selected by the Managing Partner.  Annually, such accountants shall examine the Partnership balance sheet and related statements of income and Partners' Capital Accounts prepared as herein provided so as to enable such accountants to render an opinion (or other written statement) as to whether or not such financial statements present fairly the data shown therein in accordance with accounting provisions as herein provided.

Section 10.03 Annual Reports to Partners.  Within 90 days after the end of each Fiscal Year, the Managing Partner shall cause to be prepared and mailed to each Partner a report setting forth, as of the end of such Fiscal Year, the audited balance sheet of the Partnership and related statement of Partnership income and the amount of such Partner's Capital Account and, as soon thereafter as practicable, the amount of such Partner's share of the Partnership's taxable income or loss for such Fiscal Year, in sufficient detail to enable him to prepare his federal, state and other tax returns.

Section 10.04 Quarterly Reports to Partners.  Within 35 days after the end of each fiscal quarter other than the fourth fiscal quarter, the Managing Partner shall cause to be prepared and mailed to each Partner a report setting forth, as of the end of such fiscal quarter, the Partnership's unaudited balance sheet and related statement of Partnership income.

Section 10.05 Tax Returns and Tax Elections.

(a)     The Partnership's accountants shall prepare all federal, state and local tax returns of the Partnership for each year for which such returns are required to be filed. The Managing Partner, in his sole discretion, shall determine the accounting methods and

conventions under the tax laws of the United States, the several states and other relevant jurisdictions as to the treatment of income, gain, loss, deduction and credit of the Partnership or any other method or procedure related to the preparation of such tax returns.  The Managing Partner, in his sole discretion, may cause the Partnership to make or refrain from making any and all elections permitted by such tax laws (including without limitation an election under Section 754 of the Code).  Upon request of a General Partner, each Partner agrees to provide to such General Partner information regarding its adjusted tax basis in its Partnership interest along with documentation substantiating such amount.

(b)     Each Partner agrees that, in respect of any year in which he has or had any interest in the Partnership, he shall not (i) treat, on his individual income tax returns, any item of income, gain, loss, deduction or credit relating to his interest in the Partnership in a manner inconsistent with the treatment of such item by the Partnership as reflected on the Form K-l or other information statement furnished by the Partnership to such Partner for use in preparing his income tax returns or (ii) file any claim for refund relating to any such item based upon, or which would result in, such inconsistent treatment unless such Partner has been advised by counsel that treating such item in a manner consistent with the treatment of such item by the Partnership would subject such Partner to penalties under the Code.

(c)     The Managing Partner shall be the Tax Matters Partner as that term is defined in Section 6231(a)(7) of the Code.  In that capacity, in the event of an income tax audit of any Partnership return, to the extent the Partnership is treated as an entity for purposes of the audit, including administrative settlement and judicial review, the Tax Matters Partner shall be authorized to act for and represent the Partnership, and to enter into a settlement agreement within the meaning of Section 6224(c)(1) of the Code (or comparable provisions under state or local law) to which each Partner agrees to be bound.  All expenses incurred in connection with any such audit shall be expenses of the Partnership.  The Tax Matters Partner shall be authorized to carry out on behalf of the Partnership and at the Partnership's expense all acts appropriate to such designation with respect to federal, state and local taxing authorities.

ARTICLE XI

MISCELLANEOUS

Section 11.01  Amendments.  This Agreement may not be amended except by a writing executed by the General Partners and by a majority in interest of the Limited Partners; provided, however, that (a) without the consent of all the Partners, no such amendment shall change the Partnership to a general partnership, reduce the liabilities, obligations or responsibilities of the General Partners or increase the liabilities, obligations or responsibilities of the Limited Partners, and (b) without the consent of each Partner affected thereby, no such amendment shall reduce the Capital Account of any Partner or alter or modify his interest in Partnership Income, distributions or Partnership Losses pursuant to Section 3.04, his rights of withdrawal with respect thereto or this Section 11.01; and provided further, however, that the Managing Partner may amend this Agreement without the consent of any of the other Partners to reflect changes validly made in the membership of the Partnership; to reflect changes in the Capital Accounts of the Partners resulting from operation of this Agreement and, subject to the foregoing provisos, to reflect the creation of additional classes of Limited Partners pursuant to

Section 1.05.   Anything in the foregoing provisions of this Section 11.01 to the contrary notwithstanding, this Agreement shall be amended from time to time in each and every manner to comply with the then existing requirements of the Code, the Treasury Regulations and the rulings of the Internal Revenue Service affecting the status of the Limited Partnership as a partnership for federal income tax purposes, and no amendment shall be proposed which shall directly or indirectly affect or jeopardize the then status of the Limited Partnership as a partnership for federal income tax purposes.

