# Exhibit I

<u>Sixth Amended and Restated Investment Advisory Agreement</u>

SIXTH AMENDED AND RESTATED INVESTMENT ADVISORY AGREEMENT (the "Agreement") by and between Gabriel Capital Corporation (the "Investment Advisor") and Ariel Fund Limited (the "Fund"), dated December 27, 2007. All capitalized terms not defined herein will have the meanings assigned to them in the Confidential Offering Memorandum dated March 2006.

<u>Preliminary Statement</u>

WHEREAS, Gabriel Capital Corporation (formerly known as Ariel Management Corporation) (the "Investment Advisor") and Ariel Fund Limited (the "Fund") entered into an Investment Advisory Agreement dated as of November 1, 1990 (the "Original Agreement") pursuant to which the Investment Advisor agreed to provide investment advisory services to the Fund in return for various Fees (as defined below);

WHEREAS, the Original Agreement was modified on December 29, 1994 to, among other things, provide for the deferral of payment of all or a portion of the Fees to the Investment Advisor and to subject any such deferred Fees to the risks and benefits of an investment in the Fund (the "Second Amended and Restated Investment Advisory Agreement");

WHEREAS, the Second Amended and Restated Investment Advisory Agreement was modified on September 30, 1999 to, among other things, extend the period for deferral of the Fees payable to the Investment Advisor (the "Third Amended and Restated Investment Advisory Agreement"); and

WHEREAS, the Third Amended and Restated Investment Advisory Agreement was modified in October 2001 so as to, among other things, amend the Fee and Advisory Fee Account provisions to reflect the creation of Special Investment Shares (as defined herein) upon the Fund investing in, or designating an existing investment as, a special investment (the "Fourth Amended and Restated Investment Advisory Agreement");

WHEREAS, the Fourth Amended and Restated Investment Advisory Agreement was modified as of December 29, 2006, to, among other things, modify the Fee provisions (the "Fifth Amended and Restated Investment Advisory Agreement"); and

WHEREAS, the parties desire to amend and restate the Fifth Amended and Restated Investment Advisory Agreement to modify the Fee provisions.

NOW THEREFORE, the parties hereto amend and restate this Agreement effective as of the date hereof to read in its entirety as follows:

1.  <u>Term</u>. The appointment of the Investment Advisor as investment advisor under this Agreement shall continue until such time as (i) the Fund sells all or substantially all of the assets not in the ordinary course of business; or (ii) the Fund is liquidated or dissolved and its assets are distributed.

10577555.4

2. <u>Fees</u>. The Fund shall pay to the Investment Advisor or its designee, on a series by series basis, on the last day of the fiscal year (adjusted pro rata for any partial years):

(a) a management fee equal to 1% of the net asset value attributable to each such series of shares (including Special Investment Shares) (the "Management Fee"). The Fund has issued in the past, and may issue in the future, different classes of Participating Shares as to which the Management Fees are calculated on a different basis.

If a Shareholder redeems all or substantially all of its outstanding Participating Shares of a series (a "Withdrawn Shareholder") at a time when such Withdrawn Shareholder holds Special Investment Shares that were converted from Participating Shares of such series (or the successor to such series), a portion of its proceeds with respect to such redemption may be reserved or held back to pay for the Management Fee expected to be earned over the life of the Special Investments. Any unearned portion of the Management Fee for which such reserve or holdback was made will be paid to the Shareholder at final realization or Deemed Disposition, together with Accrued Interest. To the extent the amount reserved or held back to pay Management Fees (as described above) does not cover Management Fees that would otherwise be payable over the life of the Special Investment, then such unpaid Management Fees may be paid out of profits, if any, earned in respect of such Special Investment for the period beginning from the time such shortfall begins to accrue until realization or Deemed Disposition, but only to the extent of the increase in the value of the Special Investment from the date such shortfall begins to accrue.

