UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re

J. EZRA MERKIN AND BDO SEIDMAN
SECURITIES LITIGATION.

No. 08 Civ. 10922 (DAB)

------------------------------------------------------------ x

**DEFENDANT BDO USA, LLP's REPLY MEMORANDUM
<u>IN FURTHER SUPPORT OF MOTION TO DISMISS</u>**

Ira G. Greenberg
Florence A. Crisp
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendant BDO USA, LLP
 f/k/a BDO Seidman, LLP
750 Lexington Avenue, 8th floor
New York, NY 10022
(212) 308-4411

NYC 362817.2

## **TABLE OF CONTENTS**

Page

A.     RULE 10B-5 ................................................................................................................2

      1.     Purchase and Sale .............................................................................................2

      2.     Scienter .............................................................................................................2

           a.     Merkin's Testimony ..............................................................................3

           b.     "Red Flags" ...........................................................................................4

B.     SLUSA PREEMPTION.............................................................................................6

C.     STANDING ...............................................................................................................7

D.     HOLDER CLAIMS....................................................................................................8

E.     FRAUD.......................................................................................................................8

F.     BREACH OF FIDUCIARY DUTY ..........................................................................8

G.     AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ............................8

H.     UNJUST ENRICHMENT .........................................................................................9

I.     NEGLIGENT MISREPRESENTATION ...............................................................10

      1.     Standing ..........................................................................................................10

      2.     Breach of Duty...............................................................................................10

J.     AMENDMENT ........................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Anwar v. Fairfield Greenwich Ltd.,
   2010 WL 3341636 (S.D.N.Y.) .................................................................... 4, 5, 6, 7

In re Beacon Associates Litigation,
   2010 WL 3895582 (S.D.N.Y.) ............................................................................ 6, 7

Continental Cas. Co. v. Pricewaterhouse-Coopers LLP,
   2007 WL 3992606 (N.Y. Sup. Ct., New York County), aff'd, 57 A.D.3d 411,
   869 N.Y.S.2d 506 (1st Dep't 2008), aff'd, 15 N.Y.3d 264, 933 N.E.2d 738, 907
   N.Y.S.2d 139 (2010) .......................................................................................... 7, 8

CRT Investments, Ltd. v. Merkin,
   Index No. 601052/09, slip op. (N.Y. Sup. Ct., New York County, May 7, 2010) ......... 6

Jones v. PricewaterhouseCoopers, LLP,
   6 Misc. 3d 1014(A), 800 N.Y.S.2d 348 (Sup. Ct., New York County, 2004) .............. 10

Kaufman v. Cohen,
   307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) ................................................. 9

Litman v. Prudential-Bache Properties, Inc.,
   611 A.2d 12 (Del. Ch. 1992) ...................................................................................... 9

Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.,
   2010 WL 1257567 (S.D.N.Y.) ..................................................................................... 6

Newman v. Family Management Corp.,
   2010 WL 4118083 (S.D.N.Y.) ..................................................................................... 7

Pension Committee v. Banc of Am. Sec., LLC,
   446 F. Supp. 2d 163 (S.D.N.Y. 2006) ........................................................................ 7

Romano v. Kazacos,
   609 F.3d 512 (2d Cir. 2010) ....................................................................................... 6

Starr Foundation v. American Int'l Group, Inc.,
   76 A.D.3d 25, 901 N.Y.S.2d 246 (1st Dep't 2010) ..................................................... 8

Stephenson v. Citco Group, Ltd.,
   700 F. Supp. 2d 599 (S.D.N.Y. 2010) ................................................................ 5, 6, 7

Sykes v. RFD Third Ave. 1 Associates, LLC,
   2010 WL 4065468 (N.Y.) .......................................................................................... 10

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
    845 A.2d 1031 (Del. 2004) ........................................................................................9

In re Tremont Sec. Law, State Law & Ins. Litig.,
    703 F. Supp. 2d 362 (S.D.N.Y. 2010) .......................................................................6

Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker,
    56 A.D.3d 1, 865 N.Y.S.2d 14 (1st Dep't 2008) ........................................................9

Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.,
    672 F. Supp. 2d 596 (S.D.N.Y. 2009) .......................................................................6

White v. Guarante,
    43 N.Y.2d 356, 372 N.E.2d 315, 401 N.Y.S.2d 474 (1977) .....................................8

**STATUTES**

Del. Code Ann. tit. 6, § 17-201(b) ..............................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 ........................................................................................................2

This action arose out of the Ponzi scheme that Bernard Madoff conducted over two decades. Madoff deceived not only thousands of investors, including some of the most sophisticated in the world, but also the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority. Other noted international accounting and auditing firms did not find Madoff's Ponzi scheme. Nevertheless, defendant BDO USA, LLP ("BDO") stands accused of fraud, among other things, even though there is no suggestion that it knowingly participated in Madoff's scheme and notwithstanding the fact that it never audited Madoff or any of his entities. A host of cases from New York state and federal courts have not permitted similar fraud claims against accounting firms to go forward.

Plaintiffs attempt to save their claims from the fate that others suing accounting firms have met by contending (at 1-2) that unequivocal testimony demonstrates BDO's awareness of concrete facts indicating the existence of the fraud. One searches the cited testimony in vain for such evidence. There is nothing to suggest, as plaintiffs contend, that defendant J. Ezra Merkin told BDO of general warnings he had received about Madoff's suspect strategy and impossibly high returns, much less about a specific warning that Madoff was likely running a Ponzi scheme. Rather, the cited testimony demonstrates only BDO's discharge of its professional obligation to gain an understanding of its audit client's strategy, returns, and risks. Nor is this the only instance in which plaintiffs' description of evidence does not correspond to reality.

Plaintiffs' other arguments likewise would require this Court to ignore controlling cases. Plaintiffs' complaint should be dismissed in its entirety.

    A.    Rule 10b-5.

    1.    Purchase and Sale: The answering brief admits by silence that rule 10b-5 does not permit holder claims. This count therefore can be limited to inducement claims.[1]

    2.    Scienter: Plaintiffs do not dispute BDO's exposition of the law. As shown in section I.2 infra, BDO complied with all applicable auditing standards. Even if it did not, however, plaintiffs concede that GAAS or GAAP violations alone do not establish scienter. They do not plead that no reasonable accountant would have done what BDO did. They do not deny that recklessness is only a basis upon which to draw the inference that a defendant participated in a fraud. They do not explain why, if plaintiffs' theory be correct, it would not follow that the SEC, FINRA, many sophisticated investors, and all the other accounting firms that audited investors, all of whom also did not find Madoff's Ponzi scheme, were equally in on the fraud.

Plaintiffs skirt this problem by arguing that they have pleaded scienter because, first, conversations with J. Ezra Merkin put BDO on notice of Madoff's fraud; and second, "red flags" should have caused BDO to have done something more, the failure to do which permits the inference that BDO was in on Madoff's (or is it Merkin's?) fraud.

---

[1] Although not pleaded in this count, paragraph 285 of the third amended complaint seems to aver that plaintiffs relied on BDO's audited financials in making their decisions to invest. BDO believes that this allegation is a rule 11 violation and will take up that issue later if appropriate. The fact that the materials that Merkin used to market the funds mentioned BDO as their auditor cannot sustain the claim, both because BDO did not make the statement and because the statement was true.

a. <u>Merkin's Testimony</u>: The essence of Merkin's testimony is that Victor Teicher, who worked with Merkin, told Merkin that he had questions about volatility of returns and that in the early 2000s Merkin told a BDO tax partner of that conversation. Brown Decl. exh. 16, at 105-06. Teicher did not understand Madoff's strategy, <u>id.</u> at 86, and Merkin, who reviewed the results at the time, saw considerable volatility, <u>id.</u> at 88. Ultimately, Teicher also came to see the volatility. <u>Id.</u> at 88-89. Teicher never raised with Merkin, and Merkin never raised with BDO, questions about Madoff's integrity. <u>Id.</u> at 109. Merkin also never talked about any internal control deficiencies at Madoff with BDO. <u>Id.</u> at 97-102.

