UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re J. Ezra Merkin and BDO Seidman Securities Litigation | Case No. 08 Civ. 10922 (DAB) |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION PURSUANT TO RULE 59(e) TO ALTER OR AMEND THE JUDGMENT

| | |
|---|---|
| ABBEY SPANIER RODD & ABRAMS, LLP<br>212 East 39th Street<br>New York, New York 10016<br>(212) 889-3700 | WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP<br>270 Madison Avenue<br>New York, New York 10016<br>(212) 545-4600 |

*Attorneys for Plaintiffs*

\673546

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

I.  DEFENDANTS CANNOT REFUTE THAT THE COURT ERRONEOUSLY OVERLOOKED CONTROLLING AUTHORITY REGARDING THE MARTIN ACT .3

II.  DEFENDANTS HAVE NOT REFUTED THAT THE COURT OVERLOOKED THAT THE FOCUS OF THE SLUSA INQUIRY IS ON THE DEFENDANTS' CONDUCT ....6

III.  PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT MERKIN AND GCC VIOLATED SECTION 10(b)..................................................................................7

# TABLE OF AUTHORITIES

**CASES**                                                                                                      **Page(s)**

*Adebiyi v. Yankee Fiber Control, Inc.*,
  705 F. Supp. 2d 287 (S.D.N.Y. 2010) ................................................................................. 5

*Allen v. WestPoint-Pepperell, Inc.*,
945 F.2d 40 (2d Cir. 1991) ................................................................................................... 10

*Assured Guaranty (UK) Ltd. v J.P. Morgan Investment Management, Inc.*,
  915 N.Y.S.2d 7 (App. Div. 2d Dep't 2011) ................................................................... 1,4,6

*Brooklyn Navy Yard Asbestos Litigation*
  *(Joint Eastern & Southern District Asbestos Litigation)*,
  971 F.2d 831 (2d Cir. 1992) .............................................................................................. 5,6

*Caboara v. Babylon Cove Development LLC*,
  862 N.Y.S.2d 535 (App. Div. 2d Dep't 2008) ..................................................................... 6

*Castellano v. Young & Rubicam*,
  257 F.3d 171 (2d Cir. 2001) .............................................................................................. 3,5

*Dandong v. Pinnacle Performance Ltd.*,
  No. 10 Civ. 8086 (LBS), 2011 U.S. Dist. LEXIS 126552 (S.D.N.Y. Oct. 31, 2011) .......... 5

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
  547 U.S. 71 (2006) ............................................................................................................... 6

*Scalp & Blade, Inc. v. Advest, Inc.*,
  722 N.Y.S.2d 639 (4th Dep't 2001) ..................................................................................... 6

*West v. American Telephone & Telegraph Co.*,
  311 U.S. 223 (1940) ........................................................................................................... 4,5

**STATUTES**

15 U.S.C. § 77p(b) ("SLUSA") ................................................................................................ 2,6,7

N.Y. Gen. Bus. L. § 352-c(1) (the "Martin Act") ................................................................. *passim*

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion for an order, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, amending the Court's Judgment, in order to (i) correct clear errors of law, and (ii) grant permission, pursuant to Federal Rule of Civil Procedure 15(a), to file the FAC.[1]

## PRELIMINARY STATEMENT

In their opposition to the Rule 59(e) motion, Merkin and GCC concede, as they must, that the pending decision by the New York Court of Appeals in *Assured Guaranty* regarding Martin Act preemption will be binding on this Court. The New York Court of Appeals heard oral argument on November 15, 2011 on the question of whether the Martin Act preempts independent, pre-existing, properly pled common law causes of action. Although the court reserved judgment on the issue, and it is not known how long the court will take to issue its decision, it cannot be disputed that its ruling is imminent and will be binding on this Court. The interests of judicial economy and fairness, as well as principles of federalism, counsel reserving decision on this motion until the New York Court of Appeals rules in *Assured Guaranty*.

Even in the absence of the now-imminent decision by the New York Court of Appeals, the Defendants have failed to refute Plaintiffs' argument that the Court erred by not reviewing the relevant decisions of the intermediate New York *state* courts, each of which has held that the Martin Act does not preempt independent common law causes of action. The Supreme Court and the Second Circuit have made clear that it is this Court's responsibility to review those decisions, regardless of the prior decisions of other federal courts, including those of the Second Circuit. The Court ruled on an issue of New York state law without considering New York state court opinions on that issue. This was error, and Defendants offer no persuasive argument to the

---

[1] All defined terms have the same meaning ascribed to them in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion Pursuant to Rule 59(e) to Alter or Amend the Judgment.

contrary.

