# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re

J. EZRA MERKIN AND BDO SEIDMAN
SECURITIES LITIGATION

No. 08 Civ. 10922 (DAB)

------------------------------------------------------------x

REPLY MEMORANDUM OF DEFENDANTS
BDO CAYMAN ISLANDS AND BDO LIMITED
IN FURTHER SUPPORT OF MOTION TO DISMISS

Ira G. Greenberg
Florence A. Crisp
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendants BDO Cayman Islands
   and BDO Limited
750 Lexington Avenue, 8th floor
New York, NY  10022
(212) 308-4411

NYC 363204.1

The action insofar as brought against BDO Cayman ("Cayman") and BDO Limited ("Limited") must be dismissed. As with their principal memorandum, Cayman and Limited incorporate BDO USA's reply memorandum. Cayman and Limited ask that the Court note, however, that their position is, if anything, stronger than BDO USA's. While Cayman and Limited agree with BDO USA that defendant J. Ezra Merkin's communications with Michael Andreola of BDO USA mean nothing, there is no basis to believe that their innocuous contents were communicated to Cayman or Limited; hence, they cannot be "red flags" for these defendants in any event.

        A.      <u>Lack of Personal Jurisdiction</u>. The jurisdictional facts in a light most favorable to plaintiffs are as follows: Merkin managed Ariel Fund from New York. Cayman and Limited addressed their report on the financials to the fund's shareholders, some of whom were in New York. BDO USA printed the financials in New York. BDO International is a worldwide network that refers business among members and coordinates the technical standards they employ, although there is nothing to suggest that BDO International was involved here. Cayman and Limited work with other BDO firms and in engagements for unaffiliated entities with a nexus to the United States, although there is no evidence that any of their work took place in the United States. Merkin signed an engagement letter with BDO USA in the United States, but there is no evidence to show that he or anyone else executed the Cayman and Limited engagement letters there. See Declaration of Malcolm T. Brown, Oct. 22, 2010, exh. 16, at 111-12 (Merkin testified only that "we" signed engagement letters with BDO after referring to "Seidman" (BDO USA); did not testify who or where signed with Cayman or Limited).

Because jurisdiction under the Securities Exchange Act extends to the limit of the due process clause, Cayman and Limited do not analyze the two jurisdictional elements (minimum contacts and fairness) separately in relation to that claim. Though plaintiffs speak separately of general and specific jurisdiction, their arguments rest on the same set of facts.

To the extent that the facts on which plaintiffs rely involve what others – Merkin, for example – did in New York, they do not support personal jurisdiction, which must rest on what these defendants did in the United States. E.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); World-Wide Volkswagen v. Woodson, 444 U.S. 286, 291 (1980). For the same reason, the fact that Cayman and Limited do work in their respective home territories for United States-based clients is irrelevant to this Court's assertion of jurisdiction over them because they did not thereby thrust themselves into this forum. Finally, in the absence of any basis for believing that BDO International was involved or that there was some relationship akin to that alleged in In re Parmalat Sec. Litigation, 414 F. Supp. 2d 428, 441 (S.D.N.Y. 2006) (United States-based Bank of America entities "'controlled and directed the acts'" of Bank of America UK defendant), the fact that various accounting firms joined in an international marketing and referral relationship does not support jurisdiction.

There appears to be a split of authority over whether Cayman's and Limited's remaining contacts suffice under federal law. Compare, e.g., Young v. FDIC, 103 F.3d 1180, 1190-92 (4th Cir. 1997) (rejecting jurisdiction over Price Waterhouse Bahamas), and General Elec. Capital Corp. v. Grossman, 991 F.2d 1376, 1386-88 (8th Cir. 1993) (rejecting jurisdiction over Peat Marwick and Touche Canada), with Cromer

Fin. Ltd. v. Berger, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) (finding specific jurisdiction). Cases taking the latter approach appear to rely heavily on the fact that plaintiffs could reside in the putative forum; but the Supreme Court in Burger King, 471 U.S. at 474, following World-Wide Volkswagen, 444 U.S. at 295, rejected "foreseeability" as "a 'sufficient benchmark' for exercising personal jurisdiction." In any event, because it should have been obvious to plaintiffs, and even more obvious after the decision in Morrison, that the federal securities law claim cannot survive, see section B infra, the more appropriate test of personal jurisdiction is one under the New York long arm statute, CPLR 302. Plaintiffs rely on id. 302(a)(1) (transacting business) and (a)(3)(ii) (expectation of consequences in New York and substantial revenue from commerce).

