UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re

J. EZRA MERKIN AND BDO SEIDMAN
SECURITIES LITIGATION

No. 08 Civ. 10922 (DAB)

## PLAINTIFFS' MEMORANDUM OF LAW AS REQUIRED
## BY THE COURT'S SEPTEMBER 12, 2012 ORDER

ABBEY SPANIER, LLP
Arthur N. Abbey
aabbey@abbeyspanier.com
Karin Fisch
kfisch@abbeyspanier.com
Richard B. Margolies
rmargolies@abbeyspanier.com
212 East 39th Street
New York, NY  10016
(212) 889-3700

WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
Gregory Mark Nespole
nespole@whafh.com
Demet Basar
basar@whafh.com
270 Madison Avenue
New York, NY  10016
(212) 545-4600

*Co-Lead Counsel for Plaintiffs*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

    A.    Plaintiffs Have Properly Pled Claims for Breach of Fiduciary Duty ...................... 3

    B.    Plaintiffs Have Properly Pled Claims for Aiding and Abetting ............................. 5

        1.    Plaintiffs Allege Actual Knowledge ......................................................... 5

        2.    Plaintiffs Allege Substantial Assistance ..................................................... 8

    C.    Plaintiffs Have Properly Pled Claims for Unjust Enrichment ................................ 9

    D.    SLUSA Does Not Preempt Plaintiffs' Claims ....................................................... 9

    E.    Plaintiffs' Claims are Direct ................................................................................ 12

    F.    The Court May Retain Jurisdiction ....................................................................... 16

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Abrams v. Donati,*
   489 N.E.2d 751 (1985)................................................................................................. 13

*Albert v. Alex. Brown Mgmt. Serv., Inc.,*
   Nos. Civ.A. 762–N, Civ.A. 763–N, 2005 WL 2130607 (Del. Ch. Aug. 26, 2005).................. 15

*Am. Baptist Churches of Metro. N.Y. v. Galloway,*
   710 N.Y.S.2d 12 (App. Div. 1st Dep't 2000) ........................................................................ 5

*Anwar v. Fairfield Greenwich Ltd.,*
   728 F. Supp. 2d 372 (S.D.N.Y. 2010)............................................................................*passim*

*Arbaugh v. Y & H Corp.,*
   546 U.S. 500 (2006)..................................................................................................... 16

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.,*
   18 N.Y.3d 341 (2011) ................................................................................................. 1, 2

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.,*
   28 Misc. 3d 1215(A) (2010) .......................................................................................... 2

*Assured Guar. (UK) Ltd. V. J.P. Morgan Inv. Mgmt. Inc.,*
   80 A.D.3d 293, 304 (N.Y. App. Div. 1st Dept. 2010)............................................................ 2

*Broome v. ML Media Opportunity Partners L.P.,*
   709 N.Y.S.2d 59 (App. Div. 1st Dep't 2000) ...................................................................... 13

*Carnegie–Mellon Univ. v. Cohill,*
   484 U.S. 343 (1988)..................................................................................................... 16

*Chadbourne & Parke LLP v. Troice.,*
   No. 133 S. Ct. 404 (2012) ............................................................................................ 10

*CPC Intl. v. McKesson Corp.,*
   70 N.Y. 2d 268 (1987) .................................................................................................. 2

*Credit Alliance Corp. v. Arthur Andersen & Co.,*
   483 N.E.2d 110 (1995).................................................................................................. 4

*Cromer Fin. Ltd. v. Berger,*
   No. 00 Civ. 2498, 2001 U.S. Dist. LEXIS 14744 (S.D.N.Y. Sept. 19, 2001) ....................... 4, 6

*CRT Inv., Ltd. v. BDO Seidman LLP,*
   85 A.D. 3rd 470, 925 N.Y.S.2d 439 (App. Div. 1st Dep't 2011) ........................................ 7

*Diduck v. Kaszycki & Sons Contractors, Inc.,*
   974 F.2d 270 (2d Cir. 1992) ............................................................................................ 8

*Dorking Genetics v. Unites States,*
   76 F.3d 1261 (2d Cir. 1996) ............................................................................................ 4

*Falkowski v. Imation Corp.,*
   309 F.3d 1123 (9th Cir. 2002) .................................................................................. 10, 11

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,*
   479 F. Supp. 2d 349 (S.D.N.Y. 2007) .......................................................................... 6, 13

*Grund v. Delaware Charter Guarantee & Trust Co.,*
   788 F. Supp. 2d 226 (S.D.N.Y. 2011) ............................................................................ 11

*In re Optimal U.S. Litig.,*
   813 F. Supp. 2d 351 (S.D.N.Y. 2011) ............................................................................ 14

*In re Sharp Int'l Corp.,*
   403 F.3d 43 (2d Cir. 2005) .............................................................................................. 5

*In re WorldCom, Inc. Sec. Litig.,*
   382 F. Supp. 2d 549 (S.D.N.Y. 2005) ............................................................................ 14

*Jones v. PricewaterhouseCoopers, LLP,*
   6 Misc. 3d 1014(A), 800 N.Y.S.2d 348 (N.Y. Sup. Ct. 2004) .......................................... 14

