UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re

J. EZRA MERKIN AND BDO SEIDMAN
SECURITIES LITIGATION

No. 08 Civ. 10922 (DAB)

-------------------------------------------------------x


REPLY MEMORANDUM OF DEFENDANT BDO USA, LLP
<u>AS REQUIRED BY ORDER ON MOTION FOR RECONSIDERATION</u>


Ira G. Greenberg
Tracy A. Hannan
EDWARDS WILDMAN PALMER LLP
Attorneys for Defendant BDO USA, LLP
750 Lexington Avenue, 8th floor
New York, NY  10022
(212) 308-4411

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................1

A.    Bases for Dismissal of All Claims Under Consideration ......................................1

     1.    SLUSA Preemption ...........................................................................1

     2.    Holder Claims...................................................................................3

B.    Analysis of Claims Individually .........................................................................4

     1.    Unjust Enrichment.............................................................................4

     2.    Breach of Fiduciary Duty ...................................................................5

     3.    Aiding and Abetting Breach of Fiduciary Duty .........................................6

C.    Denial of Supplemental Jurisdiction .................................................................10

CONCLUSION.....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

American Baptist Churches v. Galloway,
    271 A.D.2d 92, 710 N.Y.S.2d 12 (1st Dep't 2000).......................................6

Anwar v. Fairfield Greenwich, Ltd.,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010).....................................................7

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).............................................................................6

Bell Atl. Corp. v. Twombley,
    550 U.S. 544 (2007).............................................................................6

Bitter v. Renzo,
    101 A.D.3d 465, 955 N.Y.S.2d 332 (1st Dep't 2012)...........................5

Carnegie-Mellon Univ. v. Cohill,
    484 U.S. 343 (1988)...........................................................................10

Credit Alliance Corp. v. Arthur Andersen & Co.,
    65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985)...................5, 6

CRT Invs., Ltd. v BDO Seidman, LLP,
    85 A.D.3d 470, 925 N.Y.S.2d 439 (1st Dep't 2011)...........................9

Feldman v. Cutaia,
    951 A.2d 727 (Del. 2008)....................................................................5

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,
    376 F. Supp. 2d 385 (S.D.N.Y. 2005)..................................................7

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,
    479 F. Supp. 2d 349 (S.D.N.Y. 2007)..................................................7

Grund v. Delaware Charter Guar. & Trust Co.,
    788 F. Supp. 2d 226 (S.D.N.Y. 2011)..................................................3

In re Austin Capital Mgmt. Ltd. Sec. & Employee Retirement Income Sec. Act
Litig.,
    2012 U.S. Dist. LEXIS 181489 (S.D.N.Y. Dec. 21, 2012)..........................2

Kaufman v. Cohen,
    307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003)...........................9

Krasner v. Rahfco Funds LP,
    2012 U.S. Dist. LEXIS 134353 (S.D.N.Y. Aug. 9, 2012)..............................5

Levinson v. PSCC Servs., Inc.,
    2009 U.S. Dist. LEXIS 119957 (D. Conn. Dec. 23, 2009).....................2, 3

Madden v. Cowen & Co.,
    576 F.3d 957 (9th Cir. 2009) ....................................................................1

Meridian Horizon Fund, LP v. KPMG (Cayman),
    487 Fed. App'x 636 (2d Cir. 2012) (summary order) .............................5, 9

Prickett v. New York Life Ins. Co.,
    896 F. Supp. 2d 236 (S.D.N.Y. 2012)......................................................5

Roland v. Green,
    675 F.3d 503 (5th Cir. 2012), cert. granted sub nom. Chadbourne & Parke
    LLP v. Troice, 2013 U.S. LEXIS 909 (2013) .......................................1, 2

Romano v. Kazacos,
    609 F.3d 512 (2d Cir. 2010) .....................................................................1

Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.,
    64 A.D.3d 472, 883 N.Y.S.2d 486 (1st Dep't 2009).................................8

Stephenson v. PricewaterhouseCoopers, LLP,
    482 Fed. App'x 618 (2d Cir. 2012) (summary order) .............................4, 6

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
    845 A.2d 1031 (Del. 2004) .......................................................................5

United States v. Nektalov,
    461 F.3d 309 (2d Cir. 2006) .....................................................................7

White v. Guarente,
    43 N.Y.2d 356, 372 N.E.2d 315, 401 N.Y.S.2d 474 (1977) ..................5, 6

Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004)...................................................2, 3

**RULES**

Fed. R. Civ. P. 12(b) ....................................................................................6

Fed. R. Civ. P. 16 .......................................................................................10

The Court should adhere to its decision to dismiss this action for the reasons set forth in BDO USA, LLP's ("BDO") initial memorandum on reconsideration [Dkt. No. 120].[1]

### A.    Bases for Dismissal of All Claims Under Consideration

BDO's initial memorandum advanced two bases for dismissal of all of class plaintiffs' claims, in whole or in part.

