**EDWARDS WILDMAN**

Ira G. Greenberg
+1 212 912 2756
fax +1 888 325 9157
igreenberg@edwardswildman.com

September 18, 2013

Hon. Deborah A. Batts
United States District Judge
500 Pearl Street, room 2510
New York, NY 10007

Re: In re J. Ezra Merkin and BDO Seidman Secs. Litig.,
    No. 08 Civ. 10922 (DAB)

Dear Judge Batts:

We represent defendants BDO USA, LLP, BDO Cayman Islands, and BDO Limited. I refer to the briefing on the motion for reconsideration of the Court's order dismissing this action and, more particularly, to the SLUSA issue. I write to call to the Court's attention to the decision of the Court of Appeals in Trezziova v. Kohn, No. 12-156-cv (2d Cir. decided Sept. 16, 2013), a copy of the slip opinion of which is enclosed.

Respectfully,

*[signature]*

Ira G. Greenberg

IGG
Enclosure
cc: All counsel

AM 23973295.1

12-156-cv
Trezziova v. Kohn

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: April 5, 2013)                    Decided: September 16, 2013)

Docket No. 12-156-cv (L), 12-162 (Con.)

*In re:* HERALD, PRIMEO, AND THEMA

DANA TREZZIOVA, NEVILLE SEYMOUR DAVIS,

*Plaintiffs-Appellants,*

REPEX VENTURES, S.A., ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED,
SCHMUEL CABILLY, KOREA EXCHANGE BANK,

*Plaintiffs,*

—v.—

SONJA KOHN, PRIMEO SELECT FUND, PRIMEO EXECUTIVE FUND, HANNES SALETA, ERNST & YOUNG GLOBAL LIMITED, HSBC SECURITIES SERVICES (LUXEMBOURG) S.A., HSBC HOLDINGS PLC, BANK MEDICI, UNICREDIT, BANK AUSTRIA, PIONEER GLOBAL ASSET MANAGEMENT S.P.A., ALFRED SIMON, KARL E. KANIAK, HANS-PETER TIEFENBACHER, JOHANNES P. SPALEK, NIGEL H. FIELDING, JAMES E. O'NEILL, ALBERTO LAROCCA, DECLAN MURRAY, URSULA RADEL-LESZCYNSKI, MICHAEL WHEATON, BA WORLDWIDE FUND MANAGEMENT, LTD., PIONEER ALTERNATIVE

INVESTMENT MANAGEMENT LTD., BANK OF BERMUDA (CAYMAN) LIMITED, BANK OF BERMUDA (LUXEMBOURG) S.A., BANK OF BERMUDA LIMITED, ERNST & YOUNG (CAYMAN), ALBERTO BENBASSAT, STEPHANE BENBASSAT, GENEVALOR, BENBASSAT & CIE, GERALD J.P. BRADY, JOHN HOLLIWELL, SONJA KOHN, DANIEL MORRISSEY, DAVID T. SMITH, WERNER TRIPOLT, BANK MEDICI AG, UNICREDIT SPA, HSBC INSTITUTIONAL TRUST SERVICES (IRELAND) LTD., HSBC SECURITIES SERVICES (IRELAND) LTD., HSBC HOLDINGS PLC, PRICEWATERHOUSECOOPERS INTERNATIONAL LTD., PRICEWATERHOUSECOOPERS (DUBLIN), PRICEWATERHOUSECOOPERS LLP, PRICEWATERHOUSECOOPERS BERMUDA, THEMA ASSET MANAGEMENT LIMITED, BA WORLDWIDE FUND MANAGEMENT LIMITED, PETER MADOFF, ANDREW MADOFF, MARK MADOFF, WILLIAM FRY, JPMORGAN CHASE & CO., BANK OF NEW YORK MELLON, HERALD (LUX), MESSRS. FERDINAND BURG AND CARLO REDING, THE COURT APPOINTED LIQUIDATORS FOR HERALD (LUX), HERALD ASSET MANAGEMENT LIMITED, UNICREDIT BANK AUSTRIA AG, HERALD USA FUND, ERNST & YOUNG S.A., FRIEDRICH PFEFFER, FRANCO MUGNAI, THEMA INTERNATIONAL FUND PLC,