Section 11.02  Severability.   In the event that any provision of this Agreement shall be held to be void or unenforceable for any reason whatsoever, the remaining provisions of this Agreement shall not be affected thereby and shall continue in full force and effect.

Section 11.03  Notices.   All notices to the Partnership shall be addressed to its principal office.   All notices addressed to a Partner or his Legal Representative shall be addressed to such Partner or Legal Representative at the address of such Partner set forth in Schedule A hereto.   Any Partner or the Legal Representative of any Partner may designate a new address by notice to such effect given to the Partnership.   Unless otherwise specifically provided in this Agreement, a notice shall be deemed to have been given to the Partnership when received by the Partnership and to have been given to a Partner or his Legal Representative when delivered or on the third business day after the notice shall have been mailed by registered mail, postage prepaid.

Section 11.04  No Waiver.   No waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other subsequent breach or condition, whether of like or different nature.

Section 11.05  Copy on File.   Each Partner hereby agrees that one executed counterpart of this Agreement or set of executed counterparts shall be held at the principal office of the Partnership, that a Certificate of Limited Partnership and all amendments thereto shall be filed in the Office of the Secretary of State of Delaware and copies thereof shall be held at the principal office of the Partnership and that there shall be distributed to each Partner, upon the request of such Partner, a conformed copy of this Agreement as amended from time to time.

Section 11.06  Governing Law.   This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

Section 11.07  Counterparts.   This Agreement may be executed in one or more counterparts, including counterparts executed by additional Partners admitted to the Partnership, and each of such counterparts shall, for all purposes, be deemed to be an original, but all of such counterparts shall constitute one and the same instrument.

Section 11.08  Waiver of Right to Partition.   Each of the Partners irrevocably waives during the term of the Partnership any right that such Partner may have to maintain any action for partition with respect to the property and assets of the Partnership, and hereby agrees not to commence any action for a partnership accounting or otherwise proceed adversely in any manner whatsoever against the other Partners or the Partnership, except for bad faith, gross negligence, fraud, intentional misconduct or violation of this Agreement.

Section 11.09  <u>Arbitration</u>.  Any dispute, controversy or claim arising out of or in connection with or relating to this Agreement or any breach or alleged breach hereof shall be submitted to, and determined and settled by, arbitration in New York, New York, or in such other location as the parties may agree, in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  The board of arbitration shall be composed of three arbitrators.  If there are only two parties to the arbitration, then each party shall appoint an arbitrator and the third shall be chosen by the two so appointed.  If either party to the arbitration fails to choose an arbitrator within thirty days after notice of commencement of arbitration, or if the two arbitrators fail to choose a third arbitrator within thirty days of their appointment, or if there are more than two parties to the arbitration, the American Arbitration Association shall, upon the request of any party to the arbitration, appoint the arbitrator or arbitrators to constitute or complete the panel, as the case may be.  The arbitration award shall be final and binding on the parties to the arbitration and judgment thereon may be entered in any court having jurisdiction, or application may be made to any such court for confirmation of such award or a judicial acceptance of such award or other legal remedy, as the case may be.

Section 11.10  <u>Sole Agreement</u>.  This Agreement supersedes all prior agreements and understandings among the Partners with respect to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of this 1st day of October, 2006.

GENERAL PARTNER:                                  CLASS A LIMITED PARTNER:

_____                  _____
J. Ezra Merkin,                                                         Attorney-in-Fact
Managing Partner

                                                                 CLASS B LIMITED PARTNER:

                                                                 _____
                                                                        Attorney-in-Fact

                                                                 CLASS C LIMITED PARTNER:

                                                                 _____
                                                                        Attorney-in-Fact

<u>Schedule A</u>

<u>Partners of Ascot Partners, L.P.</u>

<u>NAME</u>                                                CAPITAL ACCOUNT
                                                           <u>BALANCE AS OF</u>
<u>General Partner</u>

J. Ezra Merkin
450 Park Avenue
32nd Floor
New York, New York 10022


<u>Class A Limited Partners</u>:

<u>Class B Limited Partners</u>:

<u>Class C Limited Partners</u>:

10108281.3

STATE OF NEW YORK      )

                              ss.:

COUNTY OF NEW YORK   )


           On the ___ day of _____, 2006, before me personally came J. Ezra Merkin, to me known and known to me to be the individual described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.


                                                  _____

                                                      Notary Public