(b) an incentive fee equal to 20% of the increase, if any, in the net asset value attributable to each series of Participating Shares as of the last business day of the fiscal year from either the net asset value attributable to each such series as of the first day of the fiscal year or, in the case of a series of such Participating Shares purchased during the fiscal year, the aggregate subscription price paid for such series (the "Incentive Fee"). Net appreciation in net asset value will not be reduced by prior years' investment losses (that is, there is no "high water mark" concept in the calculation of Incentive Fees) or by investment losses with respect to another series of Participating Shares owned by such Shareholder. Given the illiquid nature of Special Investments, the net asset value of a series of Special Investment Shares cannot be determined with the same degree of certainty and will be carried on the books of the Fund at fair value (generally, at cost) as determined by the Investment Advisor until the occurrence of the realization or Deemed Disposition of the Special Investment.

In the case of a series of Participating Shares to which a series of Special Investment Shares relates, the amount of any dividends or other distributions with respect to such Special Investment Shares and net profits or loss realized upon the realization or Deemed Disposition of such Special Investment Shares shall be included in the determination of the increase in the net asset value attributable to such series of Participating Shares in the period in which such realization or Deemed Disposition occurred.

Upon a redemption of Participating Shares for the purchase of Special Investment Shares, any accrued Incentive Fee shall be set aside (the "Set Aside Amount") until the realization or Deemed Disposition of the Special Investment to which such Special Investment Shares relate. Upon the realization or Deemed Disposition of a Special Investment,

net realized or unrealized appreciation or depreciation attributable to such Special Investment shall be taken into account in determining the Incentive Fee at the end of such fiscal year and shall be aggregated with any Set Aside Amount.

The Fund has issued in the past, and may issue in the future, different classes of Participating Shares as to which the Incentive Fees are calculated on a different basis.

The Incentive Fee (and any accrued Management Fee) on Special Investment Shares will be paid out of the series of Participating Shares (or the successor to such series) from which such shares were converted at the time of realization or Deemed Disposition of the Special Investment.

(c) Fees hereunder shall be payable as follows:

(i) Except as hereinafter provided, the Incentive Fees to which the Investment Advisor becomes entitled hereunder on the date that such Incentive Fees otherwise would be payable, shall be charged to the Net Asset Value of the Participating Shares to which they are attributable and shall be recorded as a liability of the Fund to the Investment Advisor in a separate book account (the "Advisory Fee Account") of the Fund, which liability shall be adjusted as provided in paragraph (ii) and shall be paid to the Investment Advisor in accordance with paragraphs (iii), (ix) or (x), as applicable. An Advisory Fee Account shall be established for (i) all Incentive Fees earned for fiscal years ending on or before December 31, 2008 (the "Pre-2009 Account") and (ii) a separate Advisory Fee Account for any particular fiscal year beginning on or after January 1, 2009. Notwithstanding the foregoing, the Investment Advisor may, by written notice to the Fund given prior to the commencement of a year to which such Incentive Fees relate, elect not to defer and to receive payment of the Incentive Fees (or any portion thereof) to which it becomes entitled with respect to such year. Such election not to defer shall hereby be deemed made for any calendar year beginning on or after January 1, 2009 unless the Investment Advisor makes a written election with respect to a particular year to defer the Incentive Fees to be earned during such year, such election to be made prior to the beginning of such year. In the event of a non-deferral of Incentive Fees, the Fund shall pay to the Investment Advisor that portion of the Incentive Fee, if any, which the Investment Advisor is not deferring, in the year following the year with respect to which such Incentive Fee is earned and shall not record such amounts as a liability in the Advisory Fee Account. The Investment Advisor may, by written notice to the Fund given prior to the commencement of a year to which such Management Fee relates, elect to defer Management Fees. In such event, on the date the Management Fees otherwise would be payable, the Management Fee shall be charged to the Net Asset Value of the Participating Shares to which they are attributable (or in the case of the 1% fee charged in respect of Special Investment Shares, of the Participating Shares from which such Special Investment Shares were converted or from any reserve or holdback for a Withdrawn Shareholder as described in Section 2(a)) and shall be recorded as a liability of the Fund to the Investment Advisor in the applicable Advisory Fee Account of the Fund, which liability shall be adjusted as provided in paragraph (ii) and shall be paid to the Investment Advisor in accordance with paragraphs (iii), (ix) or (x), as applicable. The Incentive Fees and Management Fees are collectively referred to herein as the "Fees".