Merkin also testified that he had a conversation with one or two people at BDO who were familiar with the funds' investment strategy and with returns from and risks of that strategy. <u>Id.</u> at 105-08. The BDO person asked about recommending the investment to other clients. <u>Id.</u> at 108.

Based on this testimony, plaintiffs assert (at 2) that "Merkin testified that he had discussions with BDO about warnings he had received about Madoff's suspect trading strategy and impossibly high and stable returns, including a specific warning that Madoff was likely running a Ponzi scheme." To the same effect, <u>see</u> Pltfs. Brief at 14. The cited testimony does not suggest, let alone say, anything remotely like that. That Teicher never raised questions about Madoff's integrity and that the BDO person supposedly considered recommending the investment to other clients confirm this fact.

Merkin's testimony that BDO was familiar with the funds' strategy, including its returns and risks, suggests nothing other than BDO's discharge of its professional obligations. The auditor has to understand the business of the entity under

audit. AU 314.21 to -.33 (Reply Decl. of Ira G. Greenberg, Nov. 29, 2010, exh. K). Plaintiffs would have sued on that basis if BDO had not. Auditing standards say, however, that the auditor need not be expert in other areas, such as securities. AU 110.04 (Greenberg Decl. exh. I). Accordingly, Merkin as an investment professional, not BDO as the auditor, had to determine whether the investment strategy worked.

        b.    <u>"Red Flags"</u>: BDO audited the funds, not Madoff. As plaintiffs' brief (at 18 n.12) (emphasis added) states, "Red flags are facts that 'would place a reasonable auditor on notice that the <u>audited company</u> was engaged in wrongdoing to the detriment of its investors.'" See <u>Anwar v. Fairfield Greenwich Ltd.</u>, 2010 WL 3341636, at *66 n.23 (S.D.N.Y.) ("<u>Anwar II</u>") ("Plaintiffs cite no case, and the Court has found none, in which allegations that an auditor ignored red flags at a third party, non-client, as opposed to the audit client itself, established <u>scienter</u>").

Nothing suggests that the funds were engaged in wrongdoing that affected their financial statements. The wrongdoing was at Madoff. Decisions finding Merkin made false statements in offering memoranda are irrelevant. BDO did not approve, let alone make a representation about, those statements.

Essentially, then, plaintiffs' "red flags" argument is that BDO should have done more auditing procedures because of the "red flags." "Red flags" gain significance only if the auditor actually knew of them. The only basis for believing that BDO knew of any of the articles referred to in the complaint is Merkin's speculation. There is no basis for believing that BDO knew of questions in the investment community about Madoff's ability to obtain the results that he reported, about the volume of options trading, or about variances between trade and market price. The testimony supposedly supporting

the statement in plaintiffs' brief (at 9) that Merkin discussed with BDO whether the options market could support Madoff's investment strategy does not do so. See Brown Decl. exh. 16, at 138 (only such discussions were with Madoff). There is also no requirement that BDO have made such a determination, let alone on every trade rather than on a test basis. See, e.g., Brown Decl. exh. 13, at 3 ("on a test basis"); AU 326.02, -.13 (Greenberg Decl. exh. B).

Those aside, plaintiffs' brief cites as purported "red flags" Madoff's being investment adviser, broker, and custodian; retaining a small accounting firm; using paper trade tickets; converting securities to T-bills at year-end; and achieving trading success. BDO's principal memorandum dealt with most of these without refutation. BDO incorporates that discussion by reference.

BDO adds a few observations about the specific purported "red flags."

As to Madoff's having multiple roles, the same is true of every broker-dealer with discretion. Consequently, it is not a "red flag." Anwar II at *66; Stephenson v. Citco Group, Ltd., 700 F. Supp. 2d 599, 624 (S.D.N.Y. 2010).