With respect to SLUSA, Defendants ignore Plaintiffs' main argument – that the Court erred by not focusing on the Defendants' conduct in its SLUSA inquiry. The Supreme Court and other courts within the Second Circuit have explained that the focus of the "in connection with" element of SLUSA is the conduct of the defendants. Here, the alleged misconduct of the Defendants was "in connection with" the interests in the Funds, which Defendants do not dispute are non-covered securities under SLUSA, and not the phantom securities that Madoff purportedly traded.

Defendants also ignore Plaintiffs' argument that the Court erred by overlooking allegations sufficient to establish a section 10(b) claim. Merkin and GCC provide a cursory re-cap of the Court's decision without addressing the core error – that the purportedly cautionary language in the offering materials cannot operate as a disclaimer for liability for the particular misrepresentations considered by the Court, let alone for all of the misrepresentations, which the Court was required to consider holistically, but did not. As one example, the Court found that Merkin's statement that he would sometimes use third party investment managers disclaimed his statement that he would monitor those third parties. However, Merkin stated unequivocally that he would monitor investments *whether those investments were made by him or a third party*.

In the recent Decision and Award in *In the Matter of Arbitration Between Moshael Straus, Claimant and J. Ezra Merkin, Respondent*, 13-148-Y-001800-10, Oct. 12, 2011, the arbitration panel made specific findings of fact after a full arbitration proceeding regarding untruths and omissions in the Funds' offering materials about Merkin's role in the management of the Funds and his own use of certain investment strategies. *See, e.g.,* Decision and Award, annexed as Exhibit A to the Declaration of Demet Basar in Further Support of Plaintiffs' Motion Pursuant to Rule 59(e) to Alter or Amend the Judgment ("Basar Decl."), at 19. The *Straus* panel

expressly addressed this Court's September 23, 2011 Opinion and Order and noted that "[t]he majority [of the panel] has separately analyzed the same factual pattern and determined that there were misrepresentations and omissions" and that Merkin clearly "misrepresented his past, current and intended future role." Decision and Award at 36-37. The panel awarded over $7 million to the claimant.

## ARGUMENT

I. **DEFENDANTS CANNOT REFUTE THAT THE COURT ERRONEOUSLY OVERLOOKED CONTROLLING AUTHORITY REGARDING THE MARTIN ACT**

Defendants are unable to refute Plaintiffs' argument that this Court was required to consult relevant New York intermediate state court decisions on the issue of Martin Act preemption rather than merely relying on *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001), and "survey[ing] and consider[ing]" other district court decisions. Regardless of the result in *Castellano*, *Castellano* itself instructed this Court to consult the New York state court decisions on Martin Act preemption. *Castellano* stated:

> [P]rinciples of federalism and respect for state courts' interpretation of their own laws counsel against ignoring the rulings of those New York courts that have taken up the issue.

257 F.3d at 190. The *Castellano* court's instruction is clear: *all* federal courts – not just federal appellate level courts or district courts whose appellate courts have not spoken on the issue – must look to the New York state courts that have ruled on the state law issue being decided. *Castellano*'s holding that the Martin Act had preemptive effect was based on the law of New York's intermediate courts as of *2001*. However, in the decade following *Castellano*, the two cases on which it relied were *overruled*, and, as of *2011*, all New York state intermediate appellate courts that have considered the issue are uniform in holding that the Martin Act has no preemptive effect.

3

Supreme Court precedent also clearly instructs that, under all circumstances, all federal courts are to consult state court opinions, regardless of whether federal appellate courts have previously ruled on the issue being decided:

> State law is to be applied in the federal as well as the state courts and it is the duty of the former *in every case* to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, . . . ***however much the state rule may have departed from prior decisions of the federal courts***.