As to CPLR 302(a)(1), the fact that someone else provided audited financial statements to the fund's management company in New York, or even to the fund's shareholders, would not constitute the kind of purposeful activity on Cayman's or Limited's part that would permit its being held to respond to a lawsuit here. Barrett v. Tema Dev. (1988), Inc., 463 F. Supp. 2d 423 (S.D.N.Y. 2006), illustrates this point. It dismissed for lack of personal jurisdiction despite a meeting in New York and at least one communication with New York and emphasized that the court should look at the "'the totality of all defendant's contacts with the forum.'" Id. at 429 (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)). See generally Etra v. Matta, 61 N.Y.2d 455, 463 N.E.2d 3, 474 N.Y.S.2d 687 (1984); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 786-87 (2d Cir. 1999). The contacts in the cases on which plaintiffs rely for a contrary conclusion are very different from the contacts in this one. See Druck Corp. v. Macro Fund (U.S.) Ltd., 102 Fed. Appx. 192

(2d Cir. 2004) (two substantive meetings in New York with followup by defendant's New York agent); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997) ("persistent campaign" by New York agent to secure investment from plaintiff).

As to CPLR 302(a)(3)(ii), the defendant's "tortious act without the state [must have] caus[ed] injury . . . within the state." Courts have interpreted this provision to find jurisdiction only when "the original event which caused the injury" took place in New York, not in cases "where the resultant damages are felt by the plaintiff" in this state. Whitaker v. American Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001); see DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 85 (2d Cir. 2001) (injury does not necessarily occur at plaintiff's residence); United Bank of Kuwait, PLC v. James M. Bridges, Ltd., 766 F. Supp. 113, 116 (S.D.N.Y. 1991) (hereinafter, "Kuwait") ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction" under this subdivision). In cases of professional misconduct, therefore, the situs of the injury is where the professional performed the allegedly deficient work, not where the resulting harm was felt. E.g., Weiss v. Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, P.A., 85 A.D.2d 861, 446 N.Y.S.2d 447 (3d Dep't 1981); Kuwait, 766 F. Supp. at 116.

In addition, plaintiffs must show that Cayman and Limited "derive[] substantial revenue from interstate or international commerce." CPLR 302(a)(3)(ii); see Kuwait, 766 F. Supp. at 117-18. Such is not the case. Compare Reply Declaration of Glen Trenouth, Nov. 29, 2010, ¶ 2 (less than two percent, and mostly from British Virgin Islands), and Reply Decl. of Andrew Bickerton, Nov. 22, 2010, ¶ 2 (less than five percent, and all from other Caribbean islands), with Kuwait, 766 F. Supp. at 117 (fees

NYC 363204.1                                    4

constituting 8% of accountant's total revenues are not "substantial revenue" and fees from bordering states are deemed local for purposes of CPLR 302(a)(3)(ii)).

Cayman and Limited recognize that discovery is often permitted when without it a plaintiff has made progress toward establishing the basis for jurisdiction. Such progress is absent here given the little on which plaintiffs' position rests.

    B. <u>Failure to State a Claim Under Federal Securities Laws</u>.  Cayman and Limited showed that plaintiffs' federal securities law claims fall under <u>Morrison v. National Australia Bank Ltd.</u>, 130 S. Ct. 2869 (2010). These claims relate solely to plaintiffs' offshore purchases of shares of an offshore hedge fund in the Cayman Islands. That certain members of the putative class are United States residents is irrelevant. <u>E.g.</u>, <u>Plumbers' Union Local No. 12 v. Swiss Reins. Co.</u>, 2010 WL 3860397, at *9 (S.D.N.Y.); <u>Cornwell v. Credit Suisse Group</u>, 2010 WL 3069597, at *3 (S.D.N.Y.). So too is the fact that some acts that ultimately led to plaintiffs' transactions in the Cayman Islands took place in this country. <u>Cornwell v. Credit Suisse Group</u>, 2010 WL 3069597, at *4.

Plaintiffs cannot escape that Ariel is a Cayman Islands fund regulated under the Mutual Funds Law of the Cayman Islands, that they applied to purchase Ariel shares by sending subscription documents to the Cayman Islands, and that the fund's Cayman Islands registrar's acceptance of those documents consummated the purchase. <u>E.g.</u>, Brown Decl. exh. 12 at 22-24 (subscription procedure and identity of fund's directors as Caymanians); Declaration of Gary J. Mennitt, Aug. 2, 2010, exh. F at 2 (directors must approve investor's subscription and Cayman Islands registrar must

accept subscription agreement). Thus, as no purchase or sale of a security took place in the United States, Morrison requires dismissal.