*Kerusa Co., LLC v. W10Z/525 Real Estate Ltd. Partnership,*
   12 N.Y. 3d 236 (2009) ..................................................................................................... 2

*Kolbeck v. LIT Am., Inc.,*
   939 F. Supp. 240 (S.D.N.Y. 1996) ................................................................................... 8

*Kottler v. Deutsche Bank AG,*
   607 F. Supp. 2d 447 (S.D.N.Y. 2009) .............................................................................. 5

*LaSala v. Bank of Cyprus Pub. Co. Ltd.,*
   510 F. Supp. 2d 246 (S.D.N.Y. 2007) ............................................................................ 12

*LaSala v. Bordier et Cie,*
   519 F.3d 121 (3rd Cir. 2008) ........................................................................................ 12

*LaSala v. TSB Bank, PLC*,
    514 F. Supp. 2d 447, 473 S.D.N.Y. (2007)........................................................................ 11

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)........................................................................................ 8

*Madden v. Cowen*,
    576 F.3d 957 (9th Cir. 2009) .................................................................................... 10

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
    2012 U.S. App. LEXIS 14013 (2d Cir. July 10, 2012)(unpublished opinion), *aff'g* 747
    F.Supp.2d 406 (S.D.N.Y 2010)................................................................................ 15

*Nathel v. Siegal*,
    592 F. Supp. 2d 452 (S.D.N.Y. 2008)...................................................................... 8

*Paru v. Mut. of Am. Life Ins. Co.*,
    No. 04 Civ. 6907 (JES), 2006 WL 1292828 (S.D.N.Y. May 11, 2006)................... 12

*Pension Comm. Of Univ. of Montreal Pension Plan v. Banc. Of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)............................................................ 13, 14

*Pergament v. Roach*,
    18 Misc.3d 1141(A), 859 N.Y.S.2d 898 (Sup. Ct. N.Y. Co. 2008).......................... 4

*Primavera Familienstiftung v. Askin*,
    130 F. Supp. 2d 450 (S.D.N.Y. 2001)...................................................................... 14

*Roland v. Green*,
    675 F.3d 503 (5th Cir. 2012).................................................................................... 10

*Saltz v, First Frontier, L.P.*,
    2012 U.S. App. LEXIS 1187 (2d Cir. June 12, 2012) (unpublished decision),
    *aff'g* 782 F. Supp. 2d 61 (S.D.N.Y, 2010) ............................................................ 15

*Shapiro v. Rockville Country Club, Inc.*,
    22 A.D.3d 657, 802 N.Y.S.2d 717 (App. Div. 2d Dep't 2005) ................................ 4

*Stephenson v. Citco Group Ltd.*,
    700 F. Supp. 2d 599 (S.D.N.Y. 2010)............................................................ 13, 15

*Stephenson v. PricewaterhouseCoopers, LLP*,
    *No. 11-1204-cv, 2012 WL 1764191, at *2 (2d Cir. May 18, 2012)* ........................ 15

*Strain v. Seven Hills Assocs.*,
    429 N.Y.S.2d 424 (App. Div. 1st Dep't 1980) ........................................................ 13

*The Calibre Fund, LLC v. BDO Seidman LLP,*
    No. X05 CV 09 5012119S, 2010 WL 4517099 (Conn. Super Ct.) Oct. 20, 2010...................... 7

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
    845 A.2d 1031 (Del. 2004) .............................................................................. 14, 15

*White v. Guarente,*
    372 N.E.2d 315 (1977)...................................................................................... 3, 4

*Whitney v. Citibank, N.A.,*
    782 F.2d 1106 (2d Cir. 1986).................................................................................. 6

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,*
    341 F. Supp. 2d 258 (S.D.N.Y. 2004).................................................................. 11, 12

*Yudell v. Gilbert,*
    949 N.Y.S.2d 380, 99 A.D. 3d 108 (App. Div. 1st Dept, 2012)............................................ 14

**Statutes**

28 U.S.C. § 1367.......................................................................................................... 16

**Rules**

Fed. R. Civ. Pro. 59(e) ..................................................................................................... 1

Fed. R. Civ. Pro. 12(b)(6) ................................................................................................. 5

**INTRODUCTION**

Lead Plaintiffs New York Law School, Scott Berrie and Jacob E. Finkelstein CGM IRA

Rollover Custodian (together, "Plaintiffs"), individually and on behalf of all other persons

similarly situated, respectfully submit this memorandum in response to this Court's September 10,

2012 request for further briefing and in opposition to the September 20, 2012 and September 24,

2012 memoranda submitted by Defendants BDO USA LLP, BDO Cayman Islands and BDO

Limited (together, "BDO" or the "BDO Defendants") in response to the Court's request.