#### 1.    SLUSA Preemption.

The first was SLUSA, which bars all the pleaded common law claims. Class plaintiffs' brief goes on at some length about a decision from the Fifth Circuit, Roland v. Green, 675 F.3d 503 (5th Cir. 2012), cert. granted sub nom. Chadbourne & Parke LLP v. Troice, 2013 U.S. LEXIS 909 (2013), which follows a case from the Ninth Circuit, Madden v. Cowen & Co., 576 F.3d 957 (9th Cir. 2009), and about the fact that the Supreme Court has granted certiorari in the former.  Those cases do not change the analysis.

First, the Court of Appeals for this Circuit has spoken in Romano v. Kazacos, 609 F.3d 512 (2d Cir. 2010).  That decision binds this Court unless and until the Supreme Court directs otherwise.  The Romano Court held that SLUSA's "in connection with" standard is met when plaintiff's claims "'turn on injuries caused by acting on misleading investment advice' – that is, where plaintiff's claims 'necessarily allege,' 'necessarily involve,' or 'rest on' the purchase or sale of securities.'"  Id. at 522. Dismissal is required when, as in this case, state law "claims are included in a broader

---

[1] BDO has not admitted that Assured Guaranty forecloses Martin Act preemption by not discussing that case.  Rather, for reasons unrelated to this action, BDO did not rely on Martin Act preemption as a basis for its motion to dismiss this action and does not rely on it now.

complaint that substantially revolves around allegations of misrepresentation[s]" that induce investment.  In re Austin Capital Mgmt. Ltd. Sec. & Employee Retirement Income Sec. Act Litig., 2012 U.S. Dist. LEXIS 181489, at *16 (S.D.N.Y. Dec. 21, 2012); see Levinson v. PSCC Servs., Inc., 2009 U.S. Dist. LEXIS 119957 (D. Conn. Dec. 23, 2009) (Madoff-related case akin to this one).

Application of the standard in the Court of Appeals cases from the other circuits on which class plaintiffs rely leads to the same conclusion.  Roland, the more recent case, uses a less stringent, not more stringent, standard than that adopted in this Circuit.  Roland v. Green, 675 F.3d at 519 ("[T]he problem we see with the test . . . as articulated by the Second . . . Circuit[] is that it is too stringent a standard").  In addition, Roland distinguished Madoff-related cases in deciding not to dismiss the complaints before it.  Id. at 522 ("Our conclusion that the allegations do not amount to being 'in connection with' transactions in covered securities is bolstered by the distinction between the present cases and the Madoff feeder fund cases").  See also id. at 514-17 (reviewing the Southern District Madoff-related cases); Third Amended Complaint ¶¶ 55, 90, 100 (Merkin did little other than feed investors' money to Madoff).  Thus, even if the Court were allowed to employ the test from other circuits to the situation at hand, the result would be the same – dismissal under SLUSA.

The district court cases in this Circuit that class plaintiffs cite are also fully consistent with this conclusion.  Most notable among them and the one on which several others rest is Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc., 341 F. Supp. 2d 258 (S.D.N.Y. 2004).  Under it, SLUSA applies if a claim "sounds in fraud," id. at 261; that is, "when, although not an essential element of the claim, the

plaintiff alleges fraud as an integral part of the conduct giving rise to the claim," because "the misstatements were part of a larger scheme to defraud," id. at 269.  Again, this case falls right within that description.  Xpedior's holding that SLUSA did not apply to the complaint there before the court depended on the fact that that complaint "did not allege violations of any securities laws – state or federal.  Th[at] lawsuit involve[d] a contract dispute, not a securities action," id. at 272 – a situation that is a far cry from the case before this Court.  Grund v. Delaware Charter Guar. & Trust Co., 788 F. Supp. 2d 226, 242 (S.D.N.Y. 2011) (adopting Xpedior and distinguishing Levinson, cited above), employs the same kind of analysis.

Class plaintiffs try to avoid the import of these cases by arguing that the fraud in which BDO engaged related to its audit of the funds and not to the securities that Madoff falsely claimed to have purchased.  That argument is analytically bankrupt. For one thing, this Court has already held that class plaintiffs failed to plead scienter as required [Dkt. No. 102, at 26]; hence, the law of the case is that BDO did not engage in any fraud, and that portion of the Court's decision to dismiss is not subject to reconsideration [Dkt. No. 119, at 10].  But even if there had been no such decision, the differentiation that class plaintiffs advance does not work:  The operative complaint here alleges that BDO's fraud about its audit was that, in saying that its audits were in accordance with Generally Accepted Auditing Standards, BDO impliedly also said that it had looked into Madoff's purchases of securities even though it had not.