*Defendants-Appellees,*

BERNARD L. MADOFF, BERNARD L. MADOFF INVESTMENT SECURITIES, BANK MEDICI S.A., PETER SCHEITHAUER, HERALD USA FUND, HERALD LUXEMBURG FUND, BANK AUSTRIA CREDITANSTALT, UNICREDIT S.A., PIONEER ALTERNATIVE INVESTMENTS, HSBC SECURITIES SERVICES, S.A., HAML, PAUL DE SURY, GABRIEL SAFDIE, WILLIAM A. JONES, HELMUTH E. FREY, ANDREAS PIRKNER, RICHARD GODDARD, ERNST & YOUNG, FRIEHLING & HOROWITZ,

*Defendants.*[*]

Before:

PARKER, CARNEY, *Circuit Judges,* and RAKOFF, *District Judge.*[**]

---

[*] The Clerk of Court is directed to amend the caption.

[**] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

2

Appeal from a judgment of the United States District Court for the Southern District of New York (Berman, *J.*), dismissing, *inter alia*, plaintiffs' state law claims against defendants-appellees JPMorgan Chase & Co. and the Bank of New York Mellon Corporation as precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f), and, alternatively, by New York's Martin Act, N.Y. Gen. Bus. Law §§ 352 *et seq.* We hold that SLUSA precludes plaintiffs' state law class action claims against the banks because the claims are predicated on the banks' involvement with the fraudulent securities transactions of Bernard L. Madoff Investment Securities.

>   FRANCIS A. BOTTINI, JR. (Albert Y. Chang, Chapin Fitzgerald
>       Sullivan & Bottini LLP; Eric Alan Isaacson, Joseph D. Daley,
>       Jessica T. Shinnefield, Robbins Geller Rudman & Dowd LLP,
>       *on the brief*), Chapin Fitzgerald Sullivan & Bottini LLP, San
>       Diego, CA, *for Plaintiff-Appellant Neville Seymour Davis.*
>
>   TIMOTHY JOSEPH BURKE, Stull, Stull & Brody, Beverly Hills, CA, *for
>       Plaintiff-Appellant Dana Trezziova.*
>
>   SUSAN L. SALTZSTEIN (Marco E. Schnabl, *on the brief*), Skadden,
>       Arps, Slate, Meagher & Flom LLP, New York, NY, *for
>       Defendant-Appellee UniCredit S.p.A.*

  MICHAEL E. WILES, Debevoise & Plimpton LLP, New York, NY, *for Defendants-Appellees Alberto Benbassat, Stephane Benbassat, Genevalor, Benbassat & Cie, Gerald J.P. Brady, Daniel Morrissey, David T. Smith, Thema Asset Management Limited, and Thema International Fund plc.*

  THOMAS J. MOLONEY (David E. Brodsky, Evan A. Davis, Charles J. Keeley, Daniel D. Queen, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendants-Appellees HSBC Holdings plc, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Ireland) Limited, and HSBC Securities Services (Luxembourg) S.A.*

  PATRICIA M. HYNES (Andrew Rhys Davies, Laura R. Hall, *on the brief*), Allen & Overy LLP, New York, NY, *for Defendant-Appellee JPMorgan Chase & Co.*

  THOMAS G. RAFFERTY (Antony L. Ryan, *on the brief*), Cravath, Swaine & Moore LLP, New York, NY, *for Defendant-Appellee PriceWaterhouseCoopers (Dublin).*

  James C. Dugan, Mitchell J. Auslander, Wilkie Farr & Gallagher LLP, New York, NY, *for Defendant-Appellee William Fry.*

  Price O. Gielen, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, *for Defendant-Appellee Sonja Kohn.*

  Franklin B. Velie, Jonathan G. Kortmansky, Mitchell C. Stein, Sullivan & Worcester LLP, New York, NY, *for Defendant-Appellee UniCredit Bank Austria AG.*