      (ii) The balance of each Advisory Fee Account and the liability of the Fund to the Investment Advisor shall be adjusted as of the close of business on each date that the Fund's assets are marked to market as follows:

        (a) increased or decreased by a factor derived from the Index (as defined and described below);

        (b) increased by the Incentive Fees applicable to such Advisory Fee Account that the Investment Advisor has elected to defer, if any, as of such date;

        (c) increased by the Management Fees applicable to such Advisory Fee Account that the Investment Advisor has elected to defer, if any, as of such date; and

        (d) decreased by payments of deferred Fees to the Investment Advisor from such Advisory Fee Account, the liability with respect to which is reflected in such Advisory Fee Account.

      For purposes hereof, the "Index" shall mean the net asset value per share of a hypothetical series of Participating Shares of the Fund and any Special Investment Shares that were converted from such Participating Shares (except for Special Investment Shares that were in existence at the time such Advisory Fee Account was initially credited with the applicable Incentive Fees or Management Fees), initially determined as of January 1, 1995, and thereafter adjusted to reflect the performance of the Fund as provided in the Articles of Association of the Fund but determined without regard to dividends, if any, paid with respect to Participating Shares or the debiting of amounts for the Fees with respect to that series. The factor derived from the Index shall be determined by dividing such net asset value per share attributable to such hypothetical series as so determined as of the date that the assets of the Fund are marked to market by the net asset value per share attributable to such hypothetical series as so determined as of the commencement date of the applicable period. Notwithstanding the above, the Investment Advisor and the Fund may agree from time to time to modify the Index, provided that the definition of "Index" shall be construed to assure that maintenance of, and adjustments to, the applicable Advisory Fee Account shall have no adverse impact on the net asset value per share of Participating Shares of any Series that would have been determined had such Advisory Fee Account not been established and Fees had been paid to the Investment Advisor as they accrued. It is specifically understood that the Fund may make certain investments which it would not make in the absence of this Fee arrangement (including investments which are inconsistent with the investment objectives of the Fund) in order to assure that maintenance of, and adjustments to, the Advisory Fee Accounts shall have no adverse impact on the net asset value per share of Participating Shares of any Series that would have been determined had the Advisory Fee Accounts not been established, and that appreciation or depreciation in such investments will be offset by a commensurate increase or decrease, respectively, in the amount of the applicable Advisory Fee Account(s).

      (iii) (a) For deferred Fees earned during the years ending on or prior to December 31, 2008, the Fund shall pay to the Investment Advisor, on January 1, 2013, and each January 1st thereafter, an amount equal 10% of the deferred Fees earned each year plus

any appreciation or depreciation thereon as included in the Pre-2009 Account. For purposes of calculating the payment amounts, the Fund shall consider each year in which deferred Fees credited to the Pre-2009 Account were earned separately for purposes of calculating 10% of such Fees.

(b) For deferred Fees earned during a year beginning on or after January 1, 2009, the payment schedule for such Fees shall be the schedule described in the applicable election of the Investment Advisor to defer such Fees (each January 1 described in paragraph (iii)(a) and any payment date elected pursuant to this paragraph (iii)(b), a "Distribution Date").

(iv) The rights of the Investment Advisor to payments of amounts reflected in any Advisory Fee Account may not be assigned, transferred, pledged or encumbered.

(v) Fees payable to the Investment Advisor hereunder shall be an obligation of the Fund, generally payable in cash from the general funds of the Fund (except with respect to Special Investment Shares described below), and no special fund shall be established with respect to which the Investment Advisor has any rights greater than any unsecured general creditor of the Fund.

(vi) To the extent the hypothetical series of Shares of the Fund upon which the Index is determined includes Special Investment Shares on the date any portion of any Advisory Fee Account is otherwise payable, payment may be made to the Investment Advisor in kind or in non-fee-paying Shares of the Fund, to the extent that the applicable Advisory Fee Account is no longer Indexed to any series of Shares that are not Special Investment Shares.

(vii) Notwithstanding the foregoing, the Investment Advisor may make a written election to extend any Distribution Date with respect to Fees earned in a particular fiscal year; provided, however, that (i) such election (a "Subsequent Election") shall be made at least 12 months prior to the Distribution Date described in paragraph 2(c)(iii) or the applicable Distribution Date provided in the most recent Subsequent Election applicable with respect to such Fees, (ii) such Subsequent Election shall extend the applicable Distribution Date(s) in effect by a minimum period of five years, and (iii) such Subsequent Election shall not take effect until at least 12 months after the date on which such Subsequent Election is made. The Subsequent Election shall apply to the applicable deferred Fees (or applicable portion thereof), including any appreciation or depreciation thereon. For purposes of this paragraph, any payment made from the Advisory Fee Account on a Distribution Date constitute a separate "payment" within the meaning of Treasury Regulations Section 1.409A-2(b) or any successor provision thereto.