As to Madoff's accounting firm, the required allegation that BDO had actual knowledge about its size or stature is lacking. See Anwar II at *65. Furthermore, Madoff's accounting firm is irrelevant because there is no allegation that BDO was relying on its audit; hence, neither AU 324 nor AU 332 (Greenberg Decl. exhs. F, H) required inquiries about it. Further, the assets at issue in this case, which Madoff held only as custodian, would not have appeared on Madoff's financial statements.

As to conversion to Treasury bills and investing success, plaintiffs were equally on notice, as these appeared in the financial statements. See Brown Decl. exh. 13, at 5; id. exh. 14 at 8. See also Anwar II at *65 (making this point).

As any number of courts have held, none of these puts an auditor on notice that a Ponzi scheme might be under way. In re Beacon Associates Litigation, 2010 WL 3895582, at *22 (S.D.N.Y.); In re Tremont Sec. Law, State Law & Ins. Litig., 703 F. Supp. 2d 362, 370-71 (S.D.N.Y. 2010); Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc., 2010 WL 1257567, at *5 (S.D.N.Y.); Stephenson v. Citco Group, Ltd., 700 F. Supp. 2d at 623-24; CRT Investments, Ltd. v. Merkin, Index No. 601052/09, slip op. at 23-26 (N.Y. Sup. Ct., New York County, May 7, 2010). Even Anwar II (at *64-66), the case on which plaintiffs most rely, rejects these "red flags" individually and collectively. Cf. Varghese v. China Shenghuo Pharmaceutical Holdings, Inc., 672 F. Supp. 2d 596, 606 (S.D.N.Y. 2009) (auditor aware of pervasive internal control and ongoing financial reporting problems at client).

Nor did these cases rest entirely on the ground that the auditors lacked knowledge of the red flags, as plaintiffs assert. See, e.g., Anwar II at *65-66 (red flags of which auditor had knowledge insufficient); In re Beacon Associates Litigation, 2010 WL 3895582, at *22 ("or not strong enough to support an inference of scienter"). Interestingly, plaintiffs' brief on the Merkin defendants' motion (at 29 n.20) purports to distinguish Meridian Horizon Fund and Tremont not for lack of knowledge but rather on the ground that they "address duties of auditors."

  B. SLUSA Preemption.  There is a split of authority in this Circuit about the proper approach to SLUSA. The Court of Appeals' decision in Romano v.

Kazacos, 609 F.3d 512 (2d Cir. 2010), in taking a broad view of SLUSA's scope, although not directly on point, and Judge Sand's decisions in In re Beacon Associates Litigation, 2010 WL 3895582, at *33, and Newman v. Family Management Corp., 2010 WL 4118083, at *9-10 (S.D.N.Y.), which are, persuasively support BDO's position.

    C.    Standing.  Much of the argument that plaintiffs have advanced assaults a red herring. BDO did not say that plaintiffs lack standing to make purchaser claims. This argument addresses only holder claims.

The entire conflict of laws issue is also a red herring, because it is unclear that there is any difference in Delaware and New York law on standing. See Anwar II at *58 n.9. If the issue were of import, New York courts look to Delaware law to determine whether a claim is direct or derivative. Continental Cas. Co. v. Pricewaterhouse-Coopers LLP, 2007 WL 3992606 (N.Y. Sup. Ct., New York County), aff'd, 57 A.D.3d 411, 869 N.Y.S.2d 506 (1st Dep't 2008), aff'd, 15 N.Y.3d 264, 933 N.E.2d 738, 907 N.Y.S.2d 139 (2010). While some courts have carved out an exception when another state has an "overriding interest . . . in the issue," Pension Committee v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 191-92 (S.D.N.Y. 2006), New York has no such interest here. Thus, most courts in Madoff cases have followed the general rule. E.g., Newman v. Family Management Corp., 2010 WL 4118083, at *11; Stephenson v. Citco Group, Ltd., 700 F. Supp. 2d at 608.