*West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (emphasis added)). *West* could not be clearer that this Court was required to consult the New York Appellate Division decisions, "however much" those decisions "may have departed from prior decisions" of the Second Circuit. In *West*, the Supreme Court further instructed that: "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law ***which is not to be disregarded by a federal court*** unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* at 237 (emphasis added). *West* explained that the *Erie* decision and section 34 of the Judiciary Act[2] were designed to prevent state and federal courts from simultaneously applying different rules of state law. *Id.* at 236 ("[T]he obvious purpose of § 34 of the Judiciary Act is to avoid the maintenance within a state of two divergent or conflicting systems of law, one to be applied in the state courts, the other to be availed of in the federal courts."). That undesirable scenario, which the Supreme Court warned against, is exactly what this Court has created by ruling contrary to the decisions of the New York intermediate courts on the Martin Act preemption issue. *See Assured Guaranty (UK) Ltd. v. J.P.*

---

[2] Section 34 of the Judiciary Act provides:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

28 U.S.C. § 1652.

4

*Morgan Invest. Mgmt. Inc*, 915 N.Y.S.2d 7, 13 (App. Div. 1st Dep't 2010) ("[M]any courts, particularly federal courts, have misinterpreted [New York Court of Appeals] cases to find such preemption of common-law causes of action arising from facts which would support a Martin Act claim."); *cf. Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (LBS), 2011 U.S. Dist. LEXIS 126552, *38-39 (S.D.N.Y. Oct. 31, 2011) (Sand, J.)[3] (finding that "the law in this Circuit is in a state of flux" with respect to the Martin Act and that it was "not persuaded that Defendants' invocation of the Martin Act is sufficient to defeat Plaintiffs' subordinate claims at the pleadings stage").

Defendants cite no Second Circuit authority endorsing the Court's approach in ruling on the Martin Act. In fact, Defendants ignore Second Circuit authority that is consistent with *Castellano* and *West*. Defendants cite to *Adebiyi v. Yankee Fiber Control, Inc.*, which stated, erroneously, that it was "bound by Second Circuit precedent, even on issues of state law." 705 F. Supp. 2d 287 (S.D.N.Y. 2010). However, what Defendants omit from their memorandum of law is that *Adebiyi* cited to a Second Circuit case, *In re Brooklyn Navy Yard Asbestos Litigation (Joint Eastern & Southern District Asbestos Litigation)*, which held, contrary to the *Adebiyi* court's assertion, and consistent with *West* and *Castellano*, that all district courts interpreting a state court issue must look to intermediate state courts where the highest state court has not ruled on the issue:

> A federal court faced with a question of unsettled state law must do its best to guess how the state court of last resort would decide the issue. Where the high court [of the state] has not spoken, the best indicators of how it would decide are often the decisions of lower state courts.

---

[3] While the Court cited *In re Beacon Associates Litigation*, in which Judge Sand dismissed common law claims as preempted by the Martin Act (Opinion and Order at 36 (citing 745 F. Supp. 2d 386, 428-32 (S.D.N.Y. 2010)), *Dandong* makes clear that Judge Sand, having now considered opinions in which district courts consulted the current state of New York's common law and ruled against preemption, will not dismiss well-pled common law claims on Martin Act grounds.

> As the district court [which was deciding whether to aggregate set-offs] explained, "while a federal court is not bound by lower state court decisions, they do have great weight in informing the court's prediction on how the highest court of the state would resolve the question." Therefore, notwithstanding the district court's conviction that aggregation is the sounder approach, it followed the state courts' interpretation of [the statute at issue] to the contrary as uttered in [two New York Supreme Court cases].

971 F.2d 831, 850 (2d Cir. 1992) (internal citations omitted). This duty of inquiry is irrefutable, and it cannot be disputed that the Court made no such inquiry, because it did not consult the Appellate Division decisions in *Assured Guaranty*, *Caboara v. Babylon Cove Development LLC*, 862 N.Y.S.2d 535, 538 (App. Div. 2d Dep't 2008), and *Scalp & Blade, Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639, 640 (App. Div. 4th Dep't 2001), all of which hold the Martin Act does not preempt independent common law causes of action.

As Merkin and GCC concede, the pending ruling by the New York Court of Appeals in *Assured Guaranty (UK) Ltd. v J.P. Morgan Investment Management, Inc.*, No. 603755/08, which will resolve the Martin Act preemption issue, will be binding upon this Court. Principles of federalism, judicial efficiency, and simple fairness counsel that the Court should await the imminent decision by the New York Court of Appeals prior to ruling on this Motion. Moreover, the Martin Act preemption issue is also before the Second Circuit in *Barron v. Igolnikov*, No. 10-1387-cv (2d Cir.). Oral argument in *Barron* took place on March 1, 2011 and the court reserved decision.