    C. <u>Failure to State a Claim Under Cayman and BVI Law</u>

    1. <u>Choice of Law</u>. Plaintiffs themselves seem confused, as their brief (at 19) says that interest analysis requires the application of "the law of the jurisdiction where the tort occurred" because of that state's interest in behavior regulation. That position is correct, as shown in Cayman's and Limited's principal brief (citing <u>Cooney v. Osgood Mach., Inc.</u>, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 922, 612 N.E.2d 277, 280 (1993)). (Cayman and Limited did not rely on the internal affairs doctrine for this point.) As Cayman and Limited did all auditing in their respective home territories, the Court should not apply New York law.

    <u>Pension Comm. v. Banc of Am. Sec., LLC</u>, 446 F. Supp. 2d 163, 194 (S.D.N.Y. 2006), is distinguishable, in that it depended upon the need for "extensive interaction with the Funds' managers in New York," with whom defendant "communicated regularly," and upon the fact that "the torts at issue stemmed from those communications." Moreover, "the allegedly tortious conduct . . . in relation to the management of the Funds had little more than a nominal connection" to the British Overseas Territory at issue there. <u>Id.</u> Three of the foreign individual defendants in <u>Pension Committee</u>, as nominees of the foreign entity defendant, had had extensive access to the information at issue because they were members of the funds' board of directors, which sat in New York. <u>Id.</u> at 171, 173-74.

Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d at 491-93, on the other hand, erred in finding a center of gravity for "the fraud," when the choice of law analysis should have been conducted separately for each defendant.

2.  Specific Claims

a.  Fraud.  Cayman law and BVI law require an affirmative misstatement made at least recklessly in the sense of not caring whether the representation was true or false. Unlike New York law, omissions are not actionable as deceit (fraud). Plaintiffs' expert concedes this point. Declaration of Thomas Lowe, QC, Oct. 22, 2010, ¶ 21. Accordingly, plaintiffs hinge their position entirely on the assertion that Cayman and Limited did not conduct a GAAS-compliant audit, id.; the complaint points to no specific way in which their audits failed to comply with GAAS and, more significantly, provides no basis for inferring Cayman's or Limited's scienter.

2.  Negligent Misrepresentation.  Cayman and Limited showed that a shareholder lacks standing to sue for negligent misrepresentation. Mr. Lowe's declaration does not dispute that proposition. It admits that the Caparo case, which announced the general rule, is good law in Cayman and BVI. The Omni Securities case, from Cayman's highest court, that he also cites holds (at 282) that Caparo "provid[es] the definitive modern test in the context of an auditor's negligence claim."

Caparo not only knocked out purchaser claims, but it went further (at 626) to exclude holder claims on the ground that there would not be "a situation arising in the real world in which the individual shareholder could claim to have sustained a loss in respect of his existing shareholding referable to the negligence of the auditor which could not be recouped by the company." Mr. Lowe never says why the fund would have

no claim, nor does he explain how, given the appointment of a receiver, Cayman and Limited can be assured that there will not be duplicative recoveries. Most tellingly, Mr. Lowe does not cite a single case in which a shareholder qua holder successfully sued an auditor for breach of a duty of care in an audit of an entity.

Mr. Lowe's final effort to deflect Caparo and Omni Securities is the ipse dixit assertion that standing is a matter on which a Cayman court might engage in its own conflict analysis. The relevant question, however, is not what a Cayman court might do, but rather, consistent with Klaxon and its progeny, in what conflicts analysis a New York court might engage. (There is no basis for believing that a New York court would entertain employing renvoi.) The answer is that a New York court would apply the law of the jurisdiction of an entity's organization. E.g., Seidl v. American Century Cos., 713 F. Supp. 2d 249, 255 (S.D.N.Y. 2010) (and cases cited); Finkelstein v. Warner Music Group, Inc., 32 A.D.3d 344, 345, 820 N.Y.S.2d 264, 266 (1st Dep't 2006).

3.  Breach of Fiduciary Duty. Cayman and Limited showed, consistent with New York law, that an accountant does not have a fiduciary duty to shareholders. There was no response.