In its September 23, 2011 Order dismissing this case in its entirety, this Court determined

that Plaintiffs' claims for breach of fiduciary duty, gross negligence and unjust enrichment were

preempted by the Martin Act. After the Court issued its decision, the New York Court of

Appeals held that the Martin Act does not preempt a common law claim where the claim "is not

entirely dependent on the Martin Act for its viability." *Assured Guar. (UK) Ltd. v. J.P. Morgan*

*Inv. Mgmt. Inc.*, 18 N.Y.3d 341, 353 (2011). On September 10, 2012, this Court requested

additional briefing concerning the applicability of the *Assured Guaranty* decision and Plaintiffs'

claims for breach of fiduciary duty, gross negligence[1] and unjust enrichment.[2]

In *Assured Guaranty*, the plaintiff sued J.P. Morgan for breach of fiduciary duty, gross

negligence and breach of contract alleging that the defendant had invested the assets of an entity

whose obligations the plaintiff guaranteed in high risk securities, had failed to diversify and had

made improper investment decisions. *Id.* at 348. The plaintiff alleged that because of this

investment mismanagement, Assured Guaranty suffered financial losses as a guarantor. *Id.* The

---

[1] Because Plaintiffs have not asserted a gross negligence claim against BDO, Plaintiffs, like the BDO Defendants, will not address the effect of *Assured Guaranty* on that claim.

[2] In its September 10, 2012 Order, the Court was ruling on Plaintiffs' Motion to Alter or Amend the Judgment pursuant to Fed. R. Civ. Pro. 59(e) ("Rule 59(e) Motion"). The Court denied the motion in part and reserved decision to the limited extent that the motion was based on the issue of Martin Act preemption.

1

defendants moved to dismiss the complaint on the grounds that the Martin Act preempted the plaintiff's claims for breach of fiduciary duty and gross negligence. The trial court granted the motion to dismiss. *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 28 Misc. 3d 1215(A) (2010). The Appellate Division subsequently disagreed with the trial court and ruled that the Martin Act does not preempt common law claims of breach of fiduciary duty and gross negligence in the securities context, finding that neither the history nor the text of the Martin Act demonstrated an unambiguous legislative intent to bar such claims. *Assured Guar. (UK) Ltd. V. J.P. Morgan Inv. Mgmt. Inc.*, 80 A.D.3d 293, 304 (N.Y. App. Div. 1st Dept. 2010). The Court of Appeals agreed and appropriately determined that the plain language of the Martin Act "does not expressly mention or otherwise contemplate the elimination of common-law claims" and its legislative history "did not evince any intent to displace all common-law claims in the securities field." *Assured Guar. (UK) Ltd.,* 18 N.Y.3d at 351.

As part of its holding, the Court of Appeals considered its prior decisions in *CPC Intl. v. McKesson Corp.*, 70 N.Y. 2d 268 (1987), and *Kerusa Co., LLC v. W10Z/525 Real Estate Ltd. Partnership*, 12 N.Y. 3d 236 (2009), and concluded that "[r]ead together, *CPC Intl.* and *Kerusa* stand for the proposition that a private litigant may not pursue a common law cause of action where the claim is predicated solely on a violation of the Martin Act or its implementing regulations and would not exist but for the statute." *Assured Guar. (UK) Ltd.,* 18 N.Y.3d at 353. The Court recognized that "[m]ere overlap between the common law and the Martin Act is not enough to extinguish common law remedies." *Id.* Finally, the Court of Appeals also determined that policy considerations weighed against Martin Act preemption, holding that, "the purpose of the Martin Act is not impaired by private common-law actions that have a legal basis

2

independent of the statute because the proceedings by the Attorney General and private actions further the same goal – combating fraud and deception in securities transactions." *Id*.

The BDO Defendants' submissions fail to address the applicability of *Assured Guaranty* to these claims and thus concede that they are not preempted by the Martin Act. Instead of addressing the applicability of *Assured Guaranty*, the BDO Defendants set out alternate grounds for dismissal, each of which is addressed below.

### A. Plaintiffs Have Properly Pled Claims for Breach of Fiduciary Duty

The BDO Defendants assert that Plaintiffs' breach of fiduciary duty claims fail because an auditor owes no duty to the entity under audit. BDO Mem. at 5. This argument misses the point because Plaintiffs do not assert that BDO owed a duty to the Funds themselves, but instead allege that the fiduciary duty was owed to the Funds' investors directly: "The BDO Defendants *owed fiduciary duties to the Funds' investors*. These investors reasonably and foreseeably relied on the representations of the BDO Defendants in the audited financial statements they issued with respect to the Funds and trusted in their expertise and skill. The BDO Defendants knew that these investors would rely on the representations in the audited financial statement they issued and, therefore, owed a fiduciary duty to Plaintiffs and other members of the Class." TAC ¶ 254 (emphasis added).

Under New York law, Plaintiffs may assert claims for breach of fiduciary duty against the BDO Defendants on behalf of existing limited partners of the Funds. *See White v. Guarente*, 372 N.E.2d 315, 318-19 (1977) (holding that although the limited partners were not parties to the retainer agreement, the accountant should have foreseen that a limited partner would rely on or make use of the audits).[3] *White* does not give limited partners standing to assert claims on behalf

---

[3] Although breach of fiduciary duty and negligence are separate claims, the analysis from *White*, which involved a negligence claim, applies to a breach of fiduciary duty claim inasmuch as "[a] cause of action

of a limited partnership, as the BDO Defendants suggest, but rather establishes that the limited partners can assert claims in their own right.