2.    Holder Claims.

The second ground applicable to all claims involved on this motion is standing as applied to holder claims – that is, claims that class members were induced

-3-

to hold securities that they already had purchased, rather than that they were induced to purchase in the first place. Courts in this district and circuit have repeatedly held that holder claims are derivative rather than direct. <u>See also Stephenson v. PricewaterhouseCoopers, LLP</u>, 482 Fed. App'x 618, 621 (2d Cir. 2012) (summary order). This section of BDO's initial memorandum made clear, if its heading did not, that BDO was only asserting this argument against the complaint insofar as it was alleging holder claims.

Class plaintiffs' brief says (at 14), "The BDO Defendants . . . ignore that Plaintiffs are not alleging claims as holders." If so, perhaps BDO misread their complaint. It is enough, if it becomes necessary for the Court to reach this issue, that all holder claims be foreclosed.

B.      <u>Analysis of Claims Individually</u>.

Dismissal also follows when each of the three remaining claims is examined individually.

1.      <u>Unjust Enrichment</u>.

Class plaintiffs do not dispute that it was the funds, and not they, who paid BDO's fees for professional services. Accordingly, the claim for unjust enrichment belongs to the funds, which were Delaware limited partnerships. The fact that class plaintiffs are affected when the entity in which they had invested paid professional fees does not change the fact that that entity is the proper plaintiff; nor does it change the fact that all investors are adversely affected <u>pari passu</u>. Under the governing Delaware law, such an effect does not make an action direct:

> The fact that a shareholder may ultimately suffer some loss
> does not make the claim direct. Rather, where "all of a

-4-

> corporation's stockholders are harmed and would recover
> <u>pro rata</u> in proportion with their ownership of the
> corporation's stock solely because they are stockholders,
> then the claim is derivative in nature."  To state a direct
> claim, "the plaintiff must have suffered some individualized
> harm not suffered by all of the stockholders at large."

<u>Prickett v. New York Life Ins. Co.</u>, 896 F. Supp. 2d 236, 248-49 (S.D.N.Y. 2012) (citing

and quoting <u>Feldman v. Cutaia</u>, 951 A.2d 727, 733 (Del. 2008)).[2]  <u>See also</u> <u>Tooley v.</u>

<u>Donaldson, Lufkin & Jenrette, Inc.</u>, 845 A.2d 1031, 1039 (Del. 2004).  Class plaintiffs do

not allege any individual injury distinct from that the funds allegedly suffered.   Whether

the defendant is, as here, a third party (BDO) or the funds in which they were investors

does not matter under the Delaware cases.

> 2.    <u>Breach of Fiduciary Duty.</u>

BDO's initial memorandum showed that an independent auditor, such as

BDO, owes no fiduciary duty to the entity under audit or to the owners or prospective

owners of such an entity.  <u>See also</u> <u>Meridian Horizon Fund, LP v. KPMG (Cayman)</u>, 487

Fed. App'x 636, 642-43 (2d Cir. 2012) (summary order); <u>Krasner v. Rahfco Funds LP</u>,

2012 U.S. Dist. LEXIS 134353, at *22-23, *34-35 (S.D.N.Y. Aug. 9, 2012) (and cases

cited); <u>Bitter v. Renzo</u>, 101 A.D.3d 465, 955 N.Y.S.2d 332 (1st Dep't 2012).  BDO also

explained that the existence or nonexistence of a fiduciary duty is an entirely separate

inquiry from the existence or nonexistence of standing.  Thus, cases such as <u>White v.</u>

<u>Guarente</u>, 43 N.Y.2d 356, 372 N.E.2d 315, 401 N.Y.S.2d 474 (1977), and <u>Credit</u>

<u>Alliance Corp. v. Arthur Andersen & Co.</u>, 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 443,

483 N.E.2d 110, 118 (1985), which deal with standing to assert negligent

---

[2] <u>Prickett</u> specifically holds that the analysis "applies not only to corporations, but also to
limited partnerships."  <u>Id.</u> at *28 n.3.

misrepresentation claims, have nothing to do with whether this count survives.  The complaint in Credit Alliance contained only causes of action for negligence and gross negligence, 65 N.Y.2d at 438-39; while that in White, insofar as against the accounting firm, contained only one, for professional malpractice, 43 N.Y.2d at 359.