  Brett S. Moore, Porzio, Bromberg & Newman P.C., New York, NY, *for Defendant-Appellee Herald (LUX) by and through Messrs. Ferdinand Burg and Carlo Reding, the Court-Appointed Liquidators for Herald (LUX).*

Joseph Serino, Jr., Jay P. Lefkowitz, David S. Flugman, Kirkland & Ellis LLP, New York, NY, *for Defendants-Appellees Herald USA Fund, Franco Mugnai, and Friedrich Pfeffer.*

Jeff G. Hammel, Maria A. Barton, Latham & Watkins LLP, New York, NY, *for Defendant-Appellee Hannes Saleta.*

Lewis J. Liman, Jeffrey A. Rosenthal, Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellee The Bank of New York Mellon Corporation.*

Sanford M. Litvack, Dennis H. Tracey, III, Lisa J. Fried, Hogan Lovells US LLP, New York, NY, *for Defendant-Appellee PriceWaterhouseCoopers Bermuda.*

Michael P. Carroll, James H.R. Windels, Michael S. Flynn, Davis Polk & Wardwell LLP, New York, NY, *for Defendant-Appellee PriceWaterhouseCoopers LLP.*

Fraser L. Hunter, Jr., Brad E. Konstandt, WilmerHale LLP, New York, NY, *for Defendant-Appellee PriceWaterhouseCoopers International Ltd.*

William R. Maguire, Marc A. Weinstein, Gabrielle S. Marshall, Hughes Hubbard & Reed LLP, New York, NY, *for Defendant-Appellee Ernst & Young (Cayman).*

Richard A. Martin, Katherine L. Maco, Alison K. Roffi, Orrick Herrington & Sutcliffe LLP, New York, NY, *for Defendant-Appellee Ernst & Young S.A.*

Claudius O. Sokenu, John M. Massaro, Arthur Luk, Arnold & Porter LLP, Washington, DC, *for Defendant-Appellee Ernst & Young Global Limited.*

RAKOFF, *District Judge*:

Plaintiffs-Appellants Dana Trezziova and Neville Seymour Davis appeal from a judgment of the United States District Court for the Southern District of New York (Berman, J.), which, *inter alia*, granted defendants' motion to dismiss plaintiffs' claims against defendants-appellees JPMorgan Chase & Co. ("JPMorgan") and the Bank of New York Mellon ("BNY") on the ground that the claims were precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f), and, alternatively, by New York's Martin Act, N.Y. Gen. Bus. Law §§ 352 *et seq.*[1]

## BACKGROUND

The well-pleaded allegations of the operative complaints in this action,[2]

---

[1] In a Summary Order filed simultaneously with this Opinion, we affirm the district court's judgment with respect to its dismissal of plaintiffs' claims against all other defendants-appellees.

[2] In April 2011, plaintiffs moved to further amend their previously amended complaints, but the district court denied the motion and dismissed the complaints. *See In re Herald, Primeo and Thema Sec. Litig.*, 2011 WL 5928952, at *35 (S.D.N.Y., Nov. 29, 2011). For reasons largely set forth in the parallel Summary Order, we affirm that decision. So far as relevant here, although Trezziova's proposed amendments asserted for the first time claims against JPMorgan, those claims were materially the same as the claims that had previously been asserted by Davis, which, as described in this Opinion, were properly dismissed by the district court. Therefore, we agree with the district court that such amendment would have been futile and denial of leave to amend was proper.