(viii) Notwithstanding anything in this Agreement to the contrary, the Investment Advisor may elect by written notice to the Fund, to change one or more Distribution Dates or payment dates described in paragraphs 2(c)(iii) and (vii) or payment dates described in paragraphs 2(c)(x) and (xi) ("Termination Dates") for deferred Fees, provided that (i) any such election to change a Distribution Date or Termination Date to a date in calendar year 2008 shall be made on or prior to December 31, 2007; (ii) any such election to change from a

Distribution Date or Termination Date occurring in calendar year 2008 shall be made on or prior to December 31, 2007; (iii) any such election to change a Distribution Date or Termination Date to a date in calendar year 2009 shall be made on or prior to December 31, 2008; (iv) any such election to change from a Distribution Date or Termination Date occurring in calendar year 2009 shall be made on or prior to December 31, 2008; and (v) except as provided in paragraph 2(c)(vii) hereof, any other such election shall be made no later than the later of (i) December 31, 2008 or (ii) the latest date allowed under transition relief for changes to the time and form of payment of deferred compensation subject to Section 409A of the U.S. Internal Revenue Code of 1986, as amended, and any U.S. Treasury Regulations and other guidance issued thereunder (collectively, "Section 409A"). The Investment Advisor and the Fund intend that this paragraph 2(c)(viii) be operated in accordance with Q&A A-19(c) of Notice 2005-1, Section XI(C) of the preamble to REG 158080-04, dated October 4, 2005 (Application of Section 409A to Nonqualified Deferred Compensation Plans), Section 3.02 of Notice 2007-86 and any future applicable guidance under Section 409A.

(ix) Notwithstanding the foregoing, upon the termination of this Agreement or such other event that constitutes a "separation from service" by the Investment Advisor within the meaning of Section 409A, each Advisory Fee Account shall be paid in accordance with the following schedule:

(A) one-third of such Advisory Fee Account shall be paid to the Investment Advisor within 90 days after the month in which such event occurs;

(B) one-half of the balance of such Advisory Fee Account remaining after the payment described in clause (A) shall be paid to the Investment Advisor in the calendar year following the calendar year in which such event occurs; and

(C) 100% of the balance of such Advisory Fee Account remaining after the payment described in clause (B) shall be paid to the Investment Advisor in the second calendar year following the calendar year in which such event occurs.

(b) Upon presentation by the Investment Advisor to the Fund of satisfactory evidence that this Agreement fails to meet the requirements of Section 409A, and a determination by the board of directors of the Fund (the "Board") as to the amount held in an Advisory Fee Account that is required to be included in the Investment Advisor's income as a result of such failure (the "Inclusion Amount"), payment of such Inclusion Amount shall be made on the same schedule as an event described in paragraph (ix)(a).

(x) Notwithstanding the foregoing, upon (i) the written notification by the Investment Advisor to the Fund of an Unforeseeable Emergency occurring on or after January 1, 2007 with respect to the Investment Advisor, (ii) a determination by the Board that such an Unforeseeable Emergency in fact exists, and (iii) a determination by the Board as to the portion of the deferred amount needed to satisfy the financial need giving rise to such Unforeseeable Emergency, such amounts shall be paid out of the applicable Advisory Fee Accounts within 90 days following the occurrence of such event; provided, however, that such amount shall not exceed the amount described in Section 409A(a)(2)(B)(ii)(II) of the Code and the Regulations thereunder. For purposes of this section, "Unforeseeable Emergency" shall have

the same meaning as set forth in Section 409A(a)(2)(B)(ii) of the Code and the Regulations thereunder.

    (xi) If any 90-day period described in paragraphs (ix) or (xi) would begin in one calendar year and end in the following calendar year, the determination of when payment occurs during such 90-day period shall be made by the Board.