Even if New York law controlled, a limited partner must demonstrate that the duty breached was independent of any duty owed to the partnership and that the partner can prevail without also showing injury to the entity. Continental Cas. Co. v. PricewaterhouseCoopers, LLP, 2007 WL 3992606. When, as in this case, the

partnership engaged the auditor that allegedly performed negligently, any harm that a limited partner suffered is derivative of the partnership's harm, id.:

> [P]laintiffs do not claim that PWC performed any audit on their behalf either before or after their investments. Nor do plaintiffs show a breach of a duty PWC owed to them independent of any duty owed to the Partnerships. Thus, the injuries that plaintiffs suffered derived from their status as limited partners. Any duty that PWC owed to the limited partners was derivative of PWC's obligations to the limited partnership. Plaintiffs' resulting injury is attributable to a loss the limited partnerships suffered and then to plaintiffs through the allocation of those losses on a pro rata basis. For the foregoing reasons, PWC has demonstrated that plaintiffs' claims are derivative, not direct.

D.  Holder Claims. Plaintiffs' holder claims should be dismissed in light of Starr Foundation v. American Int'l Group, Inc., 76 A.D.3d 25, 30-32, 901 N.Y.S.2d 246, 251 (1st Dep't 2010) (holder claims barred by out-of-pocket damages rule).

E.  Fraud. Plaintiffs recognize that the fraud claim must be decided the same as the rule 10b-5 claim, except insofar as the ratio decidendi of the latter is no purchase and sale.

F.  Breach of Fiduciary Duty. BDO's principal brief showed that an auditor does not owe a fiduciary duty to its audit client, let alone to the client's present or prospective investors. Plaintiffs rely on White v. Guarante, 43 N.Y.2d 356, 372 N.E.2d 315, 401 N.Y.S.2d 474 (1977), for the proposition that a limited partner might meet the Credit Alliance test. That test has nothing to do with whether a fiduciary duty ran to partners or potential investors. Absent a duty there can be no claim for breach.

G.  Aiding and Abetting Breach of Fiduciary Duty. BDO showed that the complaint did not plead its actual knowledge that Merkin engaged in breaches of fiduciary duty or that BDO knowingly participated in furthering those breaches.

As to knowledge, plaintiffs' brief (at 28) speaks to Merkin's not having a genuine belief or reasonable basis for the funds' financial statements. But the allegation of the complaint that they quote does not say that BDO had such information. Rather, it says that BDO "disregarded information that indicated or should have indicated" that Merkin lacked such a belief or basis. Those allegations do not amount to BDO's actual knowledge, nor do they plead Merkin's breach of a fiduciary duty. They also lack plausibility, as shown above.

As to assistance, the allegation is that BDO issued "clean" audit opinions; but substantial assistance means more than performing routine business or professional services. See, e.g., Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 56 A.D.3d 1, 12, 865 N.Y.S.2d 14, 23 (1st Dep't 2008). Rather, substantial assistance connotes intentional participation in furthering the primary offender's wrongdoing. Kaufman v. Cohen, 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 170 (1st Dep't 2003). The complaint does not plead that element either.

H. <u>Unjust Enrichment</u>. BDO showed that the funds' limited partners do not have a claim for "return" of auditing fees that the funds paid. Plaintiffs' response (at 31) is that the partners "ultimately" pay them because they owned the funds. Not surprisingly plaintiffs cite nary a case in support of this argument, which proves way too much. The funds are separate entities. Del. Code Ann. tit. 6, § 17-201(b). Ultimately natural persons own entities, directly or indirectly. Yet just as a corporate shareholder may not sue to be made whole for every tort allegedly committed against a corporation, see, e.g., Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004); a limited partner may not sue for injury to a limited partnership, Litman v.

Prudential-Bache Properties, Inc., 611 A.2d 12, 16-17 (Del. Ch. 1992) (limited partnerships). See also Jones v. PricewaterhouseCoopers, LLP, 6 Misc. 3d 1014(A), 800 N.Y.S.2d 348 (Sup. Ct., New York County, 2004) (New York law).