II. **DEFENDANTS HAVE NOT REFUTED THAT THE COURT OVERLOOKED THAT THE FOCUS OF THE SLUSA INQUIRY IS ON THE DEFENDANTS' CONDUCT**

The Defendants' alleged misconduct in this case is incontrovertibly "in connection with" only non-covered securities. The Court, while it cited *Dabit*, ignored that the *Dabit* court's analysis demonstrates, and several courts in the Southern District have held, that the focus of the SLUSA inquiry is the defendants' conduct. *See* Mem. Law of Pls. at 10-12. In spite of

6

Defendants' argument that the Court considered and rejected Plaintiffs' argument, *see* Mem. Law of Defs. at 10, the Court's analysis of the "in connection with" element of SLUSA does not contain any discussion or consideration of the Defendants' alleged misconduct. *See* Opinion and Order at 31-33. Thus, the Defendants attempt to sidestep, as they must, Plaintiffs' core argument as to why the Court's ruling on SLUSA is incorrect.

Moreover, the scope of SLUSA preclusion, in particular the scope of the "in connection with" element, is now before the Second Circuit in *Barron v. Igolnikov*. This Court should await the Second Circuit's pending decision in *Barron* before ruling on the SLUSA "in connection with" question.

### III.   PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT MERKIN AND GCC VIOLATED SECTION 10(b)[4]

Just as the Court did in its Opinion and Order, in their opposition memorandum, defendants Merkin and GCC ignore entire categories of false and misleading statements alleged in the TAC which are more than sufficient to state a claim under Section 10(b) and Rule 10b-5. As these Defendants recognize, the primary basis for the Court's dismissal of this claim was a finding that the offering materials for the Funds disclosed the use of third-party managers and the attendant risks involved. Mem. Law of Defs. Merkin and GCC at 11. However, nowhere in the two pages they dedicate to addressing the entirety of Plaintiffs' 10(b) claim do Merkin and GCC counter, for example, the false statements that Merkin would pay personal attention to individual trades made on behalf of the Funds, whether made by him *or* a third party manager; that Madoff was performing a purely administrative function; and that Merkin was personally and actively

---

[4] Plaintiffs do not address the allegations against the BDO Defendants in this memorandum, because the BDO Defendants offer no substantive opposition whatsoever to Plaintiffs' arguments that the Court overlooked that the allegations against the BDO Defendants are sufficient to state a section 10(b) claim against them.

7

managing the Funds based upon certain carefully described investment strategies and his own expertise – facts about which Merkin and GCC has actual knowledge.

Those statements, among the many others overlooked by the Court, are set forth in detail in Plaintiffs' opening memorandum of law (Mem. Law of Pls. at 17-19) – Defendants Merkin and GCC simply ignore most. It is only by dealing in generalities, rather than actually addressing the multitude of statements made over the course of time by Merkin to investors, that Defendants can even attempt to oppose this motion.

With respect to the existence of "red flags," Plaintiffs' opening memorandum of law and proposed amended complaint provide details regarding evidence that has come to light since this litigation was commenced in 2008. Mem. Law of Pls. at 20-22. As the Court is aware, detailed information regarding Madoff, Merkin, and GCC has trickled into the public domain over the past three years through documentary and deposition discovery in related proceedings and arbitrations. Plaintiffs endeavored to submit this additional evidence as it was received, but the Court's Opinion and Order nowhere indicates that the specific information submitted was considered by the Court in dismissing Plaintiffs' claims. Plaintiffs attempted to incorporate this information into an amended pleading through a motion to amend. However, the Court never responded to Plaintiffs' request for a pre-motion conference until issuing its Opinion and Order.