4.  Aiding and Abetting Breach of Fiduciary Duty. Cayman and Limited showed that there was no such cause of action under their territories' laws for aiding and abetting a breach of fiduciary duty. Mr. Lowe sought to sidestep that problem by saying (¶ 32) that there is a cause of action for dishonest assistance in a fraudulent design; but the complaint does not plead facts supporting Cayman's or Limited's dishonesty here. Cf. Barlow Clowes Int'l Ltd. v. Eurotrust Int'l Ltd., [2006] 1 All ER 333 (deliberately refusing to make inquiries about facts in order to avoid finding out truth

NYC 363204.1                                    8

about misappropriated funds) (Reply Decl. of Ira G. Greenberg, Nov. 29, 2010, exh.). Thus, the doctrine is inapplicable.

     5.    <u>Unjust Enrichment</u>. Cayman and Limited showed that the unjust enrichment claim belongs under Cayman law solely to the fund, as it paid the accounting fees the return of which is sought. Plaintiffs offer no refutation.

     D.    <u>Statute of Limitations</u>. The statute of limitations argument was made solely on behalf of Limited. It is uncontroverted that its last audit opinion was issued on approximately May 22, 2002, plaintiffs commenced this action on March 4, 2009, and Limited was named a defendant the following year. Thus, nearly seven years passed from the last possibly actionable statement that Limited made. (Limited maintains that there is no relation back, but the Court not need not reach that issue on this motion.)

Plaintiffs do not dispute that the five-year statute bars the federal securities claim against Limited. Assuming that Limited were a fiduciary, which it was not, the claims for breach of fiduciary duty and for aiding and abetting breach of fiduciary duty started to run when the relationship ended, in 2002 with the issuance of its last audit report, and the statute ran three years later. The negligent misrepresentation claim (there is no malpractice claim any more) ran at the same time. The continuous representation doctrine does not apply to Limited, not only for the reasons set forth in BDO USA's reply brief, but also because the continuous representation doctrine requires continuous representation. The notion that the unjust enrichment claim did not begin to run until Madoff confessed is hard to understand. Perhaps plaintiffs did not know that Limited (allegedly) had money to which it was not

NYC 363204.1          9

entitled; but the claim began to run when in 2002 it was paid for the last audit that it performed. <u>Golden Pac. Bancorp v. FDIC</u>, 273 F.3d 509, 520 (2d Cir. 2001); <u>see</u> Reply Decl. of Andrew Bickerton, Nov. 22, 2010, ¶ 3. That claim was therefore dead in 2008.

Dated: New York, NY
       November 30, 2010

                                        Respectfully submitted,

                                        _____
                                        Ira G. Greenberg
                                        Florence A. Crisp
                                        EDWARDS ANGELL PALMER & DODGE LLP
                                        Attorneys for Defendants BDO Cayman
                                             and BDO Limited
                                        750 Lexington Avenue, 8th floor
                                        New York, NY  10022
                                        (212) 308-4411

## CERTIFICATE OF SERVICE

I certify that on the 30th day of November, 2010, I caused a true copy of the attached reply memorandum and reply declarations of Glen Trenouth, Andrew Bickerton, and Ira G. Greenberg to be served on the following by electronic filing and first-class mail:

Arthur N. Abbey, Esq.
Karin Fisch, Esq.
Nancy Kaboolian, Esq.
Stephen Thran Rodd, Esq.
Richard B. Margolies, Esq.
ABBEY SPANIER RODD &
ABRAMS LLP
Attorneys for Plaintiffs
212 East 39th Street
New York, NY 10016
(212) 684-5191

Andrew J. Levander, Esq.
Gary Mennitt, Esq.
David Hoffner, Esq.
Neil A. Steiner, Esq.
DECHERT, LLP
Attorneys for Defendants Merkin and
    Gabriel Capital
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

Gregory Mark Nespole, Esq.
Malcolm Todd Brown, Esq.
Russell Stuart Miness, Esq.
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ
Attorneys for Jacob E. Finkelstein and
    Nephrology Associates,
270 Madison Avenue
New York, NY 10017
(212) 545-4657

Howard Schiffman, Esq.
Harry Sandick, Esq.
Eric A. Bensky, Esq.
SCHULTE ROTH & ZABEL, LLP
Attorneys for Ascot Partners L.P and
    Gabriel Capital, L.P.
919 Third Avenue
New York, NY 10022
(212) 756-2000

David Esseks, Esq.
ALLEN & OVERY
Attorneys for Fortis Defendants
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300

ASHLEY M. O'MARA