To hold an accountant liable to a party not in privity but who relies to his or her detriment on inaccurate financial reports, a plaintiff must show: "(1) that the accountants must have been aware of the financial reports were to be used for a particular purpose or purposes, (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must be some conduct on the part of the accountant linking them to the party or parties, which evinces the accountant's understanding of that party's reliance." *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110, 115, 118 (1995). Plaintiffs here have alleged exactly that. TAC ¶¶ 254-56; 285-87; 180-84. Accordingly, Plaintiffs have stated a direct breach of fiduciary duty claim against the BDO Defendants. *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 455-57 (S.D.N.Y. 2010) (refusing to dismiss negligence claims against auditors where, as here, plaintiffs alleged (a) auditors knew audit reports would be sent to investors and used for the particular purpose of evaluating investments in the funds; (b) audit reports were circulated to members of a particularized class;4 and (c) reports were addressed to shareholders who auditors knew would rely on them in acquiring and holding shares in the funds.)[5]

---

for breach of fiduciary duty sounds in either intentional or negligent conduct." *Pergament v. Roach*, 18 Misc.3d 1141(A), 859 N.Y.S.2d 898 (Sup. Ct. N.Y. Co. 2008) (citing *Shapiro v. Rockville Country Club, Inc.*, 22 A.D.3d 657, 802 N.Y.S.2d 717 (App. Div. 2d Dep't 2005)).

[4] As Judge Marrero held in *Anwar*, the "known party" prong of the *Credit Alliance* test "does not require an auditor know a 'particular' third party by name;" rather, an "accountant owes a duty to "[members] of a settled and particularized class among the members of which the report would be circulated ...." *Anwar*, 728 F. Supp. 2d at 456 (quoting *White v. Guarante*, 372 N.E.2d at 320).

[5] Under Second Circuit law, Plaintiffs need not show that they interacted directly with BDO in order to meet the "linking conduct" prong of *Credit Alliance. See Dorking Genetics v. Unites States*, 76 F.3d 1261, 1270 (2d Cir. 1996) ("We do not think that the [New York] Court of Appeals intended the term 'linking conduct' to be read so narrowly," and interpreting *Credit Alliance* to permit an action "even if the plaintiffs had never interacted directly with the defendant"). It is sufficient that the auditors addressed audit reports to shareholders knowing they would rely on them. *See Cromer Fin. Ltd. v. Berger*, No. 00 Civ. 2498, 2001 U.S. Dist. LEXIS 14744, at *5 (S.D.N.Y. Sept. 19, 2001); *see* TAC ¶¶ 180-84.

**B.    Plaintiffs Have Properly Pled Claims for Aiding and Abetting**

A claim for aiding and abetting breach of fiduciary duty has three elements: "(1) a breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach." *Kottler v. Deutsche Bank AG,* 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009) (citing *In re Sharp Int'l Corp.,* 403 F.3d 43, 49 (2d Cir. 2005)). The BDO Defendants challenge only the first and second prongs of Plaintiffs' aiding and abetting claim. The BDO Defendants contend that the TAC contains no averments that they (i) had actual knowledge of a breach of fiduciary duty by Merkin to the investors in the Funds or (ii) knowingly induced or participated in the breach. *See* BDO Mem. at 7-8. This argument lacks merit.

**1.    Plaintiffs Allege Actual Knowledge**

As a threshold matter, whether actual knowledge has been appropriately alleged is generally not appropriate for determination on a Rule 12(b)(6) motion. *See, e.g., Am. Baptist Churches of Metro. N.Y. v. Galloway,* 710 N.Y.S.2d 12 (App. Div. 1st Dep't 2000) (whether plaintiffs adequately alleged actual knowledge for aiding and abetting breach of fiduciary duty claim requires discovery and, thus, was not ripe for determination on Rule 12(b)(6) motion). Even if the Court were to address the issue at the pleading stage, the TAC alleges that: "BDO Defendants knowingly disregarded information that indicated or should have indicated that the assets invested by Plaintiffs and the Class in the Funds were being invested with Madoff and BMIS and that Merkin and GCC did not have a genuine belief or a reasonable basis for the financial statements sent to Plaintiffs and the Class or for other statements made to Plaintiffs and other investors." TAC ¶ 261. Moreover, according to Merkin, BDO was familiar with the

Madoff strategy, its returns and risks. TAC ¶¶ 126, 207. BDO nevertheless did not verify that Madoff actually invested the assets of the Funds or that the Treasuries Madoff claimed were held for the Funds actually existed. TAC ¶¶ 217-222. Despite BDO's knowledge or reckless ignorance that its audits were not conducted in accordance with GAAS, and that the financial statements of the Funds were not free from material misstatement, it continued to issue unqualified audit opinions.

These facts are sufficient to allege actual knowledge. At the very least, the allegations in the TAC establish conscious avoidance on the part of BDO, which is sufficient to satisfy the knowledge prong of an aiding and abetting claim. *See Cromer,* 00 Civ. 2284, 2003 U.S. Dist. LEXIS 10554, at *28 (S.D.N.Y. Jun. 23, 2003) ("[T]here is no reason to believe that New York law would not accept willful blindness as a substitute for actual knowledge in connection with aiding and abetting claims"); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,* 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007) (citations omitted) ("Conscious avoidance ... occurs when 'it can almost be said that the defendant actually knew' because he or she suspected a fact and realized its probability, but refrained from confirming it in order to later be able to deny knowledge. ... [T]he Court sees no reason to spare a putative aider and abettor who consciously avoids confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor he or she substantially furthers.").