Class plaintiffs cite no contrary cases on whether the funds, let alone an investor or prospective investor in them, may bring a breach of fiduciary duty claim against an accountant who was acting as the funds' auditor.  Instead, as predicted, class plaintiffs simply shift the discussion to one of standing under White and Credit Alliance, as if BDO and the Court would not notice.[3]  (Even if an auditor did owe a fiduciary duty to an existing investor but not a prospective investor, the Court would still have to dismiss this claim to the extent that class plaintiffs' brief disclaims making any holder claims.)

3.    Aiding and Abetting Breach of Fiduciary Duty.

Relying on a state court case, American Baptist Churches v. Galloway, 271 A.D.2d 92, 710 N.Y.S.2d 12 (1st Dep't 2000), class plaintiffs make a halfhearted attempt to save their aiding and abetting claim by arguing that the Court may not go behind their complaint on a rule 12(b) motion.  In so doing, they elide the very different pleading regime in federal courts.  See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombley, 550 U.S. 544 (2007).  In addition, American Baptist rests on the fact that "the pleadings support a theory that all defendants acted in concert." 271 A.D.2d at 101, 710 N.Y.S.2d at 14.  The operative complaint here does not plead a similar theory involving BDO's allegedly being in cahoots with Merkin toward some nefarious end.

---

[3] They are also wrong for the reasons set forth in BDO's motion to dismiss.  See also Stephenson v. PricewaterhouseCoopers, LLP, 482 Fed. App'x at 622.

Rather, at base it alleges only that BDO failed to perform its function as the funds' independent auditors.

Class plaintiffs' arguments on the merits on this count are no better.

On the element of <u>actual knowledge</u>, the Court has already held that class plaintiffs did not adequately allege <u>scienter</u>. The "actual knowledge" element of an aiding and abetting cause of action is more stringent, in that recklessness does not suffice. <u>E.g.</u>, <u>Anwar v. Fairfield Greenwich, Ltd.</u>, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010); <u>Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC</u>, 376 F. Supp. 2d 385, 412 (S.D.N.Y. 2005). Accordingly, the Court's decision forecloses class plaintiffs' position.

Even if it did not, the complaint alleges little more than that BDO issued unqualified audit opinions based on insufficient audits. Indeed, class plaintiffs' brief is not at all consistent in saying that BDO acted with actual knowledge. Thus, on page 5 it cites the complaint's charges that BDO "knowingly disregarded information that indicated <u>or should have indicated</u>" that the assets invested with Madoff were not there; and on page 6 it argues that BDO issued unqualified audit opinions "[d]espite BDO's knowledge <u>or reckless ignorance</u>" that its audits were not compliant with Generally Accepted Auditing Standards (emphasis added). Allegedly sloppy auditing does not equate to or imply the actual knowledge that is an element of this cause of action.

Thus, class plaintiffs are forced to fall back to the theory that BDO engaged in a conscious avoidance of knowledge; but "conscious avoidance" is a very high hurdle indeed. It only occurs when "'it can almost be said that the defendant actually knew' because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." <u>Fraternity</u>

Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007) (quoting United States v. Nektalov, 461 F.3d 309, 315 (2d Cir. 2006)).

The operative complaint provides no basis for such a conclusion. To the contrary, as many courts have pointed out in dismissing Madoff-related cases, the Madoff fraud was very sophisticated and fooled many regulators and financial professionals with far greater access to Madoff's operations, as well as other large accounting firms. See also Dkt. 102, at 22 (this Court's decision on motions to dismiss). Thus, the most reasonable inference is just the opposite of conscious avoidance on the part of an accountant that audited not Madoff, but rather a hedge fund that had invested via Madoff.

To get around these decisions and the inferences that the courts that issued them appropriately drew, class plaintiffs emphasize supposedly new facts into the equation via their proposed fifth amended complaint. That effort should be rejected out of hand, as the Court has already denied amendment and did not give class plaintiffs the right to reargue that denial [Dkt. No. 119, at 10-11].

Class plaintiffs' argument also fails on the merits. They say (at 7) that the reason why these "additional facts" are significant is that they show that BDO knew of the "extreme risk of fraud faced by their hedge fund clients, including the Funds." Thus, they say that these allegedly new facts support the possibility of Madoff's having been engaged in a fraud on the people and entities investing through him.