taken most favorably to plaintiffs, allege that, starting in the mid-1990s, various foreign investment vehicles—namely, Thema International Fund plc ("Thema"); Herald Fund SPC-Herald USA Segregated Portfolio One ("Herald SPC") and Herald (LUX) U.S. Absolute Return Fund ("Herald Lux") (together, "Herald"); and Primeo Select Fund and Primeo Executive Fund (together, "Primeo")— secretly funneled investors' assets to Bernard L. Madoff Investment Securities' ("Madoff Securities"), "a giant Ponzi Scheme." One of these "feeder funds," Thema, was an Irish investment company that, as of November 2008, had assets of over $1 billion, all of which were invested with Madoff Securities. Following the revelation that Madoff Securities was a Ponzi scheme and that Madoff Securities' assets had been frozen as part of the company's bankruptcy filing, Thema issued a notice of suspension and subsequently entered into receivership. Another feeder fund, Herald SPC, an investment fund organized under the laws of the Cayman Islands, invested at least $1.5 billion in Madoff Securities over its five-year existence, while Herald Lux, an investment fund organized under the laws of Luxembourg, invested at least $255 million with Madoff Securities between its incorporation in February 2008 and the revelation of Madoff Securities' fraud in December of that same year. As a result of those investments,

both Herald funds suffered substantial losses. For similar reasons, investors in the Primeo funds also suffered substantial losses.

In early 2009, Repex Ventures S.A., an investor in Herald Lux, filed a class action in the Southern District of New York on behalf of investors in the Herald, Thema, and Primeo funds. Other similar suits were then filed, and in October 2009, the district court consolidated the actions for pre-trial purposes and appointed lead plaintiffs for each family of funds. Specifically, the district court appointed appellant Neville Seymour Davis as lead plaintiff for the proposed class of Thema investors; Repex Ventures as lead plaintiff for the proposed class of investors in the Herald funds; and Schmuel Cabilly as lead plaintiff for the proposed class of investors in the Primeo funds.[3] On February 11, 2010, Davis and Repex filed amended class action complaints, at which point Repex added appellant Dana Trezziova, an investor in Herald SPC, as co-plaintiff.

In his class action complaint on behalf of Thema's investors, Davis alleged that Thema "represented that it employed careful selection of investment advisors," Thema Compl. ¶ 28, but that in fact Thema "failed to perform any

---

[3] Repex Ventures and Cabilly did not appeal the district court's dismissal of their claims.

investment selection or management and instead simply funneled its clients' investments to Madoff in exchange for lucrative fees," *id.* ¶ 128. Based on these and other allegations, Davis brought claims against Thema itself; its owners, managers, and directors; its custodian, administrator, and auditor; counsel to Thema and other advisors; members of the Madoff family; and, as most relevant here, JPMorgan and BNY, the banks at which Madoff Securities' accounts were held. Repex and Trezziova brought similar allegations against an analogous group of defendants. The district court dismissed the claims against most of the defendants on grounds that we affirm in our simultaneously filed Summary Order, leaving only the claims against JPMorgan and BNY.

As to JPMorgan, the operative complaints allege that, as Madoff Securities' principal banker, JPMorgan had not simply ignored "red flags" of fraud, but "had actual knowledge that [Madoff Securities] was violating its fiduciary duties and committing fraud." Thema Compl. ¶ 314. However, despite this knowledge, JPMorgan furthered Madoff's fraud by "funnel[ing] hundreds of millions of dollars to Madoff" and Madoff Securities. *Id.* ¶ 59. Moreover, "instead of alerting authorities as they were required to do, . . . the JPMorgan Chase Defendants kept their mouths shut to ensure their own profits at the expense of Plaintiffs and the other members of the Class." Herald Compl. ¶ 455.

9

As for BNY, which also provided banking services to Madoff Securities, the complaints allege that it similarly "knew that it was providing substantial assistance to the fraud," Thema Compl. ¶ 358, but, because it "was collecting such large fees . . . it ignored the evidence of fraud and failed to disclose the fraud." Id. ¶ 364.