    (xi) It is the intention of the Fund and the Investment Manager that this Agreement at all times be operated in accordance with the requirements of Section 409A, and any provision contained herein shall be construed in a manner that is in compliance with Section 409A.

    3. <u>Authority of the Investment Advisor</u>. The Investment Advisor shall have full and absolute discretionary power (a) to supervise and direct the investment of the Fund's assets, making and implementing all investment decisions (including without limitation, the voting of any securities which are the Fund's assets), and full and absolute discretionary power over the Account including, without limitation, full authority to sell the Fund's assets, to use the Fund's assets to purchase securities which will then become the Fund's assets, and to otherwise effect such transactions and make such dispositions within the Account of the Fund's assets as it in its sole discretion sees fit, and (b) to borrow additional funds to purchase additional Fund assets and to secure such borrowing with pledge of the Fund's assets purchased with the proceeds of such borrowing, all without prior consultation with the Fund, in accordance with and subject to the terms and conditions of this Agreement.

    4. <u>Reliance-by Third Parties</u>. Third parties are entitled to rely conclusively upon the certificate of the Investment Advisor to the effect that it is then acting as the Investment Advisor and upon the power and authority of the Investment Advisor as herein set forth.

    5. <u>Representations of the Investment Advisor</u>. The Investment Advisor represents and warrants that this Agreement has been duly authorized by appropriate action and when executed and delivered will be binding upon the Investment Advisor in accordance with its terms.

    6. <u>Representations of the Fund</u>. The Fund represents and warrants that:

    (a) the Fund has entered into an agreement with brokers pursuant to which the Investment Advisor is granted full authority to sell Assets, to use Assets to purchase securities which will then become Assets, and to otherwise effect such transactions and make such dispositions within the Account of the Assets as it in its sole discretion sees fit, in accordance with and subject to the terms of this Agreement;

    (b) the terms of this Agreement do not violate any obligation by which the Fund is bound, whether arising by contract, by operation of law or otherwise; and

    (c) this Agreement has been duly authorized by appropriate action of the Fund and when executed and delivered will be binding upon the Fund in accordance with its terms. The Fund shall deliver to the Investment Advisor such evidence of such authority as the

investment Advisor may reasonably request, whether by way of a certified resolution or otherwise.

7. Agreements.

(a) The Investment Advisor agrees that it will cause all income (including, without limitation, stock dividends, stock splits, or any such other right or benefit whatsoever) earned by the Assets to be reinvested or held as it, in its sole discretion, shall determine; and it will cause all proceeds of sales of Assets, and all securities purchased with Assets, and all interest accrued on any of them, to be reinvested or held in the Account as it, in its sole discretion, shall determine.

(b) The Fund agrees that it will deposit in the Account all proceeds from the issuance from time to time of any and all shares of the Fund, less an amount equal to the par value of such shares and any amounts required by the Fund for operating expenses.

8. Exculpation.

(a) The Investment Advisor shall have no responsibility with respect to the collection of income, or the physical acquisition or the safe-keeping of the Assets; and

(b) the Investment Advisor shall not be liable to the Fund for mistakes of judgment or for action or inaction which said Investment Advisor reasonably believed to be in the best interests of the Fund, or for losses due to such mistakes, action or inaction or to the negligence, dishonesty or bad faith of any employee, broker or other agent of the Investment Advisor, provided that such employee, broker or agent was selected, engaged or retained by the Investment Advisor with reasonable care. Notwithstanding any of the foregoing to the contrary, the provisions of this Section 8(b) shall not be construed so as to relieve (or attempt to relieve) the Investment Advisor of any liability, to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of this Section 8 to the fullest extent permitted by law.

9. Indemnification of the Investment Advisor. To the fullest extent permitted by law, the Fund shall indemnify and hold harmless the Investment Advisor and/or his legal representatives from and against any loss or expense suffered or sustained by him by reason of the fact that he is or was the Investment Advisor to the Fund, including without limitation any judgment, settlement, reasonable attorney's fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceeding, provided that such loss or expense resulted from a mistake of judgment on the part of the Investment Advisor, or from action or inaction which the investment Advisor and/or his legal representative reasonably believed to be in the best interests of the Fund. The Fund shall advance to the Investment Advisor and/or his legal representatives, reasonable attorney's fees and other costs and expenses incurred or to be incurred in connection with the defense of any action or proceeding which arises out of such conduct. The Investment Advisor hereby agrees, and the legal representative of it shall agree, that in the event the Investment Advisor or legal representative receives any such advance, such Investment Advisor or legal representative shall reimburse the Fund for such

fees, costs and expenses to the extent it shall be determined that it was not entitled to indemnification under this section.