    I.    Negligent Misrepresentation. 1. Standing. Prospective investors in the funds did not meet the Credit Alliance test because BDO could not have known who they were. A unanimous New York Court of Appeals last month in Sykes v. RFD Third Ave. 1 Associates, LLC, 2010 WL 4065468 (N.Y.), confirmed the importance of this element: "The words 'known party or parties' . . . mean what they say."

Moreover, as to the linking conduct element, the complaint pleads no communications between BDO and any class members before they purchased interests. Audit reports were addressed to existing partners. Brown Decl. exh. 12, at 3; id. exh. 13, at 3.[2] For that reason also this claim cannot survive for investment claims.

    2.    Breach of Duty. The complaint does not plead breach of duty, and plaintiffs' brief's hodgepodge of references to auditing standards utterly fails to come to grips with BDO's analysis (at 20-22) of those standards, particularly of AU 332 (Greenberg Decl. exh. F), which governs auditing investments in securities. BDO showed that AU 332.21 expressly permits an auditor to audit securities' existence by confirmation with the holder, here, Madoff. The complaint pleads that BDO did so. Although the auditor may employ alternative or additional procedures, AU 332 does not require any or all of them.

The remainder of AU 332 deals not with existence but rather with internal controls. AU 332.11 gives the auditor discretion in testing internal controls if the auditor

---

[2] See note 1 supra concerning reliance.

NYC 362817.2     -10-

is required to do so at all; but BDO, who was auditing the funds and not Madoff, did not have to test Madoff's internal controls in the areas that underlay the Ponzi scheme, because AU 332.13 provides that the following need never be assessed:

- The execution by a securities broker of trades that are initiated by either the entity or its investment adviser.

- The holding of an entity's securities.

J. <u>Amendment</u>. Plaintiffs' alternative request for leave to amend should be denied. Plaintiffs do not suggest how they might amend to cure the deficiencies noted above. As they are substantive, not purely formal, amendment would be a waste of everyone's time and resources.

Dated: New York, NY
November 30, 2010

                                                Respectfully submitted,

                                                /s/
                                        Ira G. Greenberg (igreenberg@eapdlaw.com)
                                        Florence A. Crisp (fcrisp@eapdlaw.com)
                                        EDWARDS ANGELL PALMER & DODGE LLP
                                        Attorneys for Defendant BDO USA, LLP
                                        750 Lexington Avenue, 8th floor
                                        New York, NY  10022
                                        (212) 308-4411

## CERTIFICATE OF SERVICE

I certify that on the 30th day of November, 2010, I caused a true copy of the attached reply memorandum and reply declaration of Ira G. Greenberg to be served on the following by electronic filing and first-class mail:

Arthur N. Abbey, Esq.
Karin Fisch, Esq.
Nancy Kaboolian, Esq.
Stephen Thran Rodd, Esq.
Richard B. Margolies, Esq.
ABBEY SPANIER RODD &
ABRAMS LLP
Attorneys for Plaintiffs
212 East 39th Street
New York, NY 10016
(212) 684-5191

Andrew J. Levander, Esq.
Gary Mennitt, Esq.
David Hoffner, Esq.
Neil A. Steiner, Esq.
DECHERT, LLP
Attorneys for Defendants Merkin and
    Gabriel Capital
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

Gregory Mark Nespole, Esq.
Malcolm Todd Brown, Esq.
Russell Stuart Miness, Esq.
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ
Attorneys for Jacob E. Finkelstein and
    Nephrology Associates,
270 Madison Avenue
New York, NY 10017
(212) 545-4657

Howard Schiffman, Esq.
Harry Sandick, Esq.
Eric A. Bensky, Esq.
SCHULTE ROTH & ZABEL, LLP
Attorneys for Ascot Partners L.P and
    Gabriel Capital, L.P.
919 Third Avenue
New York, NY 10022
(212) 756-2000

David Esseks, Esq.
ALLEN & OVERY
Attorneys for Fortis Defendants
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300

_____
ASHLEY M. O'MARA

NYC 362817.2