The only specific assertion regarding "red flags" that Merkin and GCC do address is a purported allegation that steady returns do not amount to a red flag. However, Plaintiffs do not simply allege that Merkin should have known that Madoff was a fraud due to steady returns. What Plaintiffs have cited are ***specific facts*** showing, not just that Merkin ***should have been*** suspicious, but that he ***actually was*** suspicious of the lack of transparency in Madoff's strategy and the lack of volatility in returns, but chose to ignore those suspicions. Mem. Law of Pls. at 21. Other new information, substantively ignored by Merkin and GCC, also demonstrates

8

Merkin's skepticism about Madoff, Merkin's outright denials to investors that Madoff was managing their money and specific warnings to Merkin that Madoff might be a fraud. Mem. Law of Pls. at 21-22.[5] These are not generic red flags – Plaintiffs have set forth facts showing that Merkin ignored suspicions voiced directly to him, purposely ignored known risks, and made outright misstatements about his own actions with actual knowledge of their falsity.

Recently, an arbitral panel in an AAA arbitration involving the same Funds and their offering materials found that an investor had pled sufficient facts to establish liability against Merkin under the New Jersey Uniform Securities Act, N.J.S.A. § 49:3-71, and awarded the investor $7.01 million. *See* Basar Decl. Ex. A. The panel found liability based, in part, on Merkin's "non-disclosure at the time of the investment of the miniscule role Merkin had played, was playing, and then intended to play, in the actual management of the Ascot investments." Basar Decl. Ex. A at 19. The panel further found that "Merkin, who disclosed to many others that Ascot was a Madoff feeder fund, knew that the [offering] documents contained no such reference, but in fact stated the then-current practice of the fund and the then-intended future investment program, in language that was patently untrue." Basar Decl. Ex. A at 19-20.

Counsel for Merkin in the *Straus* arbitration submitted this Court's September 23, 2011 Opinion and Order to the panel, and the panel agreed that certain issues in this case and the one before it were the same: "The allegation that Merkin failed to disclose the Funds' investment with Madoff and the alleged false statements that Merkin was involved in the Fund's day-to-day management and provided certain investment strategies paralleled the allegations in the case before this Panel." Basar Decl. Ex. A at 35. The panel, however disagreed with this Court's conclusions regarding those issues: "The majority [of the panel] has separately analyzed the

---

[5] Merkin and GCC twice accuse Plaintiffs of misquoting Offering Materials but fail to specify what was misquoted. Mem. Law of Defs. Merkin at GCC. at 14-15.

9

same factual pattern and determined that there were substantial and material misrepresentations and omissions . . . . Under the [New Jersey Uniform Securities Act], the focus was upon the representations made at the time of the investment, and it is clear to the majority that [Merkin] misrepresented his past, current and intended future role. Even though Madoff may have engaged in a 'split strike' similar to that which Merkin represented he would apply, this strategy was but one of a group of strategies he represented would be employed, and his executive input was minimal."[6] Basar Decl. Ex. A at 36-37.

## CONCLUSION

For all of the foregoing reasons and for the reasons set forth in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion Pursuant to Rule 59(e) to Alter or Amend the Judgment, Plaintiffs respectfully request that the Court grant their motion, pursuant to Rule 59(e), to alter or amend the Judgment in order to correct errors of law and to grant permission, pursuant to Rule 15(a) to file an amended complaint.

Dated: New York, New York
December 13, 2011

                                                 **WOLF HALDENSTEIN ADLER**
                                                 **FREEMAN & HERZ LLP**

                                                 By:    /s/ Demet Basar
                                                         Gregory M. Nespole

---

[6] The arbitral panel made findings of fact after a full arbitral proceeding. This Court's task, on the other hand, was to decide the motions to dismiss on the pleadings, accepting the allegations as true. The Court, however, seems to have made an improper factual finding in its analysis of Merkin's alleged misstatements. In rejecting Plaintiffs' argument that Merkin misrepresented the Funds' strategies, the Court stated: "The use of Madoff as a third-party manager here was made ***with the understanding that*** Madoff would, in turn, make investments that would comport with the Funds' strategies." Opinion and Order at 21 (emphasis added). The Court's finding with respect to Merkin's understanding went beyond the pleadings, which is inappropriate on a motion to dismiss. *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (a district court must confine its consideration on a Rule 12(b)(6) motion "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.").

Demet Basar
Helena Lynch
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile:  (212) 545-4653
Email: nespole@whafh.com
　　　　basar@whafh.com
　　　　lynch@whafh.com
　　　　Facsimile:  (212) 545-4653

**ABBEY SPANIER RODD &
　　ABRAMS, LLP**
Karin E. Fisch
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 684-5191
Email: kfisch@abbeyspanier.com
　　　　rmargolies@abbeyspanier.com

11