Moreover, the allegations in the TAC that BDO disregarded numerous red flags should have triggered a heightened degree of professional skepticism that the financial statements of the Funds were materially misstated. *See Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1115-16 (2d Cir. 1986). As other proceedings against Merkin progressed, Plaintiffs brought additional evidence to the Court's attention via a series of letters. When that evidence reached a critical

mass, Plaintiffs sought leave to file an amended complaint to plead additional facts evidencing

that the BDO Defendants ignored extreme risks of which they had actual knowledge. Plaintiffs

subsequently filed a proposed Fifth Amended Complaint (the "FAC") as an exhibit to the Rule

59(e) Motion. The FAC set forth more fully that the BDO Defendants had actual knowledge of

the extreme risk of fraud faced by their hedge fund clients, including the Funds. These facts

include: a conversation between Merkin and BDO partner Michael Andreola in which Merkin

discussed warnings he had received about Madoff's investment strategy, the lack of any

volatility in his returns, and the overtly suspicious fact the Madoff's returns never showed any

down quarters (FAC ¶ 219); deposition testimony which demonstrates that the BDO Defendants

had actual knowledge that Madoff's sole custody and complete control over the Funds' assets

were obvious warning signs of possible fraud (FAC ¶ 238); and internal meetings and

memoranda in which the BDO Defendants discussed the extreme risk of fraud with their hedge

fund clients, including their lack of internal controls, and discussed necessary audit steps, which

the BDO Defendants auditing the Funds admitted they did not perform (FAC ¶¶ 221-27). *See*

Rule 59(e) Motion [Dkt. 106] at 22-25.[6]

---

[6] The BDO Defendants cite to *CRT Inv., Ltd. v. BDO Seidman LLP*, 85 A.D. 3rd 470, 925
N.Y.S.2d 439 (App. Div. 1st Dep't 2011), in support of their aiding and abetting argument. As
previously explained in detail in a June 2010 letter from Plaintiffs to the Court in response to the
BDO Defendants' submission of *CRT* as supplemental authority, the court in *CRT* ruled on the
sufficiency of allegations that were quickly outdated based on evidence adduced during
discovery *from the BDO Defendants* as set forth in the summary judgment briefing in *The
Calibre Fund, LLC v. BDO Seidman LLP*, No. X05 CV 09 5012119S, 2010 WL 4517099 (Conn.
Super Ct.) Oct. 20, 2010. It was on the basis of these newly available facts (and others), by letter
dated April 29, 2011, that Plaintiffs had requested a pre-motion conference in connection with
their intended motion for leave to amend their complaint. *CRT* was decided on a record that did
not include the most salient facts and arguments advanced by Plaintiffs in this case (even without
the benefit of the facts uncovered in *Calibre*). The TAC here alleges that BDO provided
substantial assistance to Merkin by issuing clean audit opinions and concealing that Merkin and
GCC did not have a genuine belief or a reasonable basis for the financial statements for their
funds. TAC ¶¶ 261-62. The FAC bolsters those claims with additional facts not considered by

### 2.    Plaintiffs Allege Substantial Assistance

A person knowingly participates when he or she provides "substantial assistance" to the primary violator. *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 294 (2d Cir. 2006). "One provides substantial assistance if he 'affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables it to proceed.'" *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996) (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992)).   The TAC specifically alleges that the BDO Defendants "provided substantial assistance to this fiduciary breach by issuing clean audit opinions that were prepared in clear violation of GAAP and GAAS." TAC ¶ 262. The BDO Defendants' issuance of clean audits on the Funds constitutes substantial assistance, without which the Funds would have rendered unmarketable.

Merkin, as the general partner of Ascot and Gabriel, and the owner of GCC, the investment advisor to Ariel, is alleged to have "deceived [Plaintiffs] into believing that [the Funds] would be properly managed, with proper oversight." *Nathel v. Siegal,* 592 F. Supp. 2d 452, 470 (S.D.N.Y. 2008) (alterations added and in original).   BDO's involvement was an integral part of the marketing of the Funds to investors. TAC ¶ 30.   BDO provided substantial assistance to this fiduciary breach by issuing clean audit opinions that were prepared in clear violation of GAAP and GAAS.  TAC ¶ 262.  BDO did this by actively concealing that Merkin and GCC did not have a genuine belief or a reasonable basis for the financial statements sent to

---

the *CRT* court.  Similarly in *Anwar*, the court held that the complaint did not properly allege that any of the auditors had actual knowledge or demonstrated reckless avoidance of the red flags that would or should have put them on alert to the fraud or breach of duty committed by the other defendants. 728 F. Supp. 2d at 458.  Here, Plaintiffs have alleged specific facts supporting their allegations of actual knowledge.

Plaintiffs or for other statements made to investors. TAC ¶ 261. Accordingly, the TAC sufficiently alleges substantial assistance.