These "new facts" do not support an aiding and abetting fraud cause of action against BDO for three reasons. First, the claim under discussion is for aiding and abetting a breach of fiduciary duty, not for aiding and abetting a fraud. Second, if it

-8-

were for aiding and abetting fraud, the "actual knowledge" that the aider and abettor has to have is of the existence of a fraud, not of a risk, extreme or otherwise, of a fraud. See, e.g., Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co., 64 A.D.3d 472, 476, 883 N.Y.S.2d 486, 489 (1st Dep't 2009).  Third, the fraud of which the aider and abettor has to have knowledge is a fraud by the party that it is aiding and abetting (Merkin), not a fraud that is being or might be committed against that party by an unrelated third party (Madoff).

On the element of substantial assistance, the alleged aider and abettor must have intentionally participated in furthering the primary offender's wrongdoing. E.g., Kaufman v. Cohen, 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 170 (1st Dep't 2003). The performance of normal professional services does not qualify as intentional participation for this purpose.  E.g., Meridian Horizon Fund, LP v. KPMG (Cayman), 487 Fed. App'x at 643; CRT Invs., Ltd. v. BDO Seidman, LLP, 85 A.D.3d 470, 472, 925 N.Y.S.2d 439, 441 (1st Dep't 2011) (and case cited).

Class action plaintiffs' argument is that BDO provided substantial assistance in concealing that Merkin did not have a genuine belief in or a reasonable basis for his funds' financial statements.  But an audit opinion does not say anything about the good faith beliefs of the entity under audit, let alone a person affiliated with the entity under audit.  Rather, it says that the financial statements are the responsibility of the management of the entity under audit; that the auditor has performed tests relating to the financial statements; and that the auditor is able to express the opinion that objectively the financial statements are fairly presented in all material respects.  See Third Amended Complaint ¶¶ 180-82 .  Moreover, the import of class plaintiffs'

argument about the client's reasonable basis for its financials would mean that an auditor provides substantial assistance for aiding and abetting purposes every time it issues an unqualified audit opinion that turns out to be wrong.   That proposition is inconsistent with the cases, some of which are cited above, that the provision of regular professional services, even if performed inadequately, does not amount to substantial assistance.

C.   <u>Denial of Supplemental Jurisdiction</u>.

Even if the Court were to reject all of the grounds for dismissal of these claims on their merits, the Court should decline to exercise supplemental jurisdiction over the state law claims because there are no remaining federal claims and the proceedings have not gone beyond the motion to dismiss stage.  Class plaintiffs cite two Supreme Court cases for the proposition that this Court has discretion whether to keep these state law claims; and so it does.   But they do not mention that one of them, <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988), notes that the balance of factors will usually point toward declining jurisdiction "[i]n the usual case in which all federal-law claims are eliminated before trial."

Class plaintiffs do not discuss any of the factors to be balanced, and this case is light years from trial.  The case would still be in its incipiency if either any of the state law claims survives.  The next step would be a preliminary conference (if in state court) or a rule 16 conference (if in this Court), with discovery, dispositive motions, final pretrial conference, and trial all to go.  A state court would know all it needed to know about the case from the pleadings in order to guide those phases of the proceedings

and, by the time that the case reached trial readiness, would be at least as familiar with the case – and certainly the state claims in it -- as this Court is now.

All that class plaintiffs can conjure up for a contrary result here is the fact that the action has been pending in this Court for a long time.  Class plaintiffs have not favored this Court with any citation – BDO knows of none -- suggesting that that is a proper factor, let alone one that would trump the others that the Supreme Court has identified.

<u>CONCLUSION</u>

The Court should deny the motion for reargument on the claims on which it reserved decision.  In the alternative, it should deny supplemental jurisdiction and on that basis dismiss any state law claims that remain.

Dated:  New York, NY
        July 31, 2013

Respectfully submitted,

Ira G. Greenberg
Tracy A. Hannan
EDWARDS WILDMAN PALMER LLP
Attorneys for Defendant BDO USA, LLP
750 Lexington Avenue, 8th floor
New York, NY  10022
(212) 308-4411

## CERTIFICATE OF SERVICE

I certify that on the 1st day of August, 2013, I caused a true copy of

the attached reply memorandum to be served on the following by first-class mail:

ABBEY SPANIER RODD &
ABRAMS LLP
Attorneys for Plaintiffs
212 East 39th Street
New York, NY  10016

DECHERT, LLP
Attorneys for Defendants Merkin and
    Gabriel Capital
1095 Avenue of the Americas
New York, NY  10036

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ
Attorneys for Plaintiffs
270 Madison Avenue
New York, NY 10017

SCHULTE ROTH & ZABEL, LLP
Attorneys for Ascot Partners L.P and
    Gabriel Capital, L.P.
919 Third Avenue
New York, NY 10022

_Maria A. Bolyard_
MARIA A. BOLYARD