Based on these and similar allegations, Trezziova alleges that JPMorgan and its subsidiaries aided and abetted Madoff Securities' fraud, engaged in a civil conspiracy with the other defendants, aided and abetted conversion and breaches of fiduciary duties by the Herald funds and their administrators, and were unjustly enriched at the expense of the Herald Funds' investors. Although making essentially the same factual allegations—including the allegations that the banks knowingly assisted the fraud, see supra—Davis posits as causes of action only that the banks unjustly enriched themselves at the expense of Madoff securities' victims and "aided and abetted" the gross negligence, negligence, and breaches of fiduciary duty committed by other defendants.[4]

In June 2011, defendants jointly moved to dismiss the complaints, and on November 29, 2011, the district court issued an opinion that, inter alia, dismissed

---

[4] Neither the district court nor we reach the issue of how one can be said to have "aided and abetted" negligence and gross negligence.

plaintiffs' claims against JPMorgan and BNY as precluded by SLUSA and preempted by New York's Martin Act. Plaintiffs timely appealed.

"We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

## DISCUSSION

The recent economic crisis serves to underscore how dependent our nation's economy is on developments in the securities markets. While class action lawsuits—the modern expansion of which largely dates from the 1966 amendments to Rule 23 of the Federal Rules of Civil Procedure—may serve a vital function in compensating victims of securities fraud and deterring dishonesty in the securities markets, their abuse may just as surely injure the efficient operation of those markets and this country's competitive position in the world's economy.

With these competing concerns in mind, Congress—even as it passed such legislation designed to increase transparency and stability in the securities markets as the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (codified in scattered sections of 15 and 18 U.S.C.), and the Dodd-Frank Wall

Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (codified in various sections of 7, 12 and 15 U.S.C.)—also enacted legislation designed to combat abusive and extortionate securities class actions. One such law was the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. §§ 77z–1, 78u–4, enacted in 1995. "The PSLRA established uniform standards for class actions alleging securities fraud, including more stringent pleading requirements for certain securities fraud class actions brought in federal courts." *Romano v. Kazacos*, 609 F.3d 512, 517 (2d Cir. 2010). The PSLRA failed, however, to grapple fully with the ingenuity of the plaintiffs' bar. "[P]laintiffs began circumventing its restrictions by filing federal securities fraud class actions in state court, where they could assert many of the same causes of action while avoiding the PSLRA's requirements, which apply in federal court." *Id.* In 1998, "[t]o stem this shift from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA], Congress enacted SLUSA." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006) (quotation marks and brackets omitted).

In furtherance of Congress's purpose to negate the artful pleading by which certain plaintiffs evaded the dictates of the PSLRA—and more generally in

12

furtherance of Congress's desire to have class actions affecting the national securities markets be more completely governed by federal securities laws, *see also* Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711–171—SLUSA is broadly worded. As to any action seeking damages on behalf of more than fifty persons or prospective class members, SLUSA provides that no such action "based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). A "covered security" is, in turn, defined as a security that meets the standards of the Securities Act of 1933. 15 U.S.C. § 78bb(f)(5)(E). "Under § 18(b) of the Securities Act of 1933, a covered security is one that is 'listed, or authorized for listing, on [the national exchanges]' or that is 'issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940.' " *Romano*, 609 F.3d at 520 n.3 (quoting 15 U.S.C. § 77r(b)).

Here, the proposed plaintiff classes purchased interests in foreign feeder funds, interests that all parties concede are not included within the definition of "covered security." The district court nonetheless found that since "Madoff's purported trading strategy utilized indisputably covered securities," and since all

13

the claims of misconduct by JPMorgan arose "in connection with" Madoff Securities' securities fraud, SLUSA applied.

As an initial matter, we agree with the district court that the fact that Madoff Securities may not have actually executed their pretended securities trades does not take this case outside the ambit of SLUSA. *See Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008) (finding that, where the defendant accepted investors' monies for investment in securities, no actual purchase or sale need occur to qualify as a "covered security" under SLUSA). Plaintiffs, however, contend that it is inappropriate under SLUSA to elide their purchase of "uncovered" interests in the foreign feeder funds with Madoff's "downstream" transactions in covered securities. This argument, however, ignores the fact that, on the very face of plaintiffs' complaints, the liability of JPMorgan and BNY is predicated not on these banks' relationship with plaintiffs or their investments in the feeder funds but on the banks' relationship with, and alleged assistance to, Madoff Securities' Ponzi scheme, which indisputably engaged in purported investments in covered securities on U.S. exchanges. *See LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008) (finding that SLUSA's "in connection with" requirement is met "when an allegation of misrepresentation in connection with a securities trade, implicit or explicit,