10. <u>Non-disclosure</u>. The Fund understands that, under applicable regulations of the Securities and Exchange Commission, the Investment Advisor may be required to provide an issuer of securities with the Fund's name, address and securities position, compiled as of the issuer's record date for its latest annual meeting of securities holders, if the Fund is a beneficial owner of that issuer's securities and has not specifically objected to the disclosure of such information. The Fund hereby specifically objects to any disclosure to an issuer of its name, address and securities position.

11. <u>Confidentiality</u>. Schedules, memoranda, documents, notices, data reports and other information provided by either party hereto to the other, either orally or in writing, shall be treated as confidential and shall not be disclosed to any other person except as may be necessary to carry out the party's duties and obligations under this Agreement or as may otherwise be required by law.

12. <u>Other Transactions by the Investment Advisor</u>.

(a) The Fund understands that the investment Advisor may perform similar services for other funds and that the Investment Advisor may supervise and manage portfolios of others and serve as investment advisor hereunder at the same time. The Fund further understands that purchases and sales of the same securities or other property may, at times, be made for the Account and for one or more other accounts, including the investment Advisor's proprietary account or proprietary accounts of affiliates of the Investment Advisor, in which case the purchase and sale transactions may be made collectively for the various accounts and may be allocated among the accounts (including the Account) in a manner that, the Investment Advisor believes in good faith to be equitable.

(b) The Fund understands that the Investment Advisor in good faith may engage in transactions, or cause or advise other funds to engage in transactions, which may differ from the transactions in which the Investment Advisor engages for the Account. The Investment Advisor shall not be obligated to engage in any transaction for the Account which the Investment Advisor may engage in for its own account or the account of any other fund. Further, the Investment Advisor may take an opposite position to any transaction engaged in for the Account, whether acting as advisor for the account of another or as principal for its own account.

(c) In planning the Fund's investment strategy and making trading decisions, the Investment Advisor, at its sole discretion, may consult with other professionals active in the markets and may place funds for investment with such persons. The Investment Advisor will retain overall responsibility for funds invested with other persons and such investments will be terminable by the Investment Advisor at any time in its sole discretion.

13. <u>Agreement not Assignable</u>. No assignment of this Agreement may be made by the Investment Advisor without the written consent of the Fund.

14. <u>Applicable Law</u>. The Provisions of this Agreement shall be construed and interpreted in accordance with the law of the State of New York.

15. <u>Notices</u>. All notices required pursuant to the terms of this Agreement shall be valid only if in writing and only if sent by certified mail, tested telex, or facsimile transmission; if to the Investment Advisor, to

>Gabriel Capital Corporation
>450 Park Avenue
>Suite 3201
>New York, New York  10022
>Tel: 212-838-7200
>Telefax: 212-838-9603

and, if to the Fund, to:

>Ariel Fund Limited
>c/o Fortis Prime Fund Solutions (Cayman) Limited
>P.O. Box 2003GT
>Grand Pavilion Commercial Centre
>802 West Bay Road
>Grand Cayman, Cayman Islands
>Tel: 345-949-7942
>Telefax: 345-914-9903

All notices shall be deemed given when received.

16. <u>Entire-Understanding</u>. This Agreement constitutes the entire understanding between the parties hereto with respect to the appointment of the Investment Advisor as investment advisor of the Account.

17. <u>Amendment</u>. This Agreement may not be amended except by a written instrument executed by each of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have hereunto set their signatures to this, or a counterpart of this Agreement, intending that any one or more counterpart or counterparts signed by the parties shall constitute a full and original agreement for all purposes, the 27th day of December, 2007.

ARIEL FUND LIMITED

By: _____
Name:   Don M. Seymour
Title:   Director

By: _____
Name:   Aldo Ghisletta
Title:   Director

GABRIEL CAPITAL CORPORATION

By: *[signature]*
Name:   J. Ezra Merkin
Title:   President