### C.    Plaintiffs Have Properly Pled Claims for Unjust Enrichment

The BDO Defendants do not assert that Plaintiffs have failed properly to plead any of the elements of a claim for unjust enrichment. The BDO Defendants argue only that Plaintiffs are not the proper parties to bring that claim because the three feeder funds in which Plaintiffs invested (the "Funds") paid the fees that the Plaintiffs seek to recover. BDO Mem. at 5. This argument is directly contradicted by the Funds' offering documents. The March 2006 Ascot Fund offering memorandum provides, for example, that all costs, fees, operating expenses and other expenses of the Ascot Fund, including the costs, fees and expenses of accountants, be paid by the Partnership. *See* Ex. 8 to the Declaration of Malcolm T. Brown in Opposition to Defendants' Motions to Dismiss dated October 22, 2010 [Dkt. 83] ("Brown Decl.") at 15. However, those fees, like other costs and expenses, were allocated among the partners in proportion to their respective capital accounts for each accounting period. *Id.* Thus, each partner ultimately was responsible for paying BDO's fees. *See* Brown Decl., Ex. 8 at 18-19; Ex. 12 at 28-29.[7] As Plaintiffs and the Class ultimately bore the expense of BDO's fees, they are the proper parties to bring a claim for unjust enrichment.

### D.    SLUSA Does Not Preempt Plaintiffs' Claims

In January of 2013, the United States Supreme Court granted certiorari to examine the "in connection with" requirements of SLUSA. Oral Argument in *Chadbourne & Parke LLP v.*

---

[7] Contrary to BDO's contention, paragraph 274 of the Third Amended Complaint (the "TAC"), referenced by the BDO Defendants, does not provide otherwise. That paragraph specifically pleads that equity requires all incentive fees, management fees and professional fees that flowed from the Funds' investments with Madoff be disgorged and refunded to the Funds **for the benefit of their limited partners and shareholders**. TAC ¶ 274 (emphasis added)

*Troice.*, No. 133 S. Ct. 404 (2012), is scheduled to be heard in the Court's October 2013 term. The *Troice* case stems from the Ponzi scheme perpetrated by R. Allen Stanford wherein purchasers of certificates of deposit (CDs) sold by Stanford were led to believe that the CDs were backed by SLUSA-covered securities. The United States District Court for the Northern District of Texas held, as did the Court here, that the suit was precluded by SLUSA and encouraged a broad interpretation of the "in connection with" requirement of SLUSA. *Roland v. Green*, 675 F.3d 503, 510 (5th Cir. 2012). The Fifth Circuit reversed and held that SLUSA did not preclude the suits from proceeding because the plaintiffs' allegations were only "tangentially related" to securities trades covered by SLUSA. *Id.* at 520, 523. The Fifth Circuit adopted the Ninth Circuit's approach to determine whether allegations of fraud are sufficiently connected to covered securities to trigger SLUSA preclusion. Under the Ninth Circuit Standard, state law fraud allegations trigger the protections of SLUSA only if they are more than tangentially related to real or purported transaction in covered securities. *Id.* at 513-15 (citing *Madden v. Cowen*, 576 F.3d 957 (9th Cir. 2009)(quoting *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir. 2002)). The Fifth Circuit found it essential to determine what is at the "heart" of the case. *Id.* at 516.

Here, the Plaintiffs purchased non-covered limited partnership interests in feeder funds which in turn invested in what the District Court considered to be covered securities. Plaintiffs assert that, to the extent their claims relate in any way to misrepresentations, the misrepresentations were not sufficiently connected to the covered securities (*i.e.*, the securities purportedly purchased by Madoff). Specifically, this case involves false and misleading statements concerning Merkin's management of the Funds; the Funds' investment strategies, including the diversification of the Funds; and the monitoring and due diligence of Madoff and

10

BMIS.  These misrepresentations were made in connection with Plaintiffs' purchases of limited partnership interests or shares in the Funds, not in connection with the purported purchase or sale of securities by Madoff or BMIS.   With respect to BDO specifically, any claims of "misrepresentation" rest on BDO's issuance of clean audit opinions that were prepared in violation of GAAP and GAAS.   Other circuit courts have explained that, under similar circumstances, "[T]he fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves." *Falkowski*, 309 F.3d at 1130-31.   Here, the fraud and breaches in question do not relate to the nature of the Madoff phantom securities – they relate to BDO's audits of the Funds themselves.

Further, as BDO correctly points out, a "misrepresentation" is not an element of the claims asserted against BDO.  Under the "necessary component" test, followed by many district courts in this Circuit, a "court must determine whether the state law claim relies on misstatements or omissions as a 'necessary component' of the claim." *See Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 266 (S.D.N.Y. 2004). Similarly, in *Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226 S.D.N.Y. (2011), the plaintiffs alleged claims for breach of fiduciary duty, ordinary and gross negligence, and unjust enrichment against the custodians and trustees of a fund who failed to fulfill obligations to safeguard plaintiffs' monies, which were ultimately used in a Ponzi scheme. *Grund*, 788 F. Supp. 2d at 240. Citing *Xpedior*, Judge Sweet held that plaintiffs' claims were not precluded by SLUSA. *See also LaSala v. TSB Bank, PLC*, 514 F. Supp. 2d 447, 473 S.D.N.Y. (2007) (citing *Xpedior* and holding that breach of contract claims not involving allegations of misrepresentation and omission survived SLUSA preclusion); *LaSala v. Bank of Cyprus Pub.*

*Co. Ltd.*, 510 F. Supp. 2d 246, 273-74 (S.D.N.Y. 2007) (citing *Xpedior* and rejecting a motion to

dismiss claims that did not sound in fraud); *Paru v. Mut. of Am. Life Ins. Co.*, No. 04 Civ. 6907

(JES), 2006 WL 1292828, at *3 (S.D.N.Y. May 11, 2006) (citing *Xpedior* and holding that claim

of breach of fiduciary duty due to company's failure to prevent short-term trading in and out of

mutual fund that allegedly harmed fund's long-term investors was not precluded by SLUSA

because it did not involve allegations of fraud by defendant).

Here, Plaintiffs' claims against BDO do not have a misrepresentation or omission as a

"necessary component." *Xpedior*, 341 F. Supp. 2d at 266.    Nor are misrepresentations or

omissions "an integral part of the conduct giving rise to the claim[s]," *id.* at 269, or a "factual

predicate" for the claims, *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3rd Cir. 2008).[8]  As such,

SLUSA does not preclude the claims asserted.

## E.    Plaintiffs' Claims are Direct

The BDO Defendants assert that Plaintiffs' claims are "holder claims" and therefore are

derivative in nature.    The BDO Defendants ignore the important fact that this is not an action

brought by the Funds' limited partners or shareholders against the Funds.    It is an action by

investors against the auditors of the Funds who induced Plaintiffs to make and retain their

investments in the Funds through fraudulent and other tortious activities directed at them, which

directly caused Plaintiffs to lose hundreds of millions of dollars.  TAC ¶¶ 3, 8-12, 20-21, 26, 29-

30, 53, 245, 254-56, 261-63, 277-81, 284-88.  These parties had duties to Plaintiffs as individual

investors, regardless of whatever duties they owed to the Funds.  *Anwar*, 728 F. Supp. 2d at 400-

01. Second, as a matter of law, "allegations by investors of having been tortiously induced to

---

[8]  SLUSA preclusion does not result from the drafting convention by which each count
incorporates by reference previous allegations. *See LaSala*, 519 F.3d at 141 (incorporation of
state-law allegations in Swiss-law claims did not, *per se*, require application of SLUSA to Swiss
law).

invest or retain an investment are not derivative claims." *Id. at* 401 (citing *PensionComm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 446 F. Supp. 2d 163, 205 (S.D.N.Y. 2006) (emphasis added). *See Stephenson v. Citco Group Ltd.*, 700 F. Supp. 2d 599, 611-12 (S.D.N.Y. 2010) ("Claims based on theories of fraudulent and negligent inducement "are direct because they allege a harm suffered by plaintiff independent of the partnership ..."); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,* 376 F. Supp. 2d 385, 409 (S.D.N.Y. 2005) (quoting *Abrams v. Donati,* 489 N.E.2d 751, 751-52 (1985) and citing *Broome v. ML Media Opportunity Partners L.P.,* 709 N.Y.S.2d 59, 60 (App. Div. 1st Dep't 2000); *Strain v. Seven Hills Assocs.,* 429 N.Y.S.2d 424, 431-32 (App. Div. 1st Dep't 1980)) ("[A] shareholder may sue individually 'when the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged.' The same rules apply to actions by limited partners against a partnership"). Thus, "to the extent that Plaintiffs properly allege duties owed by [BDO] to them ... they have standing to pursue such claims." *Anwar*, 728 F. Supp. 2d at 401.

Plaintiffs' state law claims are not based on a duty owed to the Funds. As stated by Judge Marrero in *Anwar*:

> At its core, *this case alleges claims against the corporate entities and individuals responsible for the representations that led Plaintiffs to make and maintain investments in the Funds* which, though nominally corporate, were mere vessels for ferrying the investments to Madoff. *The fraud and breaches of duty were essential to the Funds' corporate forms thriving as substantially all of the Funds assets were invested with Madoff. Ironically the alleged concealment or reckless ignorance by Defendants did not harm the Funds as such.* Rather, what the pleadings suggest is that Defendants' errors of omissions, committed under the spell of Madoff's profits, served as the lotus that kept Defendants blissful and that sustained their corporations. Without the fraud and other wrongs alleged in this action, the Funds would not have existed. The Court is not inclined to limit liability to the corporate entity that allegedly functioned essentially as a vehicle for harming Plaintiffs.

*Id.* at 401-02 (emphasis added) (citations omitted). As Judge Marrero's analysis makes clear, Plaintiffs' standing to assert each of their state law claims against BDO is based on: (1) injuries

13

that are independent and distinct of any suffered by the Funds; and (2) breaches of duty independent of any owing to the Funds.

The BDO Defendants also ignore that Plaintiffs are not alleging claims as holders but instead as investors who were induced to invest in the Funds in part based upon clean audit opinions issued by BDO. *E.g.*, TAC ¶ 284. Inducement claims are textbook examples of direct claims under New York law that can be pursued by investors who relied on misleading statements or omissions. *See Anwar*, 728 F. Supp. 2d at 401 ("[A]llegations by investors of having been tortiously induced to invest or to retain an investment are not derivative claims.") (citing *Pension Comm. Of Univ. of Montreal Pension Plan v. Banc. Of Am. Sec., LLC*, 446 F. Supp. 2d 163, 205 (S.D.N.Y. 2006) (shareholders may bring direct claims based on the theory that they were "induced to make and/or retain their investments")).[9]

The cases relied on by the BDO Defendants do not address inducement claims. For example, in *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 99 A.D. 3d 108 (App. Div. 1st Dept, 2012), the Appellate Division simply adopted the test in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004), to determine whether a claim is direct or derivative because it was, in the court's view, "consistent with New York law." *Yudell*, 99 A.D. 3d at 110. However, Defendants ignore the post-*Tooley* *inducement* cases which find standing under Delaware law. *See, e.g., Albert v. Alex. Brown Mgmt. Serv., Inc.*, Nos. Civ.A. 762–N, Civ.A. 763–N, 2005 WL

---

[9] *See also In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 378-79 (S.D.N.Y. 2011)(under New York law, shareholders of Madoff feeder fund had standing to assert "misrepresentation claims" in direct action); *In re WorldCom, Inc. Sec. Litig.*, 382 F. Supp. 2d 549, 559 (S.D.N.Y. 2005) ("New York recognizes a claim of fraud where investors were induced to retain securities in reliance on a defendant's misrepresentations."); *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 494 (S.D.N.Y. 2001) ("Investors may assert a fraud claim based on the theory that they were induced to make and/or retain their investments."); *Jones v. PricewaterhouseCoopers, LLP*, 6 Misc. 3d 1014(A), 800 N.Y.S.2d 348, at *4 (N.Y. Sup. Ct. 2004) ("[D]irect claims, such as fraud in the inducement of their initial investment in the Partnership . . . are not derivative.").

2130607, at *12 (Del. Ch. Aug. 26, 2005) (under *Tooley*, "[g]enerally, non-disclosure claims are direct claims," including those styled as breach of fiduciary duty and breach of contract).

The BDO Defendants also rely on *Stephenson v. PricewaterhouseCoopers, LLP*, No. 11-1204-cv, 2012 WL 1764191, at *2 (2d Cir. May 18, 2012), in which the Second Circuit applied the *Tooley* test under Delaware law, distinguished between a shareholder's "inducement" claims and "holder" claims, and expressly held "that Stephenson has standing to bring a claim that PWC's negligence induced him to invest . . . ."). *See also Anwar II*, 728 F. Supp. 2d at 401, n.9 ("The principal wrong asserted by the Plaintiffs here is essentially nondisclosure of or failure to learn facts which should have been disclosed based on duties that were independently owed to Plaintiffs.  Accordingly, Plaintiffs have standing under Delaware law."). Similarly, in *Saltz v, First Frontier, L.P.*, 2012 U.S. App. LEXIS 1187, *10 (2d Cir. June 12, 2012) (unpublished decision), *aff'g* 782 F. Supp. 2d 61 (S.D.N.Y, 2010)(cited by BDO Cayman and BDO Limited), the court determined that the plaintiffs' constructive fraud, negligent misrepresentation, and accountant's duty/accountant's malpractice claims against the auditors were direct to the extent they alleged inducement but dismissed them for reasons other than standing.  782 F. Supp. 2d at 79-80 (citing *Stephenson v. Citco Group Ltd*, 700 F. Supp. 2d 599, 611–12 (S.D.N.Y. 2010 (finding gross negligence, negligence, and fraud claims direct to the extent "that they allege (1) violation of a duty owed to potential investors at large and (2) that such violations induced plaintiff to invest in [the fund]").  Plaintiffs assert they relied on BDO's audits and financial statements when deciding to purchase and retain limited partnership interests in Funds. Thus Plaintiffs have standing to bring certain claims directly.[10]

---

[10] Neither *Saltz* nor *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 2012 U.S. App. LEXIS 14013, *14-15 (2d Cir. July 10, 2012)(unpublished opinion), *aff'g* 747 F.Supp.2d 406 (S.D.N.Y 2010), also cited by BDO Cayman and BDO Limited, contain any meaningful discussion of the plaintiffs' state law claims.

**F.      The Court May Retain Jurisdiction**

"[W]hen a *court grants a motion to dismiss for failure to state a federal claim, the court generally retains* discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006). Courts "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349-50 (1988). Here, while this case is technically still at the pleading stage, the proceedings before this Court have encompassed nearly five years, and have been complex and arduous. Judicial economy, convenience and fairness dictate that this Court should retain jurisdiction under the circumstances.

## CONCLUSION

For the reasons set forth herein, the Court should grant reargument with respect to the claims on which it reserved decision.

Dated:  New York, New York
         July 19, 2013

Respectfully submitted,


**ABBEY SPANIER, LLP**                          **WOLF HALDENSTEIN ADLER**
                                                **FREEMAN & HERZ LLP**

   /s/ Karin E. Fisch
Arthur N. Abbey                                    /s/ Gregory Mark Nespole
aabbey@abbeyspanier.com                         Gregory Mark Nespole
Karin E. Fisch                                  nespole@whafh.com
kfisch@abbeyspanier.com                         Demet Basar
Richard B. Margolies                            basar@whafh.com
rmargolies@abbeyspanier.com                     270 Madison Avenue
212 East 39th Street                            New York, NY 10016
New York, NY 10016                              (212) 545-4600
(212) 889-3700

*Co-Lead Counsel for Plaintiffs*

16