14

operates as a factual predicate to a legal claim" and is "not merely an extraneous detail").[5]

Moreover, we agree with the district court that, even though the complaints do not style their claims against JPMorgan and BNY as securities fraud claims, the complaints' allegations nonetheless are precluded by SLUSA. Since "SLUSA requires our attention to both the pleadings and the realities underlying the claims," plaintiffs cannot avoid SLUSA "merely by consciously omitting references to securities or to the federal securities law."[6] *Romano*, 609

---

[5] For this reason, plaintiffs' reliance on *Ring v. AXA Financial, Inc.*, 483 F.3d 95 (2d Cir. 2007), is misplaced. In *Ring*, we determined that a Children's Term Rider ("CTR"), a non-covered insurance offering that could not be sold as a free-standing product, should not be aggregated with the variable annuity with which it was purchased, itself a covered security, to make the CTR into a covered security for purposes of SLUSA. *Id.* at 101. The complaint in *Ring*, however, alleged misrepresentations and omissions solely with regard to the CTR, not the products to which the CTR happened to be attached. *Id.* at 97. Here, by contrast, appellees do not seek to conflate appellants' purchase of shares in the foreign feeder funds with Madoff Securities' purported securities transactions; rather, the plaintiffs' allegations with respect to BNY and JPMorgan relate directly to Madoff's purported transactions in covered securities. Unlike in *Ring*, therefore, the presence of the covered security is not mere happenstance, and it is appropriate, given the complaints' allegations against JPMorgan and BNY, to look to Madoff's purported transactions as the relevant transaction in covered securities for SLUSA's purposes.

[6] Plaintiffs originally pleaded federal securities fraud claims based on the same underlying "realities" of the case, and they acknowledge that they amended their complaints to omit these federal claims because of extraterritoriality concerns, *see generally Morrison v. National Australia Bank Ltd.*,

15

F.3d at 523; see also *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304–05 (3d Cir. 2005) ("SLUSA['s] . . . preemptive force cannot be circumvented by artful drafting."). Here, the district court correctly found that the Thema and Herald complaints' "claims against these Defendants are integrally tied to the underlying fraud committed by Madoff, for whom JPMorgan and BNY served as bankers." Indeed, JPMorgan's and BNY's relationship to the Madoff fraud is alleged to be far more than incidental. The complaints, fairly read, charge that JPMorgan and BNY knew of the fraud, failed to disclose the fraud, and helped the fraud succeed—in essence, that JPMorgan and BNY were complicit in Madoff's fraud. These allegations are more than sufficient to satisfy SLUSA's requirement that the complaint allege a "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."[7]

---

130 S. Ct. 2869 (2010), and not because the nature of their claims changed. This procedural history lends credence to the notion that plaintiffs' allegations are the very types of claims Congress intended to preclude in enacting SLUSA.

[7] Similarly, the fact that plaintiffs allege claims sounding in negligence, breach of fiduciary duty, and the like does not preclude preclusion under SLUSA where, as here, it is obvious that the banks' liability, under any claim, is premised on their participation in, knowledge of, or, at a minimum, cognizable disregard of Madoff Securities' securities fraud.

For the foregoing reasons, we conclude that the appellants' claims against JPMorgan and BNY were properly dismissed as precluded by SLUSA.[8] Accordingly, the district court's judgment is **AFFIRMED**.

---

[8] The district court alternatively held that the plaintiffs' claims against JPMorgan and BNY were preempted by New York's Martin Act. On appeal, appellants argue that an intervening New York Court of Appeals case has abrogated prior precedent supporting Martin Act preemption. *See Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 962 N.E.2d 765, 769 (N.Y. 2011). Because we uphold the district court's dismissal of appellants' claims against JPMorgan and BNY under SLUSA, we need not reach this alternative ground for